# EXHIBIT 3

### POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation  or by calling 1-800-706-3102.



EXHIBIT

52

PNI_Litigation_Trust_0000180

Executive Liability
175 Water Street
New York, NY 10038
http://www.aig.com



eDiscovery Solutions

Dear Insured:

Congratulations on purchasing your Executive Edge℠ policy from a member company of AIG Property Casualty Inc. (AIG), one of the premier writers of management liability insurance. Your policy offers many outstanding features, and as a AIG insured you have the confidence of knowing that your claims will be handled by highly experienced claims professionals. In addition, our panel counsel is comprised of leading law firms throughout the country.

The purpose of this letter is to introduce you to eDiscovery Solutions, a value-added program providing e-discovery advantages to Executive Edge policyholders. The risks associated with not being prepared to handle requests to produce electronically stored information (ESI) are significant as companies are held accountable for missteps made along the way and the potential costs of e-discovery are exorbitant. eDiscovery Solutions provides Executive Edge policyholders with the advantage of assisting in the creation of an e-discovery plan before litigation commences and the development of a cost-effective strategy to address e-discovery when a claim does arise. As an Executive Edge policyholder, you have access to the following suite of optional eDiscovery Solutions benefits to minimize the risks and expense of e-discovery:

- Help in creating an effective e-discovery strategy before a claim arises.
  - 2.5 hour "boot camp" by Encore Discovery Solutions (an independent third party provider of e-discovery services) addressing the major components of e-discovery plus an additional 10 hours of expert e-discovery consultation with Encore to assess e-discovery readiness at no cost to insureds that remain on risk. These services are available at no cost to policyholders and favorable rates are available to those policyholders who wish to purchase additional services.

- Guidance and management through the process of responding to ESI requests.
  - Pre-approved independent experts assist in responding to requests to produce ESI through development of a cost-effective strategy.
  - Pre-approved independent consultants oversee the e-discovery process including assessment of information systems capabilities, locating and preserving relevant electronic data stores, vendor selection, defining scope of work and establishing metrics to evaluate and monitor efficient execution.
  - First $25,000 of consultants' fees covered with no retention and policyholders may choose to continue to benefit from the consultant's services at pre-negotiated favorable rates.

To take advantage of the services offered through eDiscovery Solutions, email ediscoverysolutions@AIG.com or contact your insurance broker or AIG underwriter.

PNI_Litigation_Trust_0000181



## National Union Fire Insurance Company of Pittsburgh, Pa.®
*A capital stock company*
(the "Insurer")

**POLICY NUMBER:** *06-680-86-39*          **REPLACEMENT OF POLICY NUMBER:** *06-185-94-19*

# Executive Edge®

### Broad Form Management Liability Insurance Policy

**NOTICES:** This policy provides claims-made coverage. Such coverage is generally limited to liability for (i) **Claims** first made against **Insureds**, (ii) **Inquiries** that an **Insured Person** first received, and (iii) **Crises** first occurring, in each case, during the **Policy Period** or, if applicable, the **Discovery Period.** Coverage under this policy is conditioned upon notice being timely provided to the **Insurer** as required (see the **Notice and Reporting** clause for details). Covered **Defense Costs, Pre-Claim Inquiry Costs** and **Derivative Investigation Costs** shall reduce the **Limits of Liability** available to pay judgments or settlements, and shall be applied against the retention amount. The **Insurer** does not assume any duty to defend. Please read this policy carefully and review its coverage with your insurance agent or broker.

## DECLARATIONS

1. **NAMED ENTITY:**          *PATRIOT NATIONAL, INC.*

   **Named Entity Address:**     *401 E LAS OLAS BLVD # 1650*
   *FORT LAUDERDALE, FL 33301-2210*

   **State of Formation:**       *Florida*

2. **POLICY PERIOD:**          From: *January 16, 2017*          To: *January 16, 2018*
   The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Entity Address.**

3. **PREMIUM:**                                                        *$254,943*

4. **LIMIT OF LIABILITY:**                                             *$10,000,000*

5. **RETENTION:** Not applicable to: (i) **Non-Indemnifiable Loss,** (ii) **Crisis Loss** or (iii) **Derivative Investigation Costs.**

   (a) Securities Retention:                                           *$1,000,000*
   (b) Employment Practices Retention:                                 *$1,000,000*
   (c) All other **Loss** to which a Retention applies :               *$1,000,000*

   If the **Organizations** fail or refuse to satisfy an applicable Retention, this policy shall advance the **Loss** of an **Insured Person** pursuant to the ADVANCEMENT Clause.

6. **PASSPORT:**   This policy ☐ serves, or ☒ does not serve, as a master Passport policy.

*1550758*

⊕ All rights reserved.

PNI_Litigation_Trust_0000182

**AIG**

**DECLARATIONS (Continued)**

**7.   INSURER**

(a) **INSURER ADDRESS:**    *175 Water Street*
                            *New York, NY 10038-4969*

(b) **CLAIMS ADDRESS:**     By E-Mail: c-claim@AIG.com
                            By Mail:  *AIG, Financial Lines Claims*
                                      *P.O. Box 25947*
                                      *Shawnee Mission, KS 66225*

                            In either case, reference the Policy Number.

**8.   CONTINUITY DATES**

(a) **Outside Entity Executive** Coverage—The date on which the **Executive** first served
    as an **Outside Entity Executive** of such **Outside Entity.**

(b) All other coverage:                                             *June 24, 2011*

**9.   TRIA PREMIUM, TAXES AND SURCHARGES**

(a) **TRIA** Premium                                                *$2,274*

'**TRIA** Premium' means the premium for Certified Acts of Terrorism Coverage under Terrorism Risk
Insurance Act, as amended.  Amount indicated above is included in  **Premium.** A copy of the **TRIA**
disclosure sent with the original quote is attached hereto.

IN WITNESS WHEREOF, the **Insurer** has caused this Policy to be signed by its President,
Secretary and Authorized Representative.  This Policy shall not be valid unless signed below at the
time of issuance by an authorized representative of the insurer.

_____        _____        _____
    **PRESIDENT**              **AUTHORIZED REPRESENTATIVE**          **SECRETARY**


_____        _____        _____
  **COUNTERSIGNATURE**                 **DATE**                   **COUNTERSIGNED AT**
    (Where Required)



*ARC EXCESS & SURPLUS LLC*
*113 SOUTH SERVICE ROAD*
*POB 9012*
*JERICHO, NY 11753*
  *1550758*

104122 (4/10)                                        2
[11.1.1.7] [Patriot National D And O Primary 10MM 2017-2018 AIG.PDF] [Page 4 of 115]

© All rights reserved.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019, and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *PATRIOT NATIONAL, INC.*

Policy Number: *06-680-86-39*
Policy Period Effective Date From: *January 16, 2017*     To: *January 16, 2018*

© 2015 National Association of Insurance Commissioner

PNI_Litigation_Trust_0000184

**FLORIDA ADDENDUM TO THE DECLARATIONS**

If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:

**AIG**
**175 Water Street**
**New York, NY 10038**
**(212) 458-5000**



shedlinski@provinceflim.com
Project Pirate/23:02:2018 13:23

**74825 (01/13)**                                        Page 1 of 1

PNI_Litigation_Trust_0000185



## Executive Edge®
### BROAD FORM MANAGEMENT LIABILITY INSURANCE POLICY

1. INSURING AGREEMENTS ......................................................................... 1
   A. Insured Person Coverage .................................................................. 1
   B. Indemnification Of Insured Person Coverage ................................... 1
   C. Organization Coverage ...................................................................... 1
   D. Crisisfund® Coverage ........................................................................ 1
2. EXTENSIONS ............................................................................................ 2
   A. Executive Protection Suite ................................................................. 2
   B. First Dollar E-Discovery Consultant Services ................................... 2
   C. Worldwide & Cross-Border ................................................................ 2
3. PROTECTIONS WHEN INDEMNIFICATION IS UNAVAILABLE .............. 3
   A. Advancement ...................................................................................... 3
   B. Order of Payments ............................................................................. 3
   C. Bankruptcy And Insolvency ............................................................... 3
4. EXCLUSIONS ............................................................................................ 4
5. RETENTION ............................................................................................... 6
6. LIMITS OF LIABILITY ................................................................................ 6
7. NOTICE AND REPORTING ....................................................................... 8
8. DISCOVERY ............................................................................................... 8
9. DEFENSE AND SETTLEMENT .................................................................. 9
   A. For Claims And Pre-Claim Inquiries .................................................. 9
   B. Pre-Authorized Securities Defense Attorneys .................................. 10
   C. Pre-Approved E-Consultant Firms .................................................... 10
   D. Allocation ............................................................................................ 10
10. CHANGES TO INSUREDS ...................................................................... 10
    A. Transactions ...................................................................................... 11
    B. Subsidiary Additions .......................................................................... 11
    C. Former Subsidiaries ........................................................................... 11
    D. Scope of Subsidiary Coverage .......................................................... 11
11. APPLICATION AND UNDERWRITING .................................................... 12
    A. Application And Reliance ................................................................... 12
    B. Renewal Application Procedure ......................................................... 12
    C. Insured Person Coverage Non-Rescindable .................................... 12
    D. Severability Of The Application ......................................................... 12
12. GENERAL TERMS AND CONDITIONS ................................................... 13
    A. Payments And Obligations Of Organizations And Others ............... 13
    B. Cancellation ....................................................................................... 14
    C. Notice And Authority .......................................................................... 14
    D. Currency ............................................................................................. 14
    E. Assignment ......................................................................................... 14
    F. Disputes .............................................................................................. 15
    G. Spousal, Domestic Partner And Legal Representative Extension ... 16
    H. Conformance To Law ......................................................................... 16
    I. Headings ............................................................................................. 16
13. DEFINITIONS ........................................................................................... 17

[11.1.1.1(1)(Patriot National) D And O Primary 10MM_2017-2018_AIG.PDF] [Page 7 of 115]

© All rights reserved.

PNI_Litigation_Trust_0000186

## Executive Edge



In consideration of the payment of the premium, and each of their respective rights and obligations in this policy, the **Insureds** and the **Insurer** agree as follows:

## 1. INSURING AGREEMENTS

All coverage granted for **Loss** under this policy is provided solely with respect to: (i) **Claims** first made against an **Insured**, (ii) **Pre-Claim Inquiries** first received by an **Insured Person**, and (iii) **Crises** first occurring, in each such event, during the **Policy Period** or any applicable **Discovery Period** and reported to the **Insurer** as required by this policy. Subject to the foregoing and the other terms, conditions and limitations of this policy, this policy affords the following coverage:

### A. Insured Person Coverage

This policy shall pay the **Loss** of any **Insured Person** that no **Organization** has indemnified or paid, and that arises from any:

(1) **Claim** (including any **Insured Person Investigation**) made against such **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; or

(2) **Pre-Claim Inquiry**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**.

### B. Indemnification Of Insured Person Coverage

This policy shall pay the **Loss** of an **Organization** that arises from any:

(1) **Claim** (including any **Insured Person Investigation**) made against any **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; and

(2) **Pre-Claim Inquiry**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**;

but only to the extent that such **Organization** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Insured Person**.

### C. Organization Coverage

This policy shall pay the **Loss** of any **Organization**:

(1) arising from any **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**;

(2) incurred as **Derivative Investigation Costs**, subject to a $250,000 aggregate sublimit of liability; or

(3) incurred by an **Organization** or on its behalf by any **Executives** of the **Organization** (including through any special committee) as **Defense Costs** in seeking the dismissal of any **Derivative Suit** against an **Insured**.

### D. Crisisfund® Coverage

This policy shall pay the **Crisis Loss** of an **Organization**, up to the $100,000 **CrisisFund®**; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law.

104123 (04/10)

© All rights reserved.

PNI_Litigation_Trust_0000187

**Executive Edge**



## 2. EXTENSIONS

### A. Executive Protection Suite

**Loss** shall also mean the following items, provided that they arise out of a **Claim:**

(1) **SOX 304 Costs;**

(2) **Extradition Costs;**

(3) **UK Corporate Manslaughter Act Defense Costs;**

(4) **Personal Reputation Expenses,** subject to a $100,000 per **Executive** and a $500,000 aggregate sublimit of liability; and

(5) **Asset Protection Costs,** subject to a $50,000 per **Executive** and a $250,000 aggregate sublimit of liability.

### B. First Dollar E-Discovery Consultant Services

For any **Securities Claim,** no Retention shall apply to the first $25,000 in **Defense Costs** incurred as **E-Discovery Consultant Services.**

### C. Worldwide & Cross-Border

**Worldwide Territory**   The coverage afforded by this policy shall apply anywhere in the world.

**Global Liberalization**   For **Loss** from that portion of any **Claim** maintained in a **Foreign Jurisdiction** or to which the law of a **Foreign Jurisdiction** is applied, the **Insurer** shall apply the terms and conditions of this policy as amended to include those of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to **Insureds** in the **Foreign Jurisdiction.** This **Global Liberalization Clause** shall not apply to any provision of any policy that has worldwide effect, including but not limited to any provision addressing limits of liability (primary, excess or sublimits), retentions, other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made provisions, and any endorsement to this policy that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect.

**Passport Master Policy Program**   If the Passport option box has been checked on the Declarations, then this policy shall act as a master policy and the coverage afforded by this policy shall be provided in conjunction with the Passport foreign underlyer policy issued in each jurisdiction selected by the **Named Entity.** The specific structure of the coverage provided by this master policy in conjunction with each Passport foreign underlyer policy is set forth in the Passport Structure Appendix attached to this policy.

104123 (04/10)

© All rights reserved.

PNI_Litigation_Trust_0000188

**Executive Edge**



## 3. PROTECTIONS WHEN INDEMNIFICATION IS UNAVAILABLE

### A. *Advancement*

If for any reason (including but not limited to insolvency) an **Organization** fails or refuses to advance, pay or indemnify covered **Loss** of an **Insured Person** within the applicable Retention, if any, then the **Insurer** shall advance such amounts on behalf of the **Insured Person** until either (i) an **Organization** has agreed to make such payments, or (ii) the Retention has been satisfied.  In no event shall any such advancement by the **Insurer** relieve any **Organization** of any duty it may have to provide advancement, payment or indemnification to any **Insured Person**.

Advancement, payment or indemnification of an **Insured Person** by an **Organization** is deemed "failed" if it has been requested by an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within 60 days of such request; and advancement, payment or indemnification by an **Organization** is deemed "refused" if an **Organization** gives a written notice of the refusal to the **Insured Person**. Advancement, payment or indemnification of an **Insured Person** by an **Organization** shall only be deemed "failed" or "refused" to the extent such advancement, payment or indemnification is not provided, or agreed to be provided, or acknowledged by and collectible from an **Organization**.  Any payment or advancement by the **Insurer** within an applicable Retention shall apply towards the exhaustion of the **Limits of Liability**.

### B. *Order Of Payments*

In the event of **Loss** arising from a covered **Claim(s)** and/or **Pre-Claim Inquiry(ies)** for which payment is due under the provisions of this policy, the **Insurer** shall in all events:

(1)  First, pay all **Loss** covered under Insuring Agreement A. *Insured Person Coverage*;

(2)  Second, only after payment of **Loss** has been made pursuant to subparagraph (1) above and to the extent that any amount of the Limit of Liability shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement B. *Indemnification Of Insured Person Coverage*; and

(3)  Lastly, only after payment of **Loss** has been made pursuant to subparagraphs (1) and (2) above and to the extent that any amount of the **Limit of Liability** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement C. *Organization Coverage* and Insuring Agreement D. *Crisisfund® Coverage*.

In the event the **Insurer** withholds payment pursuant to subparagraphs (2) and/or (3) above, then the **Insurer** shall, at such time and in such manner as shall be set forth in instructions of the chief executive officer of the **Named Entity**, remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

### C. *Bankruptcy And Insolvency*

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations under this policy.

In such event, the **Insurer** and each **Organization** and **Insured Person** agree to cooperate in any efforts by the **Insurer** or any **Organization** or **Insured Person** to obtain relief for the benefit of the **Insured Persons** from any stay or injunction applicable to the distribution of the policy proceeds.

© All rights reserved.

2

PNI_Litigation_Trust_0000189

**Executive Edge** 

## 4. EXCLUSIONS

### A. Full Severability Of Exclusions For Insured Persons

In determining whether any of the following Exclusions apply, the **Wrongful Acts** of any **Insured Person** shall not be imputed to any other **Insured**. For Insuring Agreement C. *Organization Coverage*, only the **Wrongful Acts** of any chief executive officer, chief financial officer or general counsel (or equivalent position) of an **Organization** shall be imputed to such **Organization**.

### B. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss**, other than **Crisis Loss**, in connection with any **Claim** made against an **Insured**:

| | |
|---|---|
| **(1)** *Conduct* | arising out of, based upon or attributable to any: |
| | (a) remuneration, profit or other advantage to which the **Insured** was not legally entitled; or |
| | (b) deliberate criminal or deliberate fraudulent act by the **Insured**; |
| | if established by any final, non-appealable adjudication in any action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy; |
| | provided, however: |
| | (i) Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations; and |
| | (ii) with respect to Conduct Exclusion (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred; |
| **(2)** *Pending & Prior Litigation* | alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (a) litigation; or (b) administrative or regulatory proceeding or investigation of which any **Insured** had notice; or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; |
| **(3)** *Personal Injury* | for emotional distress or mental anguish of any person, or for injury from libel, slander, defamation or disparagement, or a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim** or a **Securities Claim**; |
| **(4)** *Bodily Injury & Property Damage* | for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, this exclusion shall not apply to **UK Corporate Manslaughter Act Defense Costs** or a **Securities Claim**; |

104123 (06/10)

© All rights reserved.

PNI_Litigation_Trust_0000190

**Executive Edge**                                                    AIG

B. *Exclusions* (Continued)

    (5)   *Entity v. Insured*    that is brought by or on behalf of any **Organization** against any **Insured**, or by any **Outside Entity** against any **Outside Entity Executive**; provided, however, this exclusion shall not apply:

    (a)  to any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person** in defending any **Claim** against that **Insured Person**;

    (b)  to any **Derivative Suit** not brought, controlled or materially assisted by any **Organization**, any **Outside Entity** or any **Executive** of the foregoing; or

    (c)  if the **Organization** or **Outside Entity** is the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**), unless the **Claim** is brought, controlled or materially assisted by any **Organization** or **Outside Entity**, the resulting debtor-in-possession (or foreign equivalent) of the debtor **Organization** or **Outside Entity** or any **Executive** of the foregoing;

    (6)   *ERISA*    for any violation of responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any similar provisions of any state, local or foreign statutory or common law; or

    (7)   *Compensation &*    for any violation of responsibilities, obligations or duties imposed by
          *Labor Liability*    the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification (WARN) Act, the Consolidated Omnibus Budget Reconciliation Act (COBRA), the Occupational Safety and Health Act (OSHA), or any federal, state, local or foreign law, amendment to a law, or any rule or regulation, that imposes or expands responsibilities, obligations or duties relating to compensation, retirement, benefits, deductions, withholdings, breaks or the workplace; provided, however, this exclusion shall not apply to the extent that a **Claim** is for discrimination, sexual or other harassment, wrongful termination or hostile work environment, or for **Retaliation**, or to the extent that a **Claim** is a **Securities Claim**.

## 5. RETENTION

No Retention is applicable to the following: (i) **Non-Indemnifiable Loss**; (ii) **Derivative Investigation Costs**; or (iii) **Crisis Loss**.

Except as provided above and in the *First Dollar E-Discovery Consultant Services Extension*, for each **Claim** or **Pre-Claim Inquiry**, the **Insurer** shall only be liable for the amount of covered **Loss** arising from such **Claim** or **Pre-Claim Inquiry** which is in excess of the applicable Retention set forth on the **Declarations** or in any endorsement to this policy. Amounts within the Retention shall remain uninsured.

A single Retention shall apply to **Loss** arising from all **Related Claims** and all **Related Pre-Claim Inquiries**. In the event a **Claim** or **Pre-Claim Inquiry** triggers more than one Retention, then, as to such **Claim** or **Pre-Claim Inquiry**, the highest of such Retentions shall be deemed the Retention applicable to **Loss** arising from such **Claim** or **Pre-Claim Inquiry** unless this policy expressly provides otherwise.

© All rights reserved.

PNI_Litigation_Trust_0000191

**Executive Edge** 

## 6. LIMITS OF LIABILITY

The **Limit of Liability** stated in the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss** (including **Defense Costs** and **Pre-Claim Inquiry Costs**) under this policy. The **Limit of Liability** and all sublimits of liability are collectively referred to in this policy as the "**Limits of Liability.**"

Each aggregate sublimit of liability in this policy is the maximum limit of the **Insurer's** liability for all **Loss** under this policy that is subject to that aggregate sublimit of liability. Each per **Executive** sublimit of liability in this policy is the maximum limit of the **Insurer's** liability for all **Loss** of each **Executive** under this policy that is subject to that per **Executive** sublimit of liability. All sublimits of liability shall be part of, and not in addition to, the **Limit of Liability**. Each per **Executive** sublimit of liability shall be part of, and not in addition to, its corresponding aggregate sublimit of liability.

The **Limits of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Limits of Liability** for the **Policy Period**. Further, all **Related Claims** and all **Related Pre-Claim Inquiries** that are considered made or received during the **Policy Period** or **Discovery Period** pursuant to subparagraph (b) or (c) of Clause 7. *Notice And Reporting*, shall also be subject to the applicable **Limits of Liability** set forth in this policy.

**Defense Costs** are not payable by the **Insurer** in addition to the **Limits of Liability**. **Defense Costs** are part of **Loss** and as such are subject to the **Limits of Liability** for **Loss**.

## 7. NOTICE AND REPORTING

Notice hereunder shall be given in writing to the **Insurer** at the **Claims Address** indicated in the Declarations. If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.

(a) *Reporting a Claim, Pre-Claim Inquiry or Crisis*

An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy:

(1) notify the **Insurer** in writing of a **Claim** made against an **Insured** or a **Crisis**; or

(2) if an **Insured** elects to seek coverage for **Pre-Claim Inquiry Costs** in connection with any **Pre-Claim Inquiry**, notify the **Insurer** in writing of that **Pre-Claim Inquiry**;

as soon as practicable after (i) the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim** or **Pre-Claim Inquiry**; or (ii) the **Crisis** commences. In all such events, notification must be provided no later than 60 days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

[11.1.1.7 (Patriot National) D_And_O_Primary_10MM_2017-2018_AIG.PDF][Page 13 of 115]

© All rights reserved.

PNI_Litigation_Trust_0000192

Executive Edge

**AIG**

**(b)**  *Relation Back to the First Reported Claim or Pre-Claim Inquiry*

Solely for the purpose of establishing whether any subsequent **Related Claim** was first made or a **Related Pre-Claim Inquiry** was first received during the **Policy Period** or **Discovery Period** (if applicable), if during any such period:

(1) a **Claim** was first made and reported in accordance with Clause 7(a) above, then any **Related Claim** that is subsequently made against an **Insured** and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time that such previously reported **Claim** was first made; and

(2) a **Pre-Claim Inquiry** was actually first received by an **Insured Person** and reported in accordance with Clause 7(a) above, then:

    (i) any **Related Pre-Claim Inquiry** that is reported in accordance with Clause 7(a) above shall be deemed to be a **Pre-Claim Inquiry** first received at the time that such previously reported **Pre-Claim Inquiry** was first received by an **Insured Person**; and

    (ii) any subsequent **Related Claim** that is reported in accordance with Clause 7(a) above shall be deemed to be a **Claim** first made at the time that such previously reported **Pre-Claim Inquiry** was first received by an **Insured Person**.

With respect to any subsequent **Related Pre-Claim Inquiry**, this policy shall not cover **Loss** incurred before such subsequent **Related Pre-Claim Inquiry** is actually received by an **Insured Person**, and with respect to any subsequent **Related Claim**, this policy shall not cover **Loss** incurred before such subsequent **Related Claim** is actually made against an **Insured**. **Claims** actually first made or deemed first made prior to the inception date of this policy, **Pre-Claim Inquiries** first received or deemed first received by an **Insured Person** prior to the inception date of this policy, and **Claims** or **Pre-Claim Inquiries** arising out of any circumstances of which notice has been given under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

**(c)**  *Relation Back to Reported Circumstances Which May Give Rise to a Claim*

If during the **Policy Period** or **Discovery Period** (if applicable) an **Organization** or an **Insured Person** becomes aware of and notifies the **Insurer** in writing of circumstances that may give rise to a **Claim** being made against an **Insured** and provides details as required below, then any **Claim** that is subsequently made against an **Insured** that arises from such circumstances and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time of the notification of circumstances for the purpose of establishing whether such subsequent **Claim** was first made during the **Policy Period** or during the **Discovery Period** (if applicable). Coverage for **Loss** arising from any such subsequent **Claim** shall only apply to **Loss** incurred after that subsequent **Claim** is actually made against an **Insured**. In order to be effective, notification of circumstances must specify the facts, circumstances, nature of the alleged **Wrongful Act** anticipated and reasons for anticipating such **Claim**, with full particulars as to dates, persons and entities involved; however, notification that includes a copy of an agreement to toll a statute of limitations shall be presumed sufficiently specific as to the potential **Claims** described within that agreement.

© All rights reserved.

PNI_Litigation_Trust_0000193

**Executive Edge**



## 8. DISCOVERY

**Bilateral Discovery Options**
Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew or replace this policy, the **Insureds** shall have the right to a period of one to six years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**"), upon payment of the respective "**Additional Premium Amount**" described below, in which to give to the **Insurer** written notice pursuant to Clause 7(a) and Clause 7(c) of the policy of: (i) **Claims** first made against an **Insured**; (ii) **Pre-Claim Inquiries** first received by an **Insured Person**; and (iii) circumstances of which an **Organization** or an **Insured** shall become aware, in any such case, during said **Discovery Period** and solely with respect to a **Wrongful Act** that occurs prior to the end of the **Policy Period**.

**Discovery Premium**
The **Additional Premium Amount** for: (a) one year shall be no more than 125% of the **Full Annual Premium**; (b) two to six years shall be an amount to be determined by the **Insurer**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

**Transaction Option**
In the event of a **Transaction**, the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged is non-refundable in whole or in part. This *Discovery Clause* shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this *Discovery Clause* shall terminate unless written notice by any **Insured** of election of a **Discovery Period**, together with the additional premium due, is received by the **Insurer** no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

© All rights reserved.

PNI_Litigation_Trust_0000194

Executive Edge                                          

## 9.   DEFENSE AND SETTLEMENT

### A. For Claims And Pre-Claim Inquiries

**(1)  *No Duty to Defend or Investigate***
The **Insureds** shall defend and contest any **Claim** made against them. The **Insurer** does not assume any duty to defend or investigate.

**(2)  *Advancement***
Once the **Insurer** has received written notice of a **Claim** or **Pre-Claim Inquiry** under this policy, it shall advance, excess of any applicable Retention, covered **Defense Costs** or **Pre-Claim Inquiry Costs**, respectively, on a current basis, but no later than 90 days after the **Insurer** has received itemized bills for those **Defense Costs** or **Pre-Claim Inquiry Costs**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured Person** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured Person** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

**(3)  *Claims Participation and Cooperation***
The **Insurer** shall have the right, but not the obligation, to fully and effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** or **Pre-Claim Inquiry** that involves, or appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

The failure of any **Insured Person** to give the **Insurer** cooperation and information as required in the preceding paragraph shall not impair the rights of any other **Insured Person** under this policy.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any **Defense Costs** or **Pre-Claim Inquiry Costs**, without the prior written consent of the **Insurer**.  Such consent shall not be unreasonably withheld.

**(4)  *Full Settlement Within Retention/ Consent Waived***
If all **Insured** defendants are able to dispose of all **Claims** and/or **Pre-Claim Inquiries** which are subject to one Retention (inclusive of **Defense Costs**) for an amount not exceeding the Retention, then the **Insurer's** consent shall not be required for such disposition.

**(5)  *Applicability***
This *Defense and Settlement Clause* is not applicable to **Crisis Loss** or **Personal Reputation Expenses**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.

© All rights reserved.

104123 (04/10)

PNI_Litigation_Trust_0000195

**Executive Edge**



### B. Pre-Authorized Securities Defense Attorneys

The list of approved panel counsel law firms ("**Panel Counsel**") is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "Directors & Officers (Securities Claims)" link. The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**. With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of **Panel Counsel** may be amended from time to time by the **Insurer**. However, if a firm is removed from the list during the **Policy Period**, the **Insureds** shall be entitled to select such firm to conduct the defense of any **Securities Claim** made against such **Insureds** during the **Policy Period**.

The **Insureds** shall select a **Panel Counsel** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel** which will function as "lead counsel" in conducting the defense of the **Securities Claim**. This *Pre-Authorized Securities Defense Attorneys Clause* does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim**.

### C. Pre-Approved E-Consultant Firms

The list of pre-approved e-discovery consulting firms ("**E-Consultant Firms**") is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "e-Consultant Panel Members" link. The list provides the **Insureds** with a choice of firms from which a selection of an **E-Consultant Firm** shall be made. Any **E-Consultant Firm** may be hired by an **Insured** to perform **E-Discovery Consultant Services** without further approval by the **Insurer**.

### D. Allocation

An **Organization** is covered, subject to the policy's terms, conditions and limitations, only with respect to: (1) its indemnification of its **Insured Persons** as respects a **Claim** against or **Pre-Claim Inquiry** received by such **Insured Persons**; (2) a **Securities Claim** against such **Organization**; (3) **Crisis Loss**; and (4) **Derivative Investigation Costs**. Accordingly, the **Insurer** has no obligation under this policy for defense or other costs incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** except as respects coverage for a **Securities Claim**, or any obligation to pay loss arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured Person** in connection with any **Claim** other than a **Securities Claim**, such **Organization** and such **Insured Person** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between such **Organization**, such **Insured Person** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by such **Insured Person** and such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under this policy cannot be agreed to, then the

© All rights reserved.

PNI_Litigation_Trust_0000196

Executive Edge 

**Insurer** shall advance **Defense Costs** excess of any applicable Retention which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

## 10. CHANGES TO INSUREDS

### A. Transactions

In the event of a **Transaction** during the **Policy Period**, this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** alleged to have occurred after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and no portion of the premium paid for this policy shall be refundable. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the *Transaction Option* paragraph of Clause 8: *Discovery*.

### B. Subsidiary Additions

In addition to the definition of "**Subsidiary**" set forth in Clause 13: *Definitions*, **Subsidiary** also means any for-profit entity: (i) that is not formed as a partnership, (ii) of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and (iii) whose assets amount to:

(1) less than 25% of the total consolidated assets of each and every **Organization** as reported in the **Named Entity's** most recent public filing; or

(2) 25% or more of those total consolidated assets, but such entity shall be a "**Subsidiary**" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, whichever expires or ends first (the "**Auto-Subsidiary Period**");

provided that, with respect only to entities described in subparagraph (2) above, the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in subparagraph (2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

### C. Former Subsidiaries

In the event the **Named Entity** loses **Management Control** of a **Subsidiary** during or prior to the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this policy but only with respect to **Claims** for **Wrongful Acts** that occurred or are alleged to have occurred during the time that the **Named Entity** had **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries**.

### D. Scope Of Subsidiary Coverage

Coverage as is afforded under this policy with respect to a **Claim** made against any **Subsidiary** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed during the time that such **Subsidiary** and such **Insured Person** meet the respective definitions of **Subsidiary** and **Insured Person** set forth in this policy.

[11.1.1.17 (Panol National D And O Primary 10MM 2017-2018 AIG.PDF][Page 18 of 115]

© All rights reserved.

PNI_Litigation_Trust_0000197

Executive Edge 

## 11. APPLICATION AND UNDERWRITING

### A. Application And Reliance

The **Insurer** has relied upon the accuracy and completeness of the statements, warranties and representations contained in the **Application**. All such statements, warranties and representations are the basis for this policy and are to be considered as incorporated into this policy.

### B. Renewal Application Procedure

A written renewal application form is not required in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

### C. Insured Person Coverage Non-Rescindable

Under no circumstances shall the coverage provided by this policy for **Loss** under Insuring Agreement A. *Insured Person Coverage* be deemed void, whether by rescission or otherwise, once the premium has been paid.

### D. Severability Of The Application

The **Application** shall be construed as a separate application for coverage by each **Insured Person**. With respect to the **Application**, no knowledge possessed by any **Organization** or any **Insured Person** shall be imputed to any other **Insured Person**.

If the statements, warranties and representations in the **Application** were not accurate and complete and materially affected either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then the **Insurer** shall have the right to void coverage under this policy, *ab initio*, with respect to:

(1) **Loss** under Insuring Agreement B. *Indemnification Of Insured Person Coverage* for the indemnification of any **Insured Person** who knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed; and

(2) **Loss** under Insuring Agreement C. *Organization Coverage* if any **Insured Person** who is or was a chief executive officer or chief financial officer of the **Named Entity** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed.

The foregoing applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure had been provided to the **Insurer** or included within the **Application**.

106123 (04/10)

© All rights reserved.

PNI_Litigation_Trust_0000198

Executive Edge



## 12. GENERAL TERMS AND CONDITIONS

### A. *Payments And Obligations Of Organizations And Others*

#### 1. INDEMNIFICATION BY ORGANIZATIONS

The **Organizations** agree to indemnify the **Insured Persons** and/or advance **Defense Costs** to the fullest extent permitted by law. If the **Insurer** pays under this policy any indemnification or advancement owed to any **Insured Person** by any **Organization** within an applicable Retention, then that **Organization** shall reimburse the **Insurer** for such amounts and such amounts shall become immediately due and payable as a direct obligation of the **Organization** to the **Insurer**. The failure of an **Organization** to perform any of its obligations to indemnify the **Insured Persons** and/or advance **Defense Costs** under this policy shall not impair the rights of any **Insured Person** under this policy.

#### 2. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible directors and officers liability insurance, unless such other insurance is specifically written as excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. Such insurance as is provided by this policy shall apply as primary to any personal "umbrella" excess liability insurance purchased by an **Insured Person**.

With respect to **Employment Practices Claims**, such insurance as is provided by this policy shall apply only as excess of any other valid and collectible employment practices liability insurance, unless such other insurance is specifically written as excess insurance over the **Limit of Liability** provided by this policy. If according to the terms and conditions of any employment practices liability insurance policy providing coverage for an **Employment Practices Claim** made against an **Insured**, an insurer issuing such policy is not liable for **Loss**, then the **Insurer** shall be liable for payment of the portion of such **Loss** constituting covered **Loss** under this policy (specifically excess of any other valid and collectible employment practices liability insurance providing coverage for such **Loss**).

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under the *Insured Person Coverage* or the *Indemnification Of Insured Person Coverage*, shall be specifically excess of: (a) any indemnification provided by an **Outside Entity**; and (b) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**. Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other insurance company affiliate thereof **("Other Policy")** (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim, as required), then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount recoverable under such **Other Policy** for loss incurred in connection with such **Claim**.

#### 3. SUBROGATION

To the extent of any payment under this policy, the **Insurer** shall be subrogated to all of the **Organizations'** and **Insureds'** rights of recovery. Each **Organization** and each **Insured Person** shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the **Insurer** to exercise subrogation rights or any other rights, directly or in the name of the **Organization** or any **Insured Person**.

In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless the Conduct Exclusion applies with regard to such **Insured**.

© All rights reserved.

PNI_Litigation_Trust_0000199

**Executive Edge**



### 4. RECOVERY OF LIMITS

In the event the **Insurer** recovers amounts it paid under this policy, the **Insurer** will reinstate the **Limits of Liability** of this policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery. The **Insurer** assumes no duty to seek a recovery of any amounts paid under this policy. The **Insurer**, in its sole and absolute discretion, shall determine the amounts to be credited, if any, toward a reinstatement of the **Limits of Liability.**

### B. Cancellation

The **Named Entity** may cancel this policy at any time by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity Address**, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect. If the **Named Entity** shall cancel this policy, the **Insurer** shall retain the *pro rata* proportion of the premium herein.

### C. Notice And Authority

The **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of a **Claim**, **Pre-Claim Inquiry**, **Crisis** or circumstance, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, and the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**; provided, however, that the foregoing shall not limit the ability of an **Organization** or **Insured** to provide notice of a **Claim**, **Pre-Claim Inquiry**, **Crisis** or circumstance in accordance with Clause 7. *Notice And Reporting*, or to elect discovery and pay the **Additional Premium Amount** (as defined in Clause 8. *Discovery*).

### D. Currency

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in <u>The Wall Street Journal</u> on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

### E. Assignment

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

⊕ All rights reserved.

PNI_Litigation_Trust_0000200

**Executive Edge**

**AIG**

### F. *Disputes*

#### 1. *ALTERNATIVE DISPUTE RESOLUTION*

*ADR Options*

All disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to an alternative dispute resolution (ADR) process as provided in this clause. The **Named Entity** may elect the type of ADR process discussed below; provided, however, that absent a timely election, the **Insurer** may elect the type of ADR. In that case, the **Named Entity** shall have the right to reject the **Insurer's** choice of the type of ADR process at any time prior to its commencement, after which, the **Insured's** choice of ADR shall control.

*Mediation*

In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 90 days shall have elapsed from the date of the termination of the mediation.

*Arbitration*

In the event of arbitration, the decision of the arbitrator(s) shall be final, binding and provided to both parties, and the arbitration award shall not include attorney's fees or other costs.

*ADR Process*

*Selection of Arbitrator(s) or Mediator*: The **Insurer** and the **Named Entity** shall mutually consent to: (i) in the case of arbitration, an odd number of arbitrators which shall constitute the arbitration panel, or (ii) in the case of mediation, a single mediator. The arbitrator, arbitration panel members or mediator must be disinterested and have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the absence of agreement, the **Insurer** and the **Named Entity** each shall select one arbitrator, the two arbitrators shall select a third arbitrator, and the panel shall then determine applicable procedural rules.



*ADR Rules*: In considering the construction or interpretation of the provisions of this policy, the mediator or arbitrator(s) must give due consideration to the general principles of the law of the **State of Formation** of the **Named Entity**. Each party shall share equally the expenses of the process elected. At the election of the **Named Entity**, either choice of ADR process shall be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state reflected in the **Named Entity Address**. The **Named Entity** shall act on behalf of each and every **Insured** under this *Alternative Dispute Resolution Clause*. In all other respects, the **Insurer** and the **Named Entity** shall mutually agree to the procedural rules for the mediation or arbitration. In the absence of such an agreement, after reasonable diligence, the arbitrator(s) or mediator shall specify commercially reasonable rules.

104123 (04/10)

© All rights reserved.

PNI_Litigation_Trust_0000201

**Executive Edge**



### 2. ACTION AGAINST INSURER

Except as provided in Clause 12.F.1. *Alternative Dispute Resolution*, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any **Insured** or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, his or her spouse or legally recognized domestic partner, any **Organization** or any legal representative of the foregoing.

### G. Spousal, Domestic Partner And Legal Representative Extension

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse or legally recognized domestic partner of such **Insured Person**; or (ii) a property interest of such spouse or domestic partner, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall pay covered **Loss** arising from the **Claim** made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner. This policy shall pay covered **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person** in the event of incompetence, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed.

### H. Conformance To Law

In the event that there is an inconsistency between: (i) any period of limitation in this policy relating to the giving of notice of cancellation or discovery/extended reporting election, and (ii) the minimum or maximum period required by applicable law, where such law allows, the **Insurer** will resolve the inconsistency by applying the notice period that is more favorable to the **Insureds**. Otherwise, the notice period is hereby amended to the extent necessary to conform to applicable law.

Coverage under this policy shall not be provided to the extent prohibited by any law.

### I. Headings

The descriptions in the headings and the Guide of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

© All rights reserved.

PNI_Litigation_Trust_0000202

**Executive Edge**



## 13. DEFINITIONS

Terms with **"Bold"** typeface are used in this policy with the meanings and values ascribed to them below and/or in the Declarations:

**Application**      means:

(1) the written statements and representations made by an **Insured** and provided to the **Insurer** during the negotiation of this policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this policy;

(2) all warranties executed by or on behalf of an **Insured** and provided to the **Insurer** in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time; and

(3) each and every public filing by or on behalf of an **Organization** made with the SEC, including but not limited to the **Organization**'s Annual Report(s), 10Ks, 10Qs, 8Ks, and proxy statements, any financial information in such filings, and any certifications relating to the accuracy of the foregoing, provided that such public filing was filed during the 12 month period immediately preceding the inception of the **Policy Period**.

**Asset Protection Costs**      means reasonable and necessary fees, costs and expenses consented to by the **Insurer** incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

**Claim**      means:

(1) a written demand for monetary, non-monetary or injunctive relief, including, but not limited to, any demand for mediation, arbitration or any other alternative dispute resolution process;

(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges;

(3) an **Insured Person Investigation**;

(4) a **Derivative Demand**;

(5) an official request for **Extradition** of any **Insured Person**, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

"Claim" shall include any **Securities Claim** and any **Employment Practices Claim**.

**Crisis**      has the meaning as defined in the CrisisFund® Appendix attached to this policy.

**CrisisFund®**      means in the case of all **Crisis Loss**, including **Delisting Crisis Loss**, $100,000 for all **Crisis Loss** in the aggregate for all **Crises** first occurring during the **Policy Period** or any applicable **Discovery Period**.

104123 (04/12)      © All rights reserved.

PNI_Litigation_Trust_0000203

**Executive Edge**



| | |
|---|---|
| **Crisis Loss** | has the meaning as defined in the CrisisFund® Appendix attached to this policy. "**Delisting Crisis Loss**" means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in the CrisisFund ® Appendix). |
| **Defense Costs** | means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the cost of **E-Discovery Consultant Services** and premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from: |

(1) the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**; or

(2) an **Insured Person** lawfully: (i) opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or (ii) appealing any order or other grant of **Extradition** of that **Insured Person**.

**Defense Costs** shall not include: (i) **Derivative Investigation Costs**, (ii) **Pre-Claim Inquiry Costs**, or (iii) the compensation of any **Insured Person**.

| | |
|---|---|
| **Derivative Demand** | means a written demand by any shareholder of an **Organization** upon the board of directors (or equivalent management body) of such **Organization** to commence a civil action on behalf of the **Organization** against any **Executive** of the **Organization** for any actual or alleged wrongdoing on the part of such **Executive**. |
| **Derivative Investigation** | means, after receipt by any **Insured** of a **Claim** that is either a **Derivative Suit** or a **Derivative Demand**, any investigation conducted by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), as to how the **Organization** should respond. |
| **Derivative Investigation Costs** | means reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** and incurred by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), in connection with a **Derivative Investigation**. **Derivative Investigation Costs** shall not include the compensation of any **Insured Person**. |
| **Derivative Suit** | means a lawsuit purportedly brought derivatively on behalf of an **Organization** by a shareholder of such **Organization** against an **Executive** of the **Organization**. |
| **E-Discovery Consultant Services** | means solely the following services performed by an **E-Consultant Firm**: |

(1) assisting the **Insured** with managing and minimizing the internal and external costs associated with the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information ("**E-Discovery**");

104123 (04/16)

© All rights reserved.

PNI_Litigation_Trust_0000204

Executive Edge 

(2) assisting the **Insured** in developing or formulating an **E-Discovery** strategy which shall include interviewing qualified and cost effective **E-Discovery** vendors;

(3) serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the **Insurer** in executing and monitoring the **E-Discovery** strategy; and

(4) such other services provided by the **E-Consultant Firm** that the **Insured**, **Insurer** and **E-Consultant Firm** agree are reasonable and necessary given the circumstances of the **Securities Claim**.

**Employee**
means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee.

**Employment Practices Claim**
means a Claim alleging any:

(1) **Employment Practices Violation**; or

(2) **Third-Party EPL Violation**.

**Employment Practices Retention**
means the Retention applicable to **Loss** that arises out of an **Employment Practices Claim**.

**Employment Practices Violation**
means any actual or alleged:

(1) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2) harassment (including workplace bullying, sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(3) discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

(4) **Retaliation**;

(5) employment-related misrepresentation(s) to an **Employee** of the **Organization**;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity with the **Organization**, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(9) wrongful discipline;

(10) failure to grant tenure; or

© All rights reserved.

PNI_Litigation_Trust_0000205

**Executive Edge**                                                    

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

but only if the **Employment Practices Violation** relates to an **Employee** of an **Organization** or an **Outside Entity**, or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

**Enforcement Body** means: (i) any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general), or (ii) the enforcement unit of any securities or commodities exchange or other self-regulatory organization.

**Executive** means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in subparagraph (1) above, or a member of the senior-most executive body (including, but not limited to, a supervisory board); and

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

**Extradition Costs** means **Defense Costs** incurred by an **Insured** in lawfully opposing any effort to obtain the **Extradition** of an **Insured Person**.

**Foreign Jurisdiction** means any jurisdiction, other than the United States of America or any of its territories or possessions.

**Foreign Policy** means the standard executive managerial liability policy (including all mandatory endorsements, if any) approved by the **Insurer** or any of its affiliates to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then "Foreign Policy" means the standard basic policy form most recently offered for sale for comparable risks by the **Insurer** or any of its affiliates in that **Foreign Jurisdiction**. The term "**Foreign Policy**" shall not include any partnership managerial, pension trust or professional liability coverage.

**Insured** means any:

(1) **Insured Person**; or

(2) **Organization**.

⊖ All rights reserved.

PNI_Litigation_Trust_0000206

## Executive Edge



| | |
|---|---|
| **Insured Person** | means any:<br>(1) **Executive** of an **Organization**;<br>(2) **Employee** of an **Organization**; or<br>(3) **Outside Entity Executive.** |
| **Insured Person Investigation** | means any civil, criminal, administrative or regulatory investigation of an **Insured Person**:<br>(1) once the **Insured Person** is identified in writing by an **Enforcement Body** as a target of an investigation that may lead to a criminal, civil, administrative, regulatory or other enforcement proceeding;<br>(2) in the case of an investigation by the SEC or any state, local or foreign body with similar regulation or enforcement authority, after the service of a subpoena (or in a **Foreign Jurisdiction**, the equivalent legal process) upon the **Insured Person**; or<br>(3) commenced by the arrest and detainment or incarceration for more than 24 hours of an **Insured Person** by any law enforcement authority in a **Foreign Jurisdiction.**<br>Writings which may identify an **Insured Person** as a target can include a target or "Wells" letter, whether or not labeled as such. |
| **Liberty Protection Costs** | means:<br>(1) reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** in order for an **Insured Person** to lawfully seek the release of the **Insured Person** from any pre-**Claim** arrest or confinement to a (i) specified residence or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or<br>(2) reasonable and necessary premiums (but not collateral) consented to by the **Insurer** and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Person** for a specified amount required by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums: (i) arise out of an actual or alleged **Wrongful Act**, or (ii) are incurred solely by reason of such **Insured Person's** status as an **Executive** or **Employee** of an **Organization**; and, in either case, no **Claim** has been made and no **Pre-Claim Inquiry** is known. |
| **Loss** | means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs, Crisis Loss, Derivative Investigation Costs, Liberty Protection Costs** and **Pre-Claim Inquiry Costs**; however, "Loss" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) cleanup costs relating to hazardous materials, pollution or product defects; (6) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (7) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. Notwithstanding the foregoing subparagraph (7), the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of |

104123 (04/10)     21

© All rights reserved.

PNI_Litigation_Trust_0000207

**Executive Edge**



1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss and, unless precluded from doing so in a court order, shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this policy.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to the Conduct Exclusion): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) solely with respect to **Claims** other than **Employment Practices Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

**Management Control** means:

(1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or

(2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

**Non-Indemnifiable Loss** means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

**Organization** means:

(1) the **Named Entity**;

(2) each **Subsidiary**; and

(3) in the event a bankruptcy proceeding shall be instituted by or against any of the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

104123 (04/10)   22   © All rights reserved.

PNI_Litigation_Trust_0000208

**Executive Edge**



| | |
|---|---|
| **Outside Entity** | means any: (1) not-for-profit entity; or (2) other entity listed as an "**Outside Entity**" in an endorsement attached to this policy. |
| **Outside Entity Executive** | means any: (1) **Executive** of an **Organization** who is or was acting at the specific request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy. |
| | In the event of a disagreement between the **Organization** and an **Outside Entity Executive** as to whether such **Insured** was acting "at the specific request or direction of the **Organization**," this policy shall abide by the determination of the **Organization** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** against such **Outside Entity Executive** is made.  In the event no notice of any such determination is given to the **Insurer** within such period, this policy shall apply as if the **Organization** determined that such **Outside Entity Executive** was not acting at the **Organization's** specific request or direction. |
| **Personal Reputation Crisis** | means any negative statement that is included in any press release or published by any print or electronic media outlet regarding an **Executive** of an **Organization** made during the **Policy Period** by any individual authorized to speak on behalf of an **Enforcement Body**. |
| **Personal Reputation Expenses** | means reasonable and necessary fees, costs and expenses of a **Crisis Firm** (as defined in the **CrisisFund**® Appendix attached to this policy) retained within 30 days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the adverse effects specifically to such **Executive's** reputation from a **Personal Reputation Crisis**.  "**Personal Reputation Expenses**" shall not include any fees, costs or expenses of any **Crisis Firm** incurred by an **Executive** if such **Crisis Firm** is also retained by or on behalf of an **Organization**. |
| **Policy Period** | means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy. |
| **Pre-Claim Inquiry** | means any **Pre-Claim**: |

(1) verifiable request for an **Insured Person** of any **Organization**: (a) to appear at a meeting or interview; or (b) produce documents that, in either case, concerns the business of that **Organization** or that **Insured Person's** insured capacities, but only if the request came from any:

    (i) **Enforcement Body**; or

    (ii) **Organization**, or, on behalf of an **Organization**, by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body):

        (A) arising out of an inquiry or investigation by an **Enforcement Body** concerning the business of that **Organization** or that **Insured Person's** insured capacities; or

        (B) as part of its **Derivative Investigation**; and

11.1.1.7 (Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF) (Page 30 of 115]                    ® All rights reserved.

PNI_Litigation_Trust_0000209

**Executive Edge**



(2) arrest or confinement of an **Executive** of an **Organization** to a: (a) specified residence; or (b) secure custodial premises operated by or on behalf of an **Enforcement Body**, in connection with the business of any **Organization** or an **Insured Person's** capacity as an **Executive** or **Employee** of an **Organization**.

"**Pre-Claim Inquiry**" shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in an **Organization's** and/or **Enforcement Body's** normal review or compliance process.

**Pre-Claim Inquiry Costs**  means the reasonable and necessary pre-Claim fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Insured Person**, including attendance at an interview or meeting requested by an **Enforcement Body**, but excluding (i) any compensation of any **Insured Person**; and (ii) the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information in the possession or control of an **Organization**, the requestor or any other third party .

**Related Claim**  means a **Claim** alleging, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in another **Claim** made against an **Insured**; or (ii) the subject of a **Pre-Claim Inquiry** received by an **Insured Person**.

**Related Pre-Claim Inquiry**  means a **Pre-Claim Inquiry** involving, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in a **Claim** made against an **Insured**; or (ii) the subject of another **Pre-Claim Inquiry** received by an **Insured Person**.

**Retaliation**  means a retaliatory act of an **Insured** alleged to be in response to any of the following activities: (i) the disclosure or threat of disclosure by an **Employee** of the **Organization** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (ii) the actual or attempted exercise by an **Employee** of the **Organization** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (iii) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (iv) strikes of an **Employee** of the **Organization** or an **Outside Entity**.

© All rights reserved.

PNI_Litigation_Trust_0000210

**Executive Edge** 

| | |
|---|---|
| **Securities Claim** | means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**: |

(1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

    (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

    (ii) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

(2) which is a **Derivative Suit**.

Notwithstanding the foregoing, the term "**Securities Claim**" shall include an administrative or regulatory proceeding against an **Organization** that meets the requirements of subparagraph (1) above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**.

| | |
|---|---|
| **Securities Retention** | means the Retention applicable to Loss (including **Pre-Claim Inquiry Costs**) that arises out of (i) a **Securities Claim**, or (ii) **Pre-Claim Inquiry Costs** incurred in response to: (a) a **Pre-Claim Inquiry** by an **Enforcement Body** charged with the regulation of securities, or (b) a **Derivative Investigation**. |
| **SOX 304 Costs** | means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** solely to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002. **SOX 304 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a). |
| **Subsidiary** | means: |

(1) any for-profit entity that is not formed as a partnership of which the **Named Entity** has or had **Management Control** on or before the inception of the **Policy Period** either directly or indirectly through one or more of its other **Subsidiaries**; and

(2) any not-for-profit entity sponsored exclusively by an **Organization**.

A for-profit entity ceases to be a **Subsidiary** when the **Named Entity** no longer maintains **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries**. A not-for-profit entity ceases to be a **Subsidiary** when such entity is no longer sponsored exclusively by an **Organization**.

© All rights reserved.
[11.1.1.1] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 32 of 115]

PNI_Litigation_Trust_0000211

**Executive Edge**



| | |
|---|---|
| **Third-Party EPL Violation** | means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs (2) and (3) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Insured Person** or applicant for employment with the **Organization** or an **Outside Entity**, including, but not limited to, students, patients, members, customers, vendors and suppliers. |

**Transaction**  means:

(1) the **Named Entity** consolidating with or merging into another entity such that the **Named Entity** is not the surviving entity, or selling all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert;

(2) any person or entity or group of persons or entities acting in concert acquiring **Management Control** of the **Named Entity**; or

(3) the appointment by any **Enforcement Body** of, or where any **Enforcement Body** assumes the role of, a trustee, receiver, conservator, rehabilitator, liquidator or similar official to take control of, supervise or oversee the **Named Entity**, or to liquidate or sell all or substantially all of the assets of the **Named Entity**.

**UK Corporate Manslaughter Act Defense Costs**  means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction.

**Wrongful Act**  means:

(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation** or **Third-Party EPL Violation**:

(i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

(ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

(iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim**.

PNI_Litigation_Trust_0000212

CRISISFUND® APPENDIX

I. **DEFINITIONS**

(a) **"Crisis"** means:

(1) a **Delisting Crisis**; or

(2) one of the following events which, in the good faith opinion of the Chief Financial Officer of an **Organization** did cause or is reasonably likely to cause a **"Material Effect on an Organization's Common Stock Price"**:

(i) *Negative earning or sales announcement*
The public announcement of an **Organization's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) an **Organization's** prior year's earnings or sales for the same period; (ii) an **Organization's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of an **Organization's** earnings or sales.

(ii) *Loss of a patent, trademark or copyright or major customer or contract*
The public announcement of an unforeseen loss of: (i) an **Organization's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of an **Organization**; or (iii) a major contract with an **Organization**.

(iii) *Product recall or delay*
The public announcement of the recall of a major product of an **Organization** or the unforeseen delay in the production of a major product of an **Organization**.

(iv) *Mass tort*
The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

(v) *Employee layoffs or loss of key executive officer(s)*
The public announcement of layoffs of **Employees** of an **Organization**. The death or resignation of one or more key **Executives** of the **Named Entity**.

(vi) *Elimination or suspension of dividend*
The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by an **Organization**.

(vii) *Write-off of assets*
The public announcement that an **Organization** intends to write off a material amount of its assets.

(viii) *Debt restructuring or default*
The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

(ix) *Bankruptcy*
The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**; or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

(x) *Governmental or regulatory litigation*
The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

(xi)   _Unsolicited takeover bid_

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** of the **Named Entity**.

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund** has been exhausted.

(b)  "**Crisis Firm**" means any public relations firm, crisis management firm or law firm on the list of approved firms that is accessible through the online directory at http://www.chartisinsurance.com/panelcounseldirectory under the "**CrisisFund®**" link. Solely for **Delisting Crises**, "**Crisis Firm**" shall also include any **Panel Counsel** (as defined in Clause 9.B. of the policy) approved to handle **Securities Claims**. Any "**Crisis Firm**" may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer**.

(c)  "**Crisis Loss**" means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1)  the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2)  the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3)  travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection with the **Crisis**.

(d)  "**Crisis Services**" means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**) and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis**.

(e)  "**Delisting Crisis**" means written notice to an **Organization** that such **Organization's** securities will be or have been delisted from an **Exchange** at the initiation of such **Exchange**.

(f)  "**Exchange**" means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g)  "**Material Effect on an Organization's Common Stock Price**" means, within a period of 24 hours, that the price per share of an **Organization's** common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II.  EXCLUSIONS

The term **Crisis** shall not include any event relating to any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time.

## ENDORSEMENT# 1

This endorsement, effective *12:01 am*    *January 16, 2017*    forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### BROAD FORM MANAGEMENT LIABILITY INSURANCE POLICY

### AMENDATORY ENDORSEMENT

### FLORIDA

The policy is amended as follows:

1.  Clause 8, *DISCOVERY, Discovery Premium* is deleted in its entirety and replaced with the following:

    *Discovery Premium*
    The **Additional Premium Amount** for one to six years shall be an amount to be determined by the **Insurer**. As used herein, **"Full Annual Premium"** means the premium level in effect immediately prior to the end of the **Policy Period**.

2.  Clause 11, *APPLICATION AND UNDERWRITING, A. Application and Reliance* is deleted in its entirety and replaced with the following:

    *A. Application and Reliance*
    The **Insurer** has relied upon the accuracy and completeness of the statements and representations contained in the **Application**. All such statements and representations are the basis for this policy and are to be considered as incorporated into this policy.

3.  Clause 11, *APPLICATION AND UNDERWRITING,* the second paragraph of *D. Severability of the Application* is deleted in its entirety and replaced with the following:

    If the statements and representations in the **Application** were not accurate and complete and materially affected either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then the **Insurer** may have the right to void coverage under this policy, *ab initio*, with respect to:

    (1)  **Loss** under Insuring Agreement B. *Indemnification Of Insured Person Coverage* for the indemnification of any **Insured Person** who knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed; and

© All rights reserved.
*END 001*

PNI_Litigation_Trust_0000215

**ENDORSEMENT# _1_**    (continued)

    (2)  **Loss** under Insuring Agreement C. *Organization Coverage* if any **Insured Person** who is or was a chief executive officer or chief financial officer of the **Named Entity** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed.

4.  Clause 12.F.1, *ALTERNATIVE DISPUTE RESOLUTION*, is modified to the extent necessary to provide the following:

In the event of arbitration, the decision shall be non-binding, unless prior to commencement of the arbitration process, the **Insurer** and the **Named Entity** agree that the decision shall be binding.

5.  Clause **12.F.1.** *ALTERNATIVE DISPUTE RESOLUTION* is amended by deleting the third sentence of the second paragraph of the section entitled *ADR Process* and replacing it with the following:

Either choice of ADR process shall be commenced in the state of Florida.

6.  Clause 13. **DEFINITIONS**, "Application" is modified to the extent necessary to provide the following:

With respect to any statements or descriptions made in connection with the Application for insurance, which becomes part of the Policy, all such statements or descriptions shall be deemed to be representations and not warranties.

7.  Clause 13. **DEFINITIONS**, "Loss" is modified to the extent necessary to provide the following:

Punitive, exemplary and multiplied damages are only insurable to the extent (1) such damages are insurable under the law of any jurisdiction other than Florida that has a substantial relationship to the **Insureds**, the **Claim**, the **Insurer**, or this policy and is most favorable to the insurability of such damages and (2) that this policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to the laws of any jurisdiction other than Florida.

     ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◉ All rights reserved.
***END 001***

**106484 (8/10)**     **2**

PNI_Litigation_Trust_0000216

## ENDORSEMENT# *2*

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLASS CERTIFICATION EVENT STUDY EXPENSES

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

**I.**

Clause 2. EXTENSIONS is amended by adding the following to the end thereof:

**D. *Class Certification Event Study Expenses***

For any **Securities Claim**, no Retention shall apply to **Loss** incurred as **Class Certification Event Study Expenses**.

**II.**

The definition of **Loss** shall include **Class Certification Event Study Expenses**.

**III.**

Clause 13. DEFINITIONS is further amended by adding the following:

**Class Certification**
**Event Study Expenses**      means the reasonable and necessary fees, costs and expenses of an expert witness consented to by the **Insurer**, which consent shall not be unreasonably withheld, incurred by an **Insured** to conduct an admissible event study regarding any issues of fact relevant to the court's decision as to whether to grant class certification in a **Securities Claim**.

**IV.**

If the **Panel Counsel** firm defending a **Securities Claim** recommends to the **Insured** a specific expert witness to conduct an event study in the defense of such **Securities Claim**, then the **Insured** may hire such expert witness to perform such event study without further approval by the **Insurer**.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

©All rights reserved.
**END 002**

PNI_Litigation_Trust_0000217

## ENDORSEMENT# *3*

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### AUDIT COMMITTEE COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that the
definition of "Executive" in Clause 13. DEFINITIONS is hereby amended to include the
following:

    (4)   **Executive** as defined in (1)-(3) above or any **Employee** of the **Organization**
serving as a member of any internal committee established by and for the
**Organization**, including but not limited to the **Organization's** "audit
committee," as that committee is described in the Securities and Exchange
Commission Release No. 34- 42266- Audit Committee Disclosure Rule.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
### END 003

PNI_Litigation_Trust_0000218

ENDORSEMENT# *4*

This endorsement, effective at *12:01 am     January 16, 2017*     forms a part of
Policy number *06-680-86-39*
Issued to: *PATRIOT NATIONAL, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

## FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy, and 2) "you", "your", "named Insured" and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

It is hereby agreed and understood that the cancellation provision of this policy is to be deleted in its entirety and to be replaced with the following:

A.    The Insured shown in the Declarations may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

B.1.   Cancellation for Policies in Effect Ninety (90) Days or Less

If this policy has been in effect ninety (90) days or less the Insurer may cancel this policy by mailing or delivering to the Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a)    Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

(b)    Twenty (20) days before the effective date of cancellation if the Insurer cancels for any other reason, except the Insurer may cancel immediately if there has been:

1.    A material misstatement or misrepresentation; or
2.    A failure to comply with underwriting requirements established by the Insurer.

B.2.   Cancellation for Policies in Effect for More Than Ninety (90) Days

If this policy has been in effect for more than ninety (90) days the Insurer may cancel this policy only for one or more of the following reasons:

(a) Nonpayment of premium;

(b) The policy was obtained by a material misstatement;

(c)    There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the date of effectuation of coverage;

(d)    There has been a substantial change in the risk covered by the policy; or

(e)    The cancellation is for all insureds under such policies for a given class of insureds.

© All rights reserved.

*END 004*

78105 (6/15)
[11.1.1.1. Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 40 of 115]                     Page 1 of 2

**ENDORSEMENT#** *4*   (continued)

If the Insurer cancels this policy for any of these reasons, the Insurer will mail or deliver to the Named Insured written notice of cancellation, accompanied by the reasons for the cancellation at least:

1. Ten (10) days before the effective date of cancellation if cancellation is for the reason stated in B2(a) above; or

2. Forty-five (45) days before the effective date of cancellation if cancellation is for the reasons stated in B2 (b), (c), (d) or (e) above.

3. One hundred twenty days (120) before the effective date of cancellation of a commercial residential property insurance policy if cancellation is for the reasons stated in B.2.(b),(c),(d) or (e) above.

B.3. If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata, however, such refund will not be less than 90% of the pro rata unearned premium. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect.

It is hereby understood that the Non-renewal provision of this policy is deleted and replaced with the following:

C.1. Non-Renewal

(a) If the Insurer decides not to renew this policy the Insurer will mail or deliver to the Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least forty-five (45) days prior to the expiration of this policy. Written notice of nonrenewal will be provided at least one hundred twenty (120) days prior to the expiration of a commercial residential property insurance policy.

(b) Any notice of nonrenewal will be mailed or delivered to the Insured's last mailing address known to the Insurer. If notice is mailed, proof of mailing will be sufficient proof of notice.

C.2. Renewal

The Insurer shall give the named insured at least forty-five (45) days advance written notice of the renewal premium.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 004*

76195 (6/15)

[11.1.1.1 Public National_D_And_O_Primary_10MM_2017-2018_AIG.PDF][Page 2 of 2][Page 41 of 115]

PNI_Litigation_Trust_0000220

**ENDORSEMENT# 5**

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SOX 304 COSTS AMENDATORY

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of "**SOX 304 Costs**" in its entirety and replacing it with the following:

**SOX 304 Costs**    means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002. **SOX 304 Costs** provided by this coverage extension do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 005*

## ENDORSEMENT# 6

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number     *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DODD-FRANK 954 COSTS ADDED

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

#### I.

Clause 2.A *Executive Protection* Suite is amended by deleting subparagraph (1) thereof in
its entirety and replacing it with the following:

(1) **SOX 304 Costs** and **Dodd-Frank 954 Costs:**

#### II.

Clause 13. DEFINITIONS is amended by adding the following at the end thereof:

| | |
|---|---|
| **Dodd-Frank 954 Costs** | means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by an **Executive** to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act. **Dodd-Frank 954 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Insured Person** pursuant to Section 954. |

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

✪All rights reserved.
*END 006*

115283 (5/13)                    Page 1 of 1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 43 of 115]

PNI_Litigation_Trust_0000222

**ENDORSEMENT# 7**

This endorsement, effective *12:01 am*    *January 16, 2017*    forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY ADDITIONS AMENDED
### (90 DAYS)

In consideration of the premium charged, it is hereby understood and agreed that Clause 10, CHANGES TO INSUREDS, Paragraph B.2, Subsidiary Additions, is deleted in its entirety and replaced with the following:

(2) 25% or more of those total consolidated assets, but such entity shall be a "**Subsidiary**" only: (i) for a period of ninety (90) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, whichever expires or ends first (the "**Auto-Subsidiary Period**");

provided that, with respect only to entities described in subparagraph (2) above, the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 007*

107316 (11/10)    1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 44 of 115]

PNI_Litigation_Trust_0000223

**ENDORSEMENT#** *8*

This endorsement, effective *12:01 am*      *January 16, 2017*      forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAIM DEFINITION AMENDED
### REQUESTS TO TOLL STATUTE OF LIMITATIONS

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

**I.**

Clause 13. DEFINITIONS, the definition of **"Claim"** is amended by adding the following
subparagraph (6) as follows:

(6)      the receipt by an **Insured** of any written request to toll a period or statute of
limitations which may be applicable to any **Claim** that may be made for any
**Wrongful Act** of any **Insured**.

**II.**

Clause 7. NOTICE AND REPORTING, the last sentence of subparagraph (c) entitled
*Relation Back to Reported Circumstances Which May Give Rise to a Claim* is deleted in
its entirety and replaced with the following:

In order to be effective, notification of circumstances must specify the facts,
circumstances, nature of the **Wrongful Act** anticipated and reasons for anticipating
such **Claim**, with full particulars as to dates, persons and entities involved.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 008*

PNI_Litigation_Trust_0000224

**ENDORSEMENT# 9**

This endorsement, effective *12:01 am*       *January 16, 2017*       forms a part of
policy number     *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by       *National Union Fire Insurance Company of Pittsburgh, Pa.*

**APPLICATION AMENDED
UNDERWRITING OF THIS POLICY
WRITTEN REPRESENTATIONS AND PUBLIC FILINGS**

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting subparagraph (1) of the definition of **Application**
and replacing it with the following:

(1) the written statements and written representations made by an **Insured** and
provided to the **Insurer** during the underwriting of this policy, or contained in any
application or other materials or information provided to the **Insurer** in connection
with the underwriting of this policy; provided that public filings by or on behalf of
an **Organization** made with the SEC shall only include those as set forth in
subparagraph (3) below;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 009*

106827 (9/10)                              1

PNI_Litigation_Trust_0000225

## ENDORSEMENT# *10*

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number     *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRE-CLAIM INQUIRY AMENDED
### CHANGE "AND" TO "OR"

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting subparagraph (1)(ii)(B) of the definition of **Pre-Claim Inquiry** in its entirety and replacing it with the following:

(B) as part of its **Derivative Investigation;** or

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

☉ All rights reserved.
### *END 010*

108604 (4/11)                    1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 47 of 115]

PNI_Litigation_Trust_0000226

## ENDORSEMENT# *11*

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number     *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SEVERABILITY OF EXCLUSIONS AMENDED
### TOP 3 OF NAMED ENTITY

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.A. *Full Severability of Exclusions For Insured Persons* is deleted in its entirety and replaced with the following:

A. *Full Severability of Exclusions for Insured Persons*

In determining whether any of the following Exclusions apply, the **Wrongful Acts** of any **Insured Person** shall not be imputed to any other **Insured**.   For Insuring Agreement C. *Organization Coverage*, only the **Wrongful Acts** of any chief executive officer, chief financial officer or general counsel (or equivalent position) of the **Named Entity** shall be imputed to an **Organization**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
### END 011

PNI_Litigation_Trust_0000227

**ENDORSEMENT#** *12*

This endorsement, effective *12:01 am*      *January 16, 2017*      forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**RETENTION EROSION THROUGH SIDE-A INSURANCE FILL-IN**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   The following paragraph is added to the end of Clause 5. RETENTION:

If an **Organization** fails or refuses to advance, pay or indemnify covered
**Indemnifiable Loss** of an **Insured Person** within an applicable Retention, then solely
to the extent an insurer agrees to pay or pays such **Loss** pursuant to the terms and
conditions of a Side A-Excess DIC Insurance Policy, the **Insurer** shall recognize that
the **Side A-Excess DIC Insurance Policy** payments erode (contribute to and reduce)
the applicable Retention amount.

2.   As a precondition to such recognition of the erosion of the Retention amount, an
**Insured** shall provide the **Insurer** with written proof, to the **Insurer's** satisfaction, of
the payment of such **Loss** under the **Side A-Excess DIC Insurance Policy.**

3.   Advancement, payment or indemnification of an **Insured Person** by an **Organization**
is deemed "failed" if it has been requested by an **Insured Person** in writing and has
not been provided by, agreed to be provided by, or acknowledged as an obligation
by an **Organization** within 60 days of such request; and advancement, payment or
indemnification by an **Organization** is deemed "refused" if an **Organization** gives a
written notice of the refusal to the **Insured Person.** Advancement, payment or
indemnification of an **Insured Person** by an **Organization** shall only be deemed
"failed" or "refused" to the extent such advancement, payment or indemnification is
not provided, or agreed to be provided, or acknowledged by and collectible from an
**Organization.**

4.   **"Side A-Excess DIC Insurance Policy"** means any insurance policy written
specifically as excess over this policy that provides "Side A" (non-indemnifiable or
non-indemnified loss) coverage with difference-in-conditions features.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

⊙ All rights reserved.
**END 012**

PNI_Litigation_Trust_0000228

ENDORSEMENT# *13*

This endorsement, effective *12:01 am*   *January 16, 2017*   forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## MOLD EXCLUSION
## (NON-INDEMNIFIABLE LOSS CARVEBACK)

This endorsement modifies insurance provided under the following:

Executive Edge

In consideration for the premium charged it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** for any damage, loss, cost or expense, including, but not limited to damages, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

(1)   Any **Fungus(i)**, **Molds(s)**, mildew or yeast, or

(2)   Any **Spore(s)** or toxins created or produced by or emanating from such **Fungus(i)**, **Mold(s)**, mildew or yeast, or

(3)   Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any **Fungus(i)**, **Mold(s)**, mildew or yeast, or

(4)   Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **Fungus(i)**, **Mold(s)**, mildew, yeast, or **Spore(s)** or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that bodily injury, property damage, personal and advertising injury, loss, cost or expense; provided, however, this exclusion shall not apply to **Non-Indemnifiable Loss**, other than **Loss** constituting **Cleanup Costs**.

Solely for purposes of this endorsement, the following definitions shall apply:

"**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of any **Fungus, Molds**, mildew or yeast.

© All rights reserved.
*END 013*

PNI_Litigation_Trust_0000229

ENDORSEMENT# *13* (continued)

"Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group **Fungi**, lacking chlorophyll, and including Molds, rusts, mildews, smuts, and mushrooms.

"Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and **Fungi** that produce **Molds**.

"Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any **Fungus(i)**, **Mold(s)**, mildew, plants, organisms or microorganisms.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 013*

PNI_Litigation_Trust_0000230

## ENDORSEMENT# *14*

This endorsement, effective *12:01 am*      *January 16, 2017*      forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### LOSS AMENDED
### APPLICABLE LAW

In consideration of the premium charged, it is hereby understood and agreed, that Clause
13. DEFINITIONS is amended by adding the following to the end of the second paragraph
of the definition of **Loss**:

> Applicable law shall include, but not be limited to, the address or place of domicile
> of the **Insurer**, any **Organization's** place of domicile, the address of the **Named
> Entity** or of any other **Organization** involved in the **Claim**, or the place of residence
> of any **Insured Person** involved in the **Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

© All rights reserved.
*END 014*

PNI_Litigation_Trust_0000231

**ENDORSEMENT#** *15*

This endorsement, effective *12:01 am*       *January 16, 2017*       forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**LOSS AMENDED
CLEANUP COSTS**

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting subparagraph (5) of the first paragraph of the
definition of **Loss** and replacing it with the following:

     (5) cleanup costs relating to hazardous materials, pollution or product defects
     that result in the release of hazardous materials or pollutants;

    ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 015*

106832 (9/10)                    1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 53 of 115]

**ENDORSEMENT# *16***

This endorsement, effective *12:01 am*    *January 16, 2017*    forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**LOSS AMENDED
DELETE COURT ORDER WORDING**

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the last sentence of the first paragraph of the definition of **Loss** and replacing it with the following:

> Notwithstanding the foregoing subparagraph (7), the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss and shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
***END 016***

106816 (9/10)                                                  1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 54 of 115]

ENDORSEMENT# *17*

This endorsement, effective *12:01 am*    *January 16, 2017*    forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SECURITIES CLAIM DEFINITION - COMMON LAW

In consideration of the premium charged, it is hereby understood and agreed that the policy's definition of "**Securities Claim**," is deleted in its entirety and replaced with the following:

"**Securities Claim**" means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization** made against any **Insured**:

(1)    alleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:

    (a)    brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

    (b)    brought by a security holder or purchaser or seller of securities of an **Organization** with respect to such security holder's, purchaser's or seller's interest in securities of such **Organization**; or

(2)    which is a **Derivative Suit**.

Notwithstanding the foregoing, the term "**Securities Claim**" shall:

(1)    include an administrative or regulatory proceeding against an **Organization** that meets the requirements of subparagraph (1) above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**; and

(2)    not include any **Claim** brought by any **Executive** or **Employee** of an **Organization** alleging, arising out of, based upon or attributable to the loss of, or failure to receive or obtain, the benefit of stock, stock warrants, stock options or other securities of an **Organization**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◆ All rights reserved.
*END 017*

104962 (4/10)                              Page 1 of 1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 55 of 115]

PNI_Litigation_Trust_0000234

ENDORSEMENT# *18*

This endorsement, effective *12:01 am*   *January 16, 2017*   forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PROFESSIONAL SERVICES EXCLUSION
### WITH SECURITIES CLAIM CARVEBACK AND
### WITH LIMITATION OF PRE-CLAIM INQUIRY TO SECURITIES VIOLATIONS

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.  The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** or **Pre-Claim Inquiry** alleging, arising out of, based upon or attributable to the **Organization's** or any **Insured's** performance of, or failure to perform professional services for others, or any acts, errors or omissions relating thereto.

    It is further understood and agreed, however, that the foregoing exclusion shall not apply to any **Securities Claim**, provided that such **Securities Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Organization** or any **Insured.**

2.  The term **"Pre-Claim Inquiry"** as set forth in Clause **13. DEFINITIONS** is deleted in its entirety and replaced with the following:

    **Pre-Claim Inquiry** means any pre-Claim:
    (1) verifiable request for an **Insured Person** of any **Organization:** (a) to appear at a meeting or interview; or (b) produce documents that, in either case, concerns the business of that **Organization** or that **Insured Person's** insured capacities, but only if the request came from any:
        (i) **Enforcement Body;** or
        (ii) **Organization,** or, on behalf of an **Organization,** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body):
            (A) arising out of an inquiry or investigation by an **Enforcement Body** concerning the business of that **Organization** or that **Insured Person's** insured capacities; or
            (B) as part of its **Derivative Investigation;** and
    (2) arrest or confinement of an **Executive** of an **Organization** to a: (a) specified residence; or (b) secure custodial premises operated by or on behalf of an **Enforcement Body,** in connection with the business of any **Organization** or an **Insured Person's** capacity as an **Executive** or **Employee** of an **Organization;**

◊ All rights reserved.
### *END 018*

PNI_Litigation_Trust_0000235

<u>ENDORSEMENT#</u> *18* (continued)

provided that any such verifiable request, arrest or confinement relates solely to a **Securities Violation.**

"**Pre-Claim Inquiry**" shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in an **Organization's** and/or **Enforcement Body's** normal review or compliance process.

3. Clause 13. DEFINITIONS is further amended by adding the following:

**Securities Violation** means any actual or suspected violation of the Securities Act of 1933 (as amended), the Securities Exchange Act of 1934 (as amended), any similar law of any jurisdiction anywhere in the world or any of the rules or regulations promulgated under any such laws; provided that such violation arises from: (1) financial, proxy or other disclosure requirements which apply to an **Organization** due to its registration of, its offering or sale or the public trading of securities representing debt of or equity in the **Organization;** or (2) the use of non-public information concerning the **Organization.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 018*

## ENDORSEMENT# *19*

This endorsement, effective *12:01 am*   *January 16, 2017*   forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONDUCT EXCLUSIONS AMENDED
### (FINAL, NON-APPEALABLE ADJUDICATION IN ANY UNDERLYING PROCEEDING PERSONAL PROFIT AND FINANCIAL ADVANTAGE)

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(1) *Conduct* is deleted in its entirety and replaced with the following:

(1)   *Conduct*     arising out of, based upon or attributable to any:

(a) remuneration, personal profit or other financial advantage to which the **Insured** was not legally entitled; or

(b) deliberate criminal or deliberate fraudulent act by the **Insured**;

if established by any final, non-appealable adjudication in any underlying proceeding;

provided, however:

(i) Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations; and

(ii) with respect to Conduct Exclusion (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

©All rights reserved.
### *END 019*

113731 (3/13)                    Page 1 of 1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 58 of 115]

PNI_Litigation_Trust_0000237

**ENDORSEMENT# 20**

This endorsement, effective *12:01 am*          *January 16, 2017*          forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SEVERABILITY OF THE APPLICATION AMENDED
### (ADVANCEMENT)

In consideration of the premium charged, it is hereby understood and agreed that the
following paragraph is added to Clause 11.D. *Severability of the Application* at the end thereof:

> Solely with respect to this *Severability of the Application Clause*, the **Insurer** agrees to
> advance payments of **Loss** unless and until an order by a court of competent
> jurisdiction provides either that such advancement is not required or that coverage
> is void *ab initio*, subject to the condition that such advance payments by the **Insurer**
> shall be repaid to the **Insurer** by the **Organization** as soon as reasonably
> practicable after an order provides that such advancement is not required or that
> coverage is void *ab initio*. Clause 12.F.1. *ALTERNATIVE DISPUTE RESOLUTION* of this
> policy shall not apply to this paragraph.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

© All rights reserved.
*END 020*

105000 (4/10)                                   Page 1 of 1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 59 of 115]

PNI_Litigation_Trust_0000238

## ENDORSEMENT# *21*

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SEVERABILITY OF THE APPLICATION AMENDED (NON-RESCINDABLE)

In consideration of the premium charged, it is hereby understood and agreed that Clause 11. APPLICATION AND UNDERWRITING is amended by deleting paragraphs C and D thereof and replacing them with the following:

C.    *Non-Rescindable*

Under no circumstances shall the coverage provided by this policy be deemed void, whether by rescission or otherwise, once the premium has been paid.

D.    *Severability Of The Application*

The **Application** shall be construed as a separate application for coverage by each **Insured Person**. With respect to the **Application**, no knowledge possessed by any **Organization** or any **Insured Person** shall be imputed to any other **Insured Person**.

However, in the event that any of the statements, warranties or representations are not accurately and completely disclosed in the **Application**, no coverage shall be afforded for any **Claim** alleging, arising out of, based upon, attributable to or in consequence of the subject matter of any incomplete or inaccurate statements, warranties or representations under:

1.    Insuring Agreement A. *Insured Person Coverage*, with respect to any **Insured Person** who knew of such inaccurate or incomplete statements, warranties or representations;

2.    Insuring Agreement B. *Indemnification Of Insured Person Coverage*, with respect to the indemnification of any **Insured Person** who knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed; and

3.    Insuring Agreement C. *Organization Coverage*, with respect to any **Organization** if any past or present chief executive officer or chief financial officer of the **Named Entity** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed.

The foregoing applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure had been provided to the **Insurer** or included within the **Application**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 021*

PNI_Litigation_Trust_0000239

**ENDORSEMENT# 22**

This endorsement, effective *12:01 am*     *January 16, 2017*        forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DISCOVERY CLAUSE AMENDED
### DELETE "OR REPLACED"

In consideration of the premium charged, it is hereby understood and agreed that in Clause
8. DISCOVERY, the section entitled *"Bilateral Discovery Options"* is deleted in its entirety
and replaced with the following:

*Bilateral Discovery*
*Options*

Except as indicated below, if the **Named Entity** shall cancel or
the **Named Entity** or the **Insurer** shall refuse to renew this
policy, the **Insureds** shall have the right to a period of one to
six years following the effective date of such cancellation or
nonrenewal (the **"Discovery Period"**), upon payment of the
respective **"Additional Premium Amount"** described below, in
which to give to the **Insurer** written notice pursuant to Clause
7(a) and Clause 7(c) of the policy of: (i) **Claims** first made
against an **Insured**; (ii) **Pre-Claim Inquiries** first received by an
**Insured Person**; and (iii) circumstances of which an
**Organization** or an **Insured** shall become aware, in any such
case, during said **Discovery Period** and solely with respect to a
**Wrongful Act** that occurs prior to the end of the **Policy Period.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 022*

106006 (7/10)                                   1

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 61 of 115]

PNI_Litigation_Trust_0000240

**ENDORSEMENT# *23***

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**BANKRUPTCY WAIVER ADDED**

In consideration of the premium charged, it is hereby understood and agreed that Clause 3.C. *Bankruptcy And Insolvency* is amended by adding the following to the end thereof:

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively **"Bankruptcy Law"**) then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

  (a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and

  (b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

© All rights reserved.
*END 023*

106012 (7/10)     1

PNI_Litigation_Trust_0000241

**ENDORSEMENT# *24***

This endorsement, effective *12:01 am*    *January 16, 2017*    forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**FEE EXCLUSION
(DEFENCE COSTS CARVEBACK)**

This endorsement modifies insurance provided under the following:

Executive Edge

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for Loss in connection with any **Claim** for the return or reimbursement of fees paid by a limited partnership to a general partner or an affiliate thereof in connection with services performed for the limited partnership; provided, however, that this exclusion shall not apply to **Defense Costs**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

_____

**AUTHORIZED REPRESENTATIVE**

© All rights reserved.
***END 024***

110821 (2/12)                          Page 1 of 1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 63 of 115]

ENDORSEMENT# *25*

This endorsement, effective *12:01 am*   *January 16, 2017*   forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NOTICE AND REPORTING AMENDED
90-DAY POST POLICY REPORTING PERIOD**

In consideration of the premium charged, it is hereby understood and agreed that Clause 7. (a) *Reporting a Claim, Pre-Claim Inquiry or Crisis* is amended by deleting the last sentence thereof and replacing it with the following:

In all such events, notification must be provided no later than 90 days after the end of the Policy Period or the Discovery Period (if applicable).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 025*

PNI_Litigation_Trust_0000243

**ENDORSEMENT# *26***

This endorsement, effective *12:01 am*      *January 16, 2017*      forms a part of
policy number  *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CRISISPLUS ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that the policy is
hereby amended as follows:

**I.   CRISISFUND® AMENDED**

    (1)   Solely for the purposes of a **Financial Statement Crisis**, the CrisisFund® Appendix
        is hereby amended as follows:

        (i)   Definition (a) **Crisis** shall also mean:

            (3)   a **Financial Statement Crisis**;

        (ii)   Definition (b) **Crisis Firm** is hereby amended by adding the following at the
            end thereof:

            (b)   Solely for **Financial Statement Crisis**, "**Crisis Firm(s)**" shall also include
                any **Panel Counsel** (as defined in Clause 9.B. of the policy) approved to
                handle **Securities Claims** and/or any public accounting firm.

        (iii)   Definition (d) **Crisis Services** is hereby deleted in its entirety and replaced by
            the following:

            "**Crisis Services**" means any legal or accounting services performed by a
            **Crisis Firm(s)** in investigating and responding to a **Financial Statement
            Crisis**.

        (iv)   The following additional definitions are hereby added:

            "**Financial Statement Crisis**" means the written public announcement by an
            **Organization** of the need or potential need for a restatement(s) of an
            **Organization's** previously publicly filed financial statements; provided
            however, that **Financial Statement Crisis** shall not include any
            announcements regarding restatement(s) resulting, in whole or in part, from a
            change in any rule, law or statute relating to financial reporting (including but
            not limited to any change in Generally Accepted Accounting Principles);
            further provided that payment of any **Crisis Loss** under this policy shall not
            waive any of the **Insurer's** rights under this policy or at law.

            "**Financial Statement Crisis Loss**" means a **Crisis Loss** resulting solely from
            a **Financial Statement Crisis**.

**II.   DEFINITION OF EXECUTIVE AMENDED**

In Clause 13. DEFINITIONS, the Definition of **Executive** is hereby amended to include the
following:

◎ All rights reserved.
*END 026*

PNI_Litigation_Trust_0000244

**ENDORSEMENT# *26*   (continued)**

(4)   **Executive** as defined in (1)-(3) above or any **Employee** of an
**Organization** serving as a past, present or future member of any internal
committee established by and for an **Organization**, including but not
limited to an **Organization's** "audit committee," as that committee is
described in the Securities and Exchange Commission Release No.
34- 42266- Audit Committee Disclosure Rule.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 026**

PNI_Litigation_Trust_0000245

**ENDORSEMENT# 27**

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number  *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION
WITH SUBLIMIT OF LIABILITY**

In consideration of the additional premium of $0, it is hereby understood and agreed that
the term " **Executive**" is amended to include any " **Employed Lawyer**," but only for **Wrongful
Acts** (as defined below) in such **Employed Lawyer's** capacity as such, subject to the terms,
conditions and limitations of the policy and this endorsement.

Solely for the purposes of the extension of coverage provided by this endorsement, the
term " **Wrongful Act**" means any act, error or omission of an **Employed Lawyer**, in the
rendering or failure to render professional legal services for the **Organization**, but solely in
his or her capacity as such. Provided, however, the term **Wrongful Act** shall not mean
any act, error or omission in connection with any activities by such **Employed Lawyer**: (1)
which are not related to such **Employed Lawyer's** employment with the **Organization**; (2)
which are not rendered on behalf of the **Organization** at the **Organization's** written request;
or (3) which are performed by the **Employed Lawyer** for others for a fee.

It is further understood and agreed that solely with respect to the coverage as is afforded
by virtue of this endorsement, the **Insurer** shall not be liable to make any payment for **Loss**
in connection with any **Claim(s)** made against an **Employed Lawyer**:

  (a)  alleging, arising out of, based upon or attributable to any **Wrongful Act**
       occurring at a time when the **Employed Lawyer** was not employed as a
       lawyer by the **Organization**;

  (b)  alleging, arising out of, based upon or attributable to any **Wrongful Act**, if as
       of the **Continuity Date**, an **Employed Lawyer** knew or could have reasonably
       foreseen that such **Wrongful Act** could give rise to a **Claim**; or

  (c)  alleging, arising out of, based upon or attributable to any activities by an
       **Employed Lawyer** as an officer or director of any entity other than the
       **Organization**.

It is further understood and agreed that for the purpose of the applicability of the coverage
provided by this endorsement, the **Organization** will be conclusively deemed to have
indemnified the **Employed Lawyer** to the extent that the **Organization** is permitted or
required to indemnify him or her pursuant to law, common or statutory, or contract, or the
charter or by-laws of the **Organization** (which are hereby deemed to adopt the broadest
provisions of the law which determines and defines such rights of indemnity). The
**Organization** hereby agrees to indemnify the **Employed Lawyer** to the fullest extent
permitted by law, including the making in good faith of any required application for court
approval and the passing of any corporate resolution or the execution of any contract.

**ENDORSEMENT# 27   (Continued)**

This endorsement, effective *12:01 am*   *January 16, 2017*   forms a part of
policy number   *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is further understood and agreed that coverage as is afforded under this endorsement shall apply to a **Wrongful Act** of an **Employed Lawyer** only if one or more **Insured Person(s)** (other than an **Employed Lawyer**) are and remain co-defendants in the action along with an **Employed Lawyer**.

It is further understood and agreed that the coverage provided by this endorsement is specifically excess over any other valid and collectible lawyers professional insurance, legal malpractice or errors and omissions insurance and shall only drop down and be primary insurance only in the event of exhaustion of such other insurance due to losses paid thereunder.

The term " **Employed Lawyer**" means any employee of the **Organization** who is admitted to practice law and who is employed, or was employed, at the time of the alleged **Wrongful Act** as a lawyer full time for and salaried by the **Organization**.

Solely for the purposes of the coverage provided by this endorsement the term " **Continuity Date**" means for each **Employed Lawyer** the later of September 15, 2014 or the first date such person became an **Employed Lawyer** for the **Organization**.

Solely in regard to the coverage provided by this endorsement, the maximum limit of the **Insurer's** liability for all **Loss** in the aggregate arising from all **Claims** combined shall be $1,000,000 (hereinafter the " **Sublimit of Liability**"). This **Sublimit of Liability** shall be part of and not in addition to the aggregate **Limit of Liability** stated in the Declarations and will in no way serve to increase the **Insurer's Limit of Liability** as therein stated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

104938 (04/10)

© All rights reserved.
**END 27**

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 68 of 115]

PNI_Litigation_Trust_0000247

ENDORSEMENT# *28*

This endorsement, effective *12:01 am*       *January 16, 2017*       forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SEVERABILITY OF EXCLUSIONS AMENDED
### GC IMPUTATION EXCEPTION FOR TIMELY REMEDIAL ACTION

In consideration of the premium charged, it is hereby understood and agreed that Clause
4.A. *Full Severability of Exclusions For Insured Persons* is amended by adding the following
to the end thereof:

Provided, however, that the **Wrongful Acts** of, any past, present or future General
Counsel shall not be imputed to an **Organization** if the General Counsel took timely
corrective and/or remedial action upon learning of the **Wrongful Acts** upon which
said exclusions are predicated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 028*

106823 (9/10)                                    1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 69 of 115]

PNI_Litigation_Trust_0000248

## ENDORSEMENT# *29*

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  In the event that there is an inconsistency between any: (a) state amendatory attached to this policy, or any other wording attached to this policy to comply with applicable law; and (b) any other term, condition or limitation of this policy; then, to the extent permitted by law, subject to the limitations below, the Insurer will resolve the inconsistency by applying the terms, conditions or limitations that are more favorable to the policyholder.

2.  This endorsement shall not apply to the extent that: (a) any state amendatory or other wording expressly limits coverage in order to comply with applicable law, or (b) any such amendatory or other compliance wording amends language applicable to premium. In such events, the state amendatory or other compliance wording will govern over any other term, condition or limitation of the policy.

3.  "Policyholder" means the first Named Entity, Named Organization, Named Corporation, Named Sponsor, Named Insured or other policyholder designated in Item 1 of the Declarations of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
### END 029

94039 (5/07)                  Page 1 of 1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF][Page 70 of 115]

PNI_Litigation_Trust_0000249

**ENDORSEMENT# *30***

This endorsement, effective *12:01 am*    *January 16, 2017*    forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ALTERNATIVE DISPUTE RESOLUTION CLAUSE
### (WAITING PERIOD AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that Clause 12.F.1. *ALTERNATIVE DISPUTE RESOLUTION* is amended by deleting the paragraph entitled, *Mediation*, in its entirety and replacing it with the following:

*Mediation*    In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least *Sixty (60)* days shall have elapsed from the date of the termination of the mediation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 030*

**104124 (4/10)**    **1**
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 71 of 115]

PNI_Litigation_Trust_0000250

ENDORSEMENT# *31*

This endorsement, effective *12:01 am*      *January 16, 2017*      forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXTRADITION AMENDED
### SOUGHT TO BE SURRENDERED

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting the definition of **"Extradition"** in its entirety and
replacing it with the following:

**Extradition**              means any formal process by which an **Insured Person** located in any
country is sought to be surrendered to any other country for trial or
otherwise to answer any criminal accusation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 031*

PNI_Litigation_Trust_0000251

**ENDORSEMENT#** *32*

This endorsement, effective *12:01 am*    *January 16, 2017*    forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ALLOCATION CLAUSE AMENDED
COVERED AND UNCOVERED PARTIES AND MATTERS
REASONABLENESS STANDARD**

In consideration of the premium charged, it is hereby understood and agreed that Clause 9.D. *Allocation* is amended by deleting the second paragraph thereof in its entirety and replacing it with the following:

> In connection with any **Claim** either (i) made against both **Insureds** covered by this policy for such **Claim** and parties not covered by this policy for such **Claim**, or (ii) alleging matters that are both covered and uncovered under the terms and conditions of this policy, the **Insureds** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts to be covered as **Loss** by this policy, taking into account the relative legal and financial exposures, and the relative benefits obtained by such **Insureds** and such uncovered parties. In the event that a determination as to the amount of **Defense Costs** to be advanced under this policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable Retention which the **Insurer** reasonably states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 032**

**108588 (4/11)**                    1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 73 of 115]

PNI_Litigation_Trust_0000252

**ENDORSEMENT# *33***

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## APPLICATION AND UNDERWRITING AMENDED KNOWLEDGE REVISIONS

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended by deleting Clause 11.D. *Severability Of The Application* in its entirety and replacing it with the following:

### D. *Severability of the Application*

The **Application** shall be construed as a separate application for coverage by each **Insured Person**. With respect to the **Application** or otherwise in connection with the underwriting of this policy, no knowledge possessed by any **Organization** or any **Insured Person** shall be imputed to any other **Insured Person**.

If the statements, warranties and representations in the **Application** were not accurate and complete and materially affected either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then the **Insurer** shall have the right to void coverage under this policy, *ab initio*, with respect to:

(1) **Loss** under Insuring Agreement B. *Indemnification Of Insured Person Coverage* for the indemnification of any **Insured Person** who knew of facts, as of the inception date of the **Policy Period**, that were not accurately and completely disclosed; and
(2) **Loss** under Insuring Agreement C. *Organization Coverage* if any **Insured Person** who is or was a chief executive officer or chief financial officer of the **Named Entity** knew of facts, as of the inception date of the **Policy Period**, that were not accurately and completely disclosed.

The foregoing applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure had been provided to the **Insurer** or included within the **Application**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

⊕ All rights reserved.
*END 033*

107032 (10/10)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 74 of 115]

PNI_Litigation_Trust_0000253

**ENDORSEMENT# *34***

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SPOUSAL, DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION AMENDED TRUST OR ESTATE PLANNING VEHICLE

In consideration of the premium charged, it is hereby understood and agreed that Clause 12.G. *Spousal, Domestic Partner And Legal Representative Extension is deleted* in its entirety and replaced with the following:

#### G. *Spousal, Domestic Partner And Legal Representative Extension*

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse or legally recognized domestic partner of such **Insured Person**; or (ii) a property interest of such spouse or domestic partner, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall pay covered **Loss** arising from the **Claim** made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner.  This policy shall pay covered **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, or any **Claim** against a trust or estate planning vehicle of an **Insured Person**, and the legal representatives of any **Insured Person** in the event of incompetence, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 034*

107317 (11/10)                                          1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 75 of 115]

PNI_Litigation_Trust_0000254

## ENDORSEMENT# 35

This endorsement, effective at *12:01 am*     *January 16, 2017*     forms a part of
Policy number     *06-680-86-39*
Issued to *PATRIOT NATIONAL, INC.*

By     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PENDING AND PRIOR LITIGATION EXCLUSION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B(2) *Pending & Prior Litigation Exclusion* is deleted in its entirety and replaced with the following:

| | |
|---|---|
| (1) *Pending & Prior Litigation* | alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior **D&O Litigation** or **EPL Litigation** of which an **Insured** had notice, or alleging any **Related Wrongful Act(s)** to that alleged in such pending or prior **D&O Litigation** or **EPL Litigation**; |

As used herein, the following definitions shall apply:

**"D&O Litigation"** means any (i) litigation; or (ii) administrative or regulatory proceeding or investigation, involving or alleging either (1) any director, officer or general partner liability or (2) any company liability for **Loss** of the same nature as would be covered in whole or part under this policy.

**"EPL Litigation"** means any (i) litigation; or (ii) administrative or regulatory proceeding or investigation, involving or alleging an **Employment Practices Violation**.

**"Related Wrongful Act(s)"** means **Wrongful Act(s)** which are the same, related or continuous, or **Wrongful Act(s)** which arise from a common nucleus of facts. **Claims** can allege **Related Wrongful Act(s)** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 035*

PNI_Litigation_Trust_0000255

ENDORSEMENT# *36*

This endorsement, effective *12:01 am*    *January 16, 2017*    forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### APPLICATION AND UNDERWRITING AMENDED
### RELIANCE AND INCORPORATION

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended by deleting Clause 11.A. *Application And Reliance* in its entirety and replacing
it with the following:

   A. *Application And Reliance*

      The **Insurer** has relied upon the statements, warranties and representations
      contained in the **Application**, and all such statements, warranties and
      representations are to be considered as incorporated into this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 036*

107033 (10/10)                                                     1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 77 of 115]

PNI_Litigation_Trust_0000256

**ENDORSEMENT#** *37*

This endorsement, effective *12:01 am*   *January 16, 2017*   forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**DERIVATIVE INVESTIGATION COSTS AMENDED**

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of Derivative Investigation Costs in its entirety and replacing it with the following:

**Derivative**       means reasonable and necessary costs, charges, fees and expenses
**Investigation Costs**    consented to by the **Insurer** and incurred by the **Organization**, or on
behalf of the **Organization** by its board of directors (or the
equivalent management body) or any committee of the board of
directors or formed as such by the board of directors (or equivalent
management body), in connection with a **Derivative Investigation**.
**Derivative Investigation Costs** shall not include the compensation of
any **Insured Person**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 037*

108594 (4/11)           1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 78 of 115]

PNI_Litigation_Trust_0000257

**ENDORSEMENT# *38***

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number     *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## LIBERTY PROTECTION COSTS AMENDED
## DELETE NO CLAIM MADE OR PRE-CLAIM INQUIRY KNOWN REQUIREMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting subparagraph (2) of the definition of **Liberty
Protection Costs** and replacing it with the following:

(2) reasonable and necessary premiums (but not collateral) consented to by the
**Insurer** and incurred by an **Insured Person** for a bond or other financial
instrument to guarantee the contingent obligation of the **Insured Person** for a
specified amount required by a court that are incurred or required outside the
United States of America during the **Policy Period**, if such premiums: (i) arise
out of an actual or alleged **Wrongful Act**, or (ii) are incurred solely by reason of
such **Insured Person's** status as an **Executive** or **Employee** of an **Organization**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 038*

106831 (9/10)                                          1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 79 of 115]

PNL_Litigation_Trust_0000258

ENDORSEMENT# *39*

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PERSONAL REPUTATION EXPENSES AMENDED SAME EVENTS

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the second sentence in the definition of "Personal Reputation Expenses" in its entirety and replacing it with the following:

**"Personal Reputation Expenses"** shall not include any fees, costs or expenses of any **Crisis Firm** incurred by an **Executive** if such **Crisis Firm** is also retained by or on behalf of an **Organization** in connection with the same events underlying the **Personal Reputation Crisis.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 039*

ENDORSEMENT# *40*

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### RECOVERY OF LIMITS AMENDED
### DELETE LAST SENTENCE

In consideration of the premium charged, it is hereby understood and agreed that Clause
12.A.4. *RECOVERY OF LIMITS* is deleted in its entirety and replaced with the following:

4. *RECOVERY OF LIMITS*

In the event the **Insurer** recovers amounts it paid under this policy, the **Insurer** will
reinstate the **Limits of Liability** of this policy to the extent of such recovery, less its
costs incurred in administering and obtaining such recovery. The **Insurer** assumes
no duty to seek a recovery of any amounts paid under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 040*

106818 (9/10)                                          1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 81 of 115]

PNI_Litigation_Trust_0000260

ENDORSEMENT# 41

This endorsement, effective 12:01 am     January 16, 2017     forms a part of
policy number   06-680-86-39
issued to   PATRIOT NATIONAL, INC.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

### SECURITIES CLAIM DEFINITION - COMMON LAW
### ADD "THE PORTION OF"
### AIDING AND ABETTING

In consideration of the premium charged, it is hereby understood and agreed that the
policy's definition of " **Securities Claim**," is deleted in its entirety and replaced with the
following:

" **Securities Claim**" means a **Claim**, other than an administrative or regulatory
proceeding against, or investigation of an **Organization**, made against any **Insured**:

(1)  alleging a violation of any law, rule or regulation, whether statutory or
common law (including but not limited to the purchase or sale or offer or
solicitation of an offer to purchase or sell securities), which is:

(a) brought by any person or entity alleging, arising out of, based upon or
attributable to the purchase or sale or offer or solicitation of an offer to
purchase or sell any securities of an **Organization**; or

(b) brought by any person or entity alleging an **Insured's** failure to report,
disclose, submit or file, financial information regarding an **Organization** in
violation of any such law, rule or regulation; or

(c) brought by a security holder or purchaser or seller of securities of an
**Organization** with respect to such security holder's, purchaser's or
seller's interest in securities of such **Organization**; or

(2)  which is a **Derivative Suit**.

Notwithstanding the foregoing, the term " **Securities Claim**" shall:

(1)  include an administrative or regulatory proceeding against an **Organization**
that meets the requirements of subparagraph (1) above, but only if and only
during the time that such proceeding is also commenced and continuously
maintained against an **Insured Person**; and

(2)  not include the portion of any **Claim** brought by any **Executive** or **Employee**
of an **Organization** alleging, arising out of, based upon or attributable to the
loss of, or failure to receive or obtain, the benefit of stock, stock warrants,
stock options or other securities of an **Organization**.

PNI_Litigation_Trust_0000261

**ENDORSEMENT#** *41* (Continued)

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

" **Securities Claim**" also means a **Claim** brought by any security holder of an **Acquisition Target**, in their capacity as such, alleging that the **Insureds** aided and abetted any:

(i)     breach of fiduciary duty owed to the **Acquisition Target's** shareholders; or
(ii)     violation of securities law by the **Acquisition Target** regarding the **Organization's** acquisition or proposed acquisition of the **Acquisition Target**;

provided that coverage for such **Claim** shall be limited to **Defense Costs** only.

" **Acquisition Target**" means any entity that a **Organization** has acquired, or proposed to acquire, in a transaction that results in, or would result in, such entity becoming a **Subsidiary**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 41**

M116205

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 83 of 115]

PNI_Litigation_Trust_0000262

ENDORSEMENT# *42*

This endorsement, effective *12:01 am*    *January 16, 2017*    forms a part of
policy number   *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## APPLICATION AND UNDERWRITING AMENDED
## (INSURED PERSON COVERAGE NON RESCINDABLE EXCEPT FOR NON-PAYMENT OF PREMIUM)

In consideration of the premium charged, it is hereby understood and agreed that Clause
11. APPLICATION AND UNDERWRITING is amended by deleting paragraph C thereof and
replacing it with the following:

*C. Non-Rescindable*

Under no circumstances shall the coverage provided by this policy for **Loss** under Insuring
Agreement A. *Insured Person Coverage* be deemed void, whether by rescission or
otherwise, except for non payment of premium.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 42*

114670 (09/14)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 84 of 115]

PNI_Litigation_Trust_0000263

## ENDORSEMENT# *43*

This endorsement, effective *12:01 am*          *January 16, 2017*          forms a part of
policy number   *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAIM DEFINITION AMENDED (ADR IN PARAGRAPH (2))

In consideration of the premium charged, it is hereby understood and agreed that in Clause 13. **DEFINITIONS**, the Definition of " **Claim**," subparagraph (2) is deleted in its entirety and replaced with the following:

(2) a civil, criminal, administrative, regulatory or arbitration or other alternative dispute resolution proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 43**

114690 (09/14)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 85 of 115]

PNI_Litigation_Trust_0000264

## ENDORSEMENT# 44

This endorsement, effective  *12:01 am*    *January 16, 2017*      forms a part of
policy number  *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NOTICE AND REPORTING CLAUSE 7(a) AMENDED
### (PREJUDICE REQUIRED FOR LATE NOTICE DEFENSE)

In consideration of the premium charged, it is hereby understood and agreed that in Clause
**7. NOTICE/CLAIM REPORTING PROVISIONS**, paragraph (a) is amended by adding the
following to the end of paragraph (a):

> The **Insurer** shall not allege late notice of a  **Claim** as a defense against coverage
> under this policy unless the **Insurer** is able to establish that the **Insurer** suffered
> prejudice as a result of such late notice.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 44*

114696 (09/14)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 86 of 115]

PNI_Litigation_Trust_0000265

<u>ENDORSEMENT# *45*</u>

This endorsement, effective *12:01 am*      *January 16, 2017*       forms a part of
policy number   *06-680-86-39*
issued to    *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DERIVATIVE INVESTIGATION AMENDED
### (DELETE REFERENCE TO DERIVATIVE SUIT)

In consideration of the premium charged, it is hereby understood and agreed that in Clause
13. **DEFINITIONS,** the Definition " **Derivative Investigation"** is deleted in its entirety and
replaced with the following:

**Derivative**          means, after receipt by any  **Insured** of a **Claim** that is a
**Investigation**       **Derivative Demand,** any investigation conducted by  the
                        **Organization,** or on behalf of the  **Organization** by its board of
                        directors (or the equivalent management body) or any
                        committee of the board of directors (or equivalent management
                        body), as to how the **Organization** should respond.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


<u>AUTHORIZED REPRESENTATIVE</u>

© All rights reserved.
**END 45**

114652 (09/14)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 87 of 115]

PNI_Litigation_Trust_0000266

## ENDORSEMENT# 46

This endorsement, effective  12:01 am      January 16, 2017      forms a part of
policy number    06-680-86-39
issued to    PATRIOT NATIONAL, INC.

by     National Union Fire Insurance Company of Pittsburgh, Pa.

### ENTITY V. INSURED EXCLUSION AMENDED
### (PARAGRAPH B INAPPLICABLE TO FORMER EXECUTIVES THREE YEARS REMOVED, CARVEBACK C FOR BANKRUPTCY CONSTITUENCIES, DIP CLAIMS AGAINST FORMER INSUREDS, FOREIGN JURISDICTION, SOX 304 AND DODD FRANK 954 COSTS CARVEBACKS, WHISTLEBLOWER SUBPOENA)

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B(5) *Entity v. Insured Exclusion* is deleted in its entirety and replaced with the following:

(5)   *Entity v. Insured*      that is brought by or on behalf of any **Organization** against any **Insured**, or by any **Outside Entity** against any **Outside Entity Executive**; provided, however, this exclusion shall not apply:

(a) to any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person** in defending any **Claim** against that **Insured Person**;

(b) to any **Derivative Suit** not brought, controlled or materially assisted by any **Organization**, any **Outside Entity** or any **Executive** of the foregoing (other than an **Executive** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, general counsel or risk manager (or equivalent position) of or consultant for an **Organization** for at least three (3) years prior to such **Derivative Suit** being first made; or

(c) if the **Organization** or **Outside Entity** is the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**), to any **Claim** brought by the examiner, trustee, receiver, liquidator, rehabilitator, creditors committee, bondholder committee, equity committee or any other creditor or group of creditors on behalf of or in the right of such **Organization** or **Outside Entity** (or the resulting debtor-in-possession); or

PNI_Litigation_Trust_0000267

## ENDORSEMENT# *46*  (Continued)

This endorsement, effective *12:01 am*  *January 16, 2017*  forms a part of
policy number  *06-680-86-39*
issued to  *PATRIOT NATIONAL, INC.*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

(d) to any **Claim** brought or maintained in any **Foreign Jurisdiction** to the extent the **Organization** is required to bring and maintain the **Claim** in such **Foreign Jurisdiction**; or

(e) to any **SOX 304 Costs** or **Dodd-Frank 954 Costs** incurred by any **Executive** in connection with a **Claim** by or on behalf of any **Organization** seeking recovery of incentive-based compensation from such **Executive** due to an accounting restatement by such **Organization**.

This exclusion shall not apply to any **Claim** brought by the **Organization** as a debtor-in-possession against an **Insured Person** that is no longer acting in his or her capacity as an **Insured Person** at the time that such **Claim** is brought, provided that such **Claim** is (i) brought after such **Organization** has replaced its chief executive officer, chief financial officer, president and chairman of the board (or equivalent positions), and (ii) not brought, controlled or materially assisted by any individual set forth in (i) above.

With respect to this *Entity v. Insured Exclusion*, the term "materially assisted" shall not be triggered by: (i) any **Insured Person** engaging in protected "whistleblower" activity; or (ii) any **Organization** or **Executive** providing information required in order to comply with a subpoena or similar legal process served upon such **Organization** or **Executive**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 46**

115284 (05/13)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 89 of 115]

PNI_Litigation_Trust_0000268

**ENDORSEMENT# 47**

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to    *PATRIOT NATIONAL, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DEFENSE AND SETTLEMENT - ADVANCEMENT
### (VARIABLE NUMBER OF DAYS)

In consideration of the premium charged, it is hereby understood and agreed that in Clause 9. DEFENSE AND SETTLEMENT, subparagraph A(2), entitled " *Advancement*," is deleted in its entirety and replaced with following:

**(2)**  *Advancement*      Once the **Insurer** has received written notice of a **Claim** or **Pre-Claim Inquiry** under this policy, it shall advance, excess of any applicable Retention, covered **Defense Costs** or **Pre-Claim Inquiry Costs**, respectively, on a current basis, but no later than 60 days after the **Insurer** has received itemized bills for those **Defense Costs** or **Pre-Claim Inquiry Costs**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured Person** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured Person** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 47**

116314 (03/15)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 90 of 115]

PNI_Litigation_Trust_0000269

### ENDORSEMENT# *48*

This endorsement, effective  *12:01 am*      *January 16, 2017*       forms a part of
policy number   *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ERISA EXCLUSION AMENDED TO APPLY
### SOLELY TO COMPANY BENEFIT PLANS

In consideration of the premium charged it is hereby understood and agreed that Clause
4.B *Exclusions* is amended by deleting Exclusion (6) in its entirety and replacing it with the
following:

(6)  *ERISA*            for any violation of responsibilities, obligations or duties
imposed by the Employee Retirement Income Security Act
of 1974 (ERISA), as amended, or any similar provisions of
any state, local or foreign statutory or common law (
**"ERISA"**) with respect to any benefit plans sponsored (solely
or jointly) by the **Organization** or an **Outside Entity**; or

Furthermore, coverage as is afforded by virtue of this endorsement shall be specifically
excess of any insurance in force, including but not limited to any insurance in force for
**ERISA** claims, suits or demands including but not limited to any administrative or regulatory
proceedings or investigations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 48*

116178 (03/15)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 91 of 115]

PNI_Litigation_Trust_0000270

**ENDORSEMENT# *49***

This endorsement, effective *12:01 am*   *January 16, 2017*   forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## NOTICE AND REPORTING AMENDED
## NOTICE OF CIRCUMSTANCES REQUIREMENTS

In consideration of the premium charged, it is hereby understood and agreed that Clause 7. (c) *Relation Back to Reported Circumstances Which May Give Rise to a Claim* is amended by deleting the last sentence thereof and replacing it with the following:

In order to be effective, notification of circumstances must specify the facts, circumstances, nature of the anticipated allegations arising from a possible *Wrongful Act* and reasons for anticipating such *Claim*, with available particulars as to dates, persons and entities involved; however, notification that includes a copy of an agreement to toll a statute of limitations shall be presumed sufficiently specific as to the potential *Claims* described within that agreement.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
***END 049***

PNI_Litigation_Trust_0000271

ENDORSEMENT# *50*

This endorsement, effective at *12:01 am    January 16, 2017*    forms a part of
Policy number *06-680-86-39*
Issued to:*PATRIOT NATIONAL, INC.*

By:    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OTHER INSURANCE AND INDEMNIFICATION AMENDED DELETE ANTI-STACKING

In consideration of the premium charged, it is hereby understood and agreed that Clause 12.A.2. *Other Insurance and Indemnification* is amended by deleting the third paragraph thereof and replacing it with the following:

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under the *Insured Person Coverage* or the *Indemnification Of Insured Person Coverage*, shall be specifically excess of: (a) any indemnification provided by an **Outside Entity**; and (b) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 050*

108600 (4/11)                                     Page 1 of 1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 93 of 115]

PNI_Litigation_Trust_0000272

## ENDORSEMENT# 51

This endorsement, effective *12:01 am*  *January 16, 2017*  forms a part of
policy number *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

### BOOKS & RECORDS COSTS ($250K SUBLIMIT)

In consideration of the premium charged, it is hereby understood and agreed that Clause 13, DEFINITIONS of the policy is amended as follows:

1. The definition of " **Derivative Investigation Costs**" is amended by adding the following:

     **Derivative Investigation Costs** shall also include **Books & Records Costs.**

2. The following term is added:

     **Books & Records Costs**  means reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** and incurred by the **Organization** in response to a written demand by or on behalf of any shareholder of such **Organization** to inspect the books and records of such **Organization** pursuant to Section 220 of the Delaware General Corporation Law or any similar statute in any other jurisdiction.

3. Notwithstanding anything in this policy to the contrary, **Books & Records Costs** shall be subject to a $250,000 aggregate sublimit of liability, which amount shall be part of, and not in addition to, any applicable aggregate sublimit of liability for **Derivative Investigation Costs.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 51**

M120451

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 94 of 115]

**ENDORSEMENT# *52***

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### BODILY INJURY AND PROPERTY DAMAGE EXCLUSION AMENDED
### (NON-INDEMNIFIABLE LOSS CARVEOUT)

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.
*Exclusions* is amended by deleting Exclusion (4) in its entirety and replacing it with the
following:

| (4) | *Bodily Injury & Property Damage* | for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, this exclusion shall not apply to Non-Indemnifiable Loss, **UK Corporate Manslaughter Act Defense Costs** or a **Securities Claim**; |
|-----|-----|-----|

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 52*

M114681

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 95 of 115]

PNI_Litigation_Trust_0000274

## ENDORSEMENT# 53

This endorsement, effective at *12:01 am*    *January 16, 2017*    forms a part of
Policy number *06-680-86-39*
Issued to: *PATRIOT NATIONAL, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Product Name: *Executive Edge*

## ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

## END 053

PNI_Litigation_Trust_0000275

## ENDORSEMENT# 30

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ALTERNATIVE DISPUTE RESOLUTION CLAUSE
### (WAITING PERIOD AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that Clause 12.F.1. *ALTERNATIVE DISPUTE RESOLUTION* is amended by deleting the paragraph entitled, *Mediation*, in its entirety and replacing it with the following:

*Mediation*             In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least *Sixty (60)* days shall have elapsed from the date of the termination of the mediation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 030*

104124 (4/10)                    1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 97 of 115]

## ENDORSEMENT# 55

This endorsement, effective *12:01 am*   *January 16, 2017*   forms a part of
policy number   *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRE-CLAIM INQUIRY COSTS AMENDED
### COST OF PRODUCING DOCUMENTS

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of " **Pre-Claim Inquiry Costs** " in its entirety and replacing it with the following:

**Pre-Claim Inquiry Costs**   means the reasonable and necessary pre- **Claim** fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Insured Person**, including attendance at an interview or meeting requested by an **Enforcement Body** and the cost of such **Insured Person** in producing documents in his or her possession, but excluding any compensation of any **Insured Person**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 55**

106819 (09/10)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 98 of 115]

PNI_Litigation_Trust_0000277

## ENDORSEMENT# *56*

This endorsement, effective *12:01 am*   *January 16, 2017*   forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### TRANSACTION AMENDED
### DELETE SUBPARAGRAPH (3)

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting the definition of **Transaction** and replacing it with
the following:

**Transaction**          means:

(1) the **Named Entity** consolidating with or merging into another
entity such that the **Named Entity** is not the surviving entity,
or selling all or substantially all of its assets to any other
person or entity or group of persons or entities acting in
concert; or

(2) any person or entity or group of persons or entities acting in
concert acquiring **Management Control** of the **Named Entity**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
### END 056

106010 (7/10)          1

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 99 of 115]

PNI_Litigation_Trust_0000278

**ENDORSEMENT# *57***

This endorsement, effective *12:01 am*    *January 16, 2017*    forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PERSONAL INJURY EXCLUSION AMENDED
### UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS CARVEBACK

In consideration of the premium charged, it is hereby understood and agreed that Clause
4.B.(3) *Personal Injury Exclusion* shall not apply to UK Corporate Manslaughter Act
Defense Costs.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

⊕ All rights reserved.
*END 057*

**108603 (4/11)**                     1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 100 of 115]

PNI_Litigation_Trust_0000279

## ENDORSEMENT# 58

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS AMENDED OTHER LAW

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of "UK Corporate Manslaughter Act Defense Costs" in its entirety and replacing it with the following:

| **UK Corporate Manslaughter Act Defense Costs** | means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute or other law in any jurisdiction. |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 058*

PNI_Litigation_Trust_0000280

ENDORSEMENT# *59*

This endorsement, effective *12:01 am    January 16, 2017*    forms a part of
policy number  *06-680-86-39*
issued to  *PATRIOT NATIONAL, INC.*

by *National Union Fire Insurance Company of Pittsburgh, Pa.*

**APPLICATION AND UNDERWRITING AMENDED
DELETE RENEWAL APPLICATION PROCEDURE**

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended by deleting Clause 11.B. *Renewal Application Procedure* in its entirety.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

⊕ **All rights reserved.**

*END 059*

[11:11.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 102 of 115]

107031 (10/10)                                Page 1 of 1

PNI_Litigation_Trust_0000281

**ENDORSEMENT#** *60*

This endorsement, effective *12:01 am      January 16, 2017*      forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY ADDITIONS AMENDED
### 90-DAY AUTO-SUBSIDIARY PERIOD

In consideration of the premium charged, it is hereby understood and agreed, that Clause
10.B. *Subsidiary Additions* is amended by deleting subparagraph (2) in its entirety and
replacing it with the following:

(2) 25% or more of those total consolidated assets, but such entity shall be a
"**Subsidiary**" only: (i) for a period of ninety (90) days from the date the **Named
Entity** first had **Management Control** of such entity; or (ii) until the end of the
**Policy Period**, whichever expires or ends first (the "**Auto-Subsidiary Period**");

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

© All rights reserved.
*END 060*

PNI_Litigation_Trust_0000282

ENDORSEMENT# *34*

This endorsement, effective *12:01 am*     *January 16, 2017*     forms a part of
policy number    *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SPOUSAL, DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION AMENDED
### TRUST OR ESTATE PLANNING VEHICLE

In consideration of the premium charged, it is hereby understood and agreed that Clause 12.G. *Spousal, Domestic Partner And Legal Representative Extension* is deleted in its entirety and replaced with the following:

#### G. *Spousal, Domestic Partner And Legal Representative Extension*

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse or legally recognized domestic partner of such **Insured Person**; or (ii) a property interest of such spouse or domestic partner, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall pay covered **Loss** arising from the **Claim** made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner. This policy shall pay covered **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, or any **Claim** against a trust or estate planning vehicle of an **Insured Person**, and the legal representatives of any **Insured Person** in the event of incompetence, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

℗ All rights reserved.
*END 034*

PNI_Litigation_Trust_0000283

ENDORSEMENT# *62*

This endorsement, effective *12:01 am    January 16, 2017*    forms a part of
policy number  *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SHADOW DIRECTORS COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that the term **"Executive"** is amended to include any natural person who, as a consequence of being a director, officer or **Employee** of an **Organization**, is deemed a "shadow director" as defined under Section 741 of the United Kingdom's Companies Act 1985, as amended but solely for **Wrongful Acts** committed in his or her respective capacity as a "shadow director", of any Subsidiary of the Company that is incorporated and/or domiciled in the United Kingdom or the Republic of Ireland.

For the purpose of the applicability of the coverage provided by this endorsement, the **Organization** will be conclusively deemed to have indemnified the persons afforded coverage by this endorsement to the extent that the **Organization** is permitted or required to indemnify such persons pursuant to law (common or statutory), contract, or the charter or by-laws of the **Organization** (which are hereby deemed to adopt the broadest provision of the law which determines or defines such rights of indemnity). The **Organization** hereby agrees to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval and the passing of any required corporate resolution or the execution of any contract.

Solely for the purposes of this endorsement the term **Continuity Date** means the effective date of this endorsement.

Only as respects any additional coverage granted by this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** made against an **Insured**:

(1)     alleging, arising out of, based upon or attributable to any pending or prior litigation as of the **Continuity Date** listed above, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation; and

(2)     alleging any **Wrongful Act** occurring prior to the **Continuity Date** if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 062*

105002 (4/10)                                    Page 1 of 1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF][Page 105 of 115]

## ENDORSEMENT# 63

This endorsement, effective  *12:01 am*      *January 16, 2017*      forms a part of
policy number   *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PLAINTIFF ATTORNEYS' FEES

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1. In Clause 13. DEFINITIONS, the definition of " **Loss**" is amended by adding the following to the end thereof:

   **Loss** also means plaintiff attorneys' fees awarded or approved by a court in connection with a **Non-Monetary Settlement**, subject to Clause 9, DEFENSE AND SETTLEMENT.

2. Clause 13. DEFINITIONS is amended to include the following term:

   **Non-Monetary Settlement**  means a settlement of a **Claim** brought by one or more shareholders of an **Organization**, either directly or derivatively on behalf of an **Organization**, wherein no monetary consideration would be received by such shareholder(s) or **Organization**, including but not limited to any such **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate.

3. Notwithstanding anything in the policy to the contrary, the Retention amount for **all Loss** constituting **Non-Monetary Settlement** shall be $1,000,000, and not the amount set forth in the Declarations as such.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
***END 63***

120468 (10/15)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 106 of 115]

PNI_Litigation_Trust_0000285

**ENDORSEMENT# 64**

This endorsement, effective 12:01 am     January 16, 2017     forms a part of
policy number   06-680-86-39
issued to PATRIOT NATIONAL, INC.

by     National Union Fire Insurance Company of Pittsburgh, Pa.

### CONTROL PERSON CAPACITY

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1. Clause 13. DEFINITIONS is amended by the addition of the following definition:

   **Controlling**     means any **Executive** that controls an **Organization** within the
   **Person**          meaning of Section 15 of the Securities Act of 1933 (as
                       amended) or Section 20(a) of the Securities Exchange Act of
                       1934 (as amended) or any similar law.

2. Clause 13. DEFINITIONS is amended by deleting subparagraph (1)(i) of the definition of
   **Wrongful Act** and replacing it with the following:

   (i)  with respect to any **Executive** of an **Organization**, (a) by such **Executive** in his or
        her capacity as such, (b) by such **Executive** in his or her capacity as a
        **Controlling Person**; or (c) any matter claimed against such **Executive** solely by
        reason of his or her status as such;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 064*

108592 (4/11)                                    1
[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 107 of 115]

PNI_Litigation_Trust_0000286

## ENDORSEMENT# 65

This endorsement, effective  *12:01 am*      *January 16, 2017*      forms a part of
policy number   *06-680-86-39*
issued to   *PATRIOT NATIONAL, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FORMER SUBSIDIARIES AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause
10.C. *Former Subsidiaries* is deleted in its entirety and replaced with the following:

   C. *Former Subsidiaries*

   In the event the **Named Entity** loses **Management Control** of a **Subsidiary** during or
   prior to the **Policy Period,** coverage with respect to such **Subsidiary** and its **Insured
   Persons** shall continue but only with respect to **Claims** for **Wrongful Acts** that
   occurred or are alleged to have occurred during the time that the **Named Entity** had
   **Management Control** of such entity either directly or indirectly through one or more
   of its **Subsidiaries.**


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
***END 65***

M120072 (06/15)

[11.1.1.7] [Patriot_National_D_And_O_Primary_10MM_2017-2018_AIG.PDF] [Page 108 of 115]

PNI_Litigation_Trust_0000287

## ENDORSEMENT# *66*

This endorsement, effective *12:01 am*     *January 16, 2017*          forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 104122 | 04/10 | D&O ADMITTED DEC |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| 74825 | 01/13 | FLORIDA ADDENDUM TO DECLARATIONS |
| 104123 | 04/10 | D&O ADMITTED GUTS |
| 104870 | 04/10 | CRISISFUND APPENDIX |
| 106484 | 08/10 | FLORIDA AMENDATORY ENDORSEMENT |
| 117960 | 06/14 | CLASS CERTIFICATION EVENT STUDY EXPENSES |
| 104924 | 04/10 | AUDIT COMMITTEE COVERAGE |
| 76105 | 06/15 | FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT |
| 106822 | 09/10 | SOX 304 COSTS AMENDATORY |
| 115283 | 05/13 | DODD-FRANK 954 COSTS ADDED |
| 107316 | 11/10 | SUBSIDIARY ADDITIONS AMENDED (90 DAYS) |
| 115281 | 05/13 | CLAIM DEFINITION AMENDED (REQUEST TO TOLL STATUTE OF LIMITATIONS) |
| 106827 | 09/10 | APPLICATION AMENDED UNDERWRITING OF THIS POLICY WRITTEN REPRESENTATIONS AND PUBLIC FILINGS |
| 108604 | 04/11 | PRE-CLAIM INQUIRY AMENDED CHANGE AND TO OR |
| 108606 | 04/11 | SEVERABILITY OF EXCLUSIONS AMENDED TOP 3 OF NAMED ENTITY |
| 104959 | 04/10 | RETENTION EROSION THROUGH SIDE-A INSURANCE FILL-IN |
| 110826 | 02/12 | MOLD EXCLUSION (NON-INDEMNIFIABLE LOSS CARVEBACK) |
| 108597 | 04/11 | LOSS AMENDED APPLICABLE LAW |
| 106832 | 09/10 | LOSS AMENDED CLEANUP COSTS |
| 106816 | 09/10 | LOSS AMENDED DELETE COURT ORDER WORDING |
| 104962 | 04/10 | SECURITIES CLAIM DEFINITION - COMMON LAW |

© All rights reserved.

*END 066*

PNI_Litigation_Trust_0000288

<u>**ENDORSEMENT# 66**</u>

This endorsement, effective *12:01 am*     *January 16, 2017*          forms a part of

policy number  *06-680-86-39*

issued to *PATRIOT NATIONAL, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 110430 | 12/11 | PROFESSIONAL SERVICES EXCL WITH SECURITIES CLAIM CARVEBACK AND LIMITATION OF PRE-CLAIM INQUIRY TO SECURITIES VIOLATIONS |
| 113731 | 03/13 | CONDUCT EXCLUSIONS AMENDED (FINAL, NON-APPEALABLE ADJUDICATION IN ANY UNDERLYING PROCEEDING PERSONAL PROFIT AND FINANCIAL ADVANTAGE) |
| 105000 | 04/10 | SEVERABILITY OF THE APPLICATION AMENDED (ADVANCEMENT) |
| 105001 | 04/10 | SEVERABILITY OF THE APPLICATION AMENDED (NON-RESCINDABLE) |
| 106006 | 07/10 | DISCOVERY CLAUSE AMENDED DELETE OR REPLACED |
| 106012 | 07/10 | BANKRUPTCY WAIVER ADDED |
| 110821 | 02/12 | FEE EXCLUSION (DEFENSE COSTS CARVEBACK) |
| 108598 | 04/11 | NOTICE AND REPORTING AMENDED 90-DAY POST POLICY REPORTING PERIOD |
| 104934 | 04/10 | CRISISPLUS ENDORSEMENT |
| 104938 | 04/10 | EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION |
| 106823 | 09/10 | SEVERABILITY OF EXCLUSIONS AMENDED GC IMPUTATION EXCEPTION FOR TIMELY REMEDIAL ACTION |
| 94039 | 05/07 | STATE AMENDATORY INCONSISTENT |
| 104124 | 04/10 | ALTERNATIVE DISPUTE RESOLUTION PROCESS (WAITING PERIOD AMENDED) |
| 106829 | 09/10 | EXTRADITION AMENDED SOUGHT TO BE SURRENDERED |
| 108588 | 04/11 | ALLOCATION CLAUSE AMENDED COVERED AND UNCOVERED PARTIES AND MATTERS REASONABLENESS STANDARD |
| 107032 | 10/10 | APPLICATION AND UNDERWRITING AMENDED KNOWLEDGE REVISIONS |
| 107317 | 11/10 | SPOUSAL DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION AMENDED TRUST OR ESTATE PLANNING VEHICLE |
| 110133 | 11/11 | PENDING AND PRIOR LITIGATION EXCLUSION AMENDED |
| 107033 | 10/10 | APPLICATION AND UNDERWRITING AMENDED RELIANCE AND INCORPORATION |
| 108594 | 04/11 | DERIVATIVE INVESTIGATION COSTS AMENDED |

*END 066*

PNI_Litigation_Trust_0000289

## ENDORSEMENT# *66*

This endorsement, effective *12:01 am*       *January 16, 2017*                    forms a part of
policy number   *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 106831 | 09/10 | LIBERTY PROTECTION COSTS AMENDED DELETE NO CLAIM MADE OR PRE CLAIM INQUIRY KNOWN REQUIREMENT |
| 106817 | 09/10 | PERSONAL REPUTATION EXPENSES AMENDED SAME EVENTS |
| 106818 | 09/10 | RECOVERY OF LIMITS AMENDED DELETE LAST SENTENCE |
| M116205 | | SECURITIES CLAIM DEFINITION - COMMON LAW |
| 114670 | 09/14 | APPLICATION AND UNDERWRITING AMENDED |
| 114690 | 09/14 | CLAIM DEFINITION AMENDED (ADR IN PARAGRAPH (2)) |
| 114696 | 09/14 | NOTICE AND REPORTING CLAUSE 7(a) AMENDED |
| 114652 | 09/14 | DERIVATIVE INVESTIGATION AMENDED |
| 115284 | 05/13 | ENTITY V. INSURED EXCLUSION AMENDED |
| 116314 | 03/15 | DEFENSE AND SETTLEMENT - ADVANCEMENT |
| 116178 | 03/15 | ERISA EXCLUSION AMENDED TO APPLY |
| 108599 | 04/11 | NOTICE AND REPORTING AMENDED NOTICE OF CIRCUMSTANCES REQUIREMENTS |
| 108600 | 04/11 | OTHER INSURANCE AND INDEMNIFICATION AMENDED DELETE ANTI STACKING |
| M120451 | | BOOKS & RECORDS COSTS ($250K SUBLIMIT) |
| M114681 | | BODILY INJURY AND PROPERTY DAMAGE EXCLUSION AMENDED |
| 89644 | 06/13 | ECONOMIC SANCTIONS ENDORSEMENT |
| 104124 | 04/10 | ALTERNATIVE DISPUTE RESOLUTION PROCESS (WAITING PERIOD AMENDED) |
| 106819 | 09/10 | PRE-CLAIM INQUIRY COSTS AMENDED |
| 106010 | 07/10 | TRANSACTION AMENDED DELETE SUBPARAGRAPH (3) |
| 108603 | 04/11 | PERSONAL INJURY EXCLUSION AMENDED UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS CARVEBACK |
| 106828 | 09/10 | UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS AMENDED OTHER LAW |

✪

***END 066***

PNI_Litigation_Trust_0000290

**ENDORSEMENT# *66***

This endorsement, effective *12:01 am*    *January 16, 2017*        forms a part of
policy number  *06-680-86-39*
issued to *PATRIOT NATIONAL, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 107031 | 10/10 | APPLICATION AND UNDERWRITING AMENDED DELETE RENEWAL APPLICATION PROCEDURE |
| 108586 | 04/11 | SUBSIDIARY ADDITIONS AMENDED 90-DAY AUTO-SUB PERIOD |
| 107317 | 11/10 | SPOUSAL DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION AMENDED TRUST OR ESTATE PLANNING VEHICLE |
| 105002 | 04/10 | SHADOW DIRECTORS COVERAGE |
| 120468 | 10/15 | PLAINTIFF ATTORNEYS FEES |
| 108592 | 04/11 | CONTROL PERSON CAPACITY |
| M120072 | 06/15 | FORMER SUBSIDIARIES AMENDED |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 105499 | 04/10 | FLORIDA ADDENDUM TO THE APPLICATION |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 066*

PNI_Litigation_Trust_0000291

## FLORIDA ADDENDUM TO THE APPLICATION

### Representations and Warranties

The following is added to the Application and supercedes any language to the contrary, whether contained in the Application, policy or any endorsement thereto:

With respect to any statements or descriptions made in connection with the Application for insurance, which becomes part of the Policy, all such statements or descriptions shall be deemed to be representations and not warranties.

skidmark@provincemm.com
Project Pirate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

105499 (4/10)

PNI_Litigation_Trust_0000292



## CLAIM REPORTING FORM

**Issuing Company:** *National Union Fire Insurance Company of Pittsburgh, Pa.*

**Reported under Policy/Bond Number:** _06-680-86-39_      Date: _____

**Type of Coverage:** D&O _____ E&O _____ Fidelity _____ (complete the Fidelity Supplemental on the next page)

**Insured's Name, as given on Policy Declarations (Face Page):**

_PATRIOT NATIONAL, INC._

_____

_____

**Contact Person:** _____

**Title:** _____

**Phone:** _(_____)_____-_____      Ext _____

**eMail:** _____ @ _____

**Case or Claimant Name:** _____

_____

**If the party involved is different from Insured Name (as given on Policy Declarations) state relationship:**

_____

_____

**Insurance Broker/Agent:** _ARC EXCESS & SURPLUS LLC_

**Address:** _113 SOUTH SERVICE ROAD, POB 9012_

**Address:** _JERICHO, NY 11753_

**Contact:** _MATT SABINO_      Phone: _____

**eMail:** _MSABINO@ARCXS.COM_

**Send Notice of Claims to:**   AIG                        Phone: (888) 602-5246
                                Financial Lines Claims      Fax:   (866) 227-1750
                                P.O. Box 25947             Email: c-Claim@AIG.com
                                Shawnee Mission, KS 66225



# CLAIM REPORTING FORM
## FIDELITY SUPPLEMENTAL
**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Reported under Policy/Bond Number:  *06-680-86-39*

Date of Discovery: _____  Estimated Amount of loss: _____

Cause of Loss:

| | | | |
|---|---|---|---|
| Employee Dishonesty | _____ | Computer Fraud | _____ |
| Funds Transfer | _____ | Robbery/Burglary | _____ |
| ID Theft | _____ | Forgery | _____ |
| Client Property | _____ | In Transit | _____ |
| ERISA | _____ | Credit Card Forgery | _____ |
| Other | | if Other, describe: | _____ |

Send Notice Of Claims To:   AIG
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

Phone: (888) 602-5246
Fax:     (866) 227-1750
Email:  c-Claim@AIG.com

akenmakropoulos@gmail.com
Protect Privacy 4-3.2020

*centralized Customer Link and Information Management*

PNI_Litigation_Trust_0000294