# EXHIBIT A

*PNI Litigation Trust, et al. v. National Union Fire Insurance Company of Pittsburgh, Pa., et al.*
**United States District Court for Southern District of Florida**

**No. 1:21-cv-21416**


# Confidential Expert Report of Joseph P. Monteleone


## I.   QUALIFICATIONS AND EXPERIENCE

1.     I have been retained as an expert witness with reference to the above-captioned litigation (the "Litigation") on behalf of the defendants National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), RSUI Indemnity Company ("RSUI"), and Argonaut Insurance Company ("Argonaut") through their respective counsel.  The defendants will hereafter be referred collectively as the "Insurers".

2.     My experience and qualifications are described in my *curriculum vitae*, which is attached hereto, and which contains on its last page a list of all matters in which, during the past four (4) years, I have testified as an expert. *See* Exhibit 1.

### A.   RATE OF COMPENSATION

3.     My rate of compensation in this matter is $595 per hour.

### B.   SCOPE OF WORK

4.     The documents that I have considered are set forth in this report and listed in the attached Exhibit 2.  If called to testify as an expert in this matter, I expect to testify regarding my experience in the insurance industry and my experience in connection with insurance industry custom and practice with respect to underwriting and claims handling with respect to liability insurance policies, including those similar to the policies at issue in the Litigation.

### C.   EXPERIENCE SUPPORTING OPINIONS

5.     By way of background, I began working in the insurance industry in 1980, and have always worked extensively with various liability insurance policies and significant claims involving those policies.

6.     My insurance career began in 1980 as an associate attorney with Mendes & Mount, a firm that almost exclusively represented London market insurers and reinsurers.  In 1981, I joined Continental Insurance Company as a claims counsel in their environmental claims operations,

1


EXHIBIT
181
C.L    6/30/22

where I remained until 1985 when I left to join the Chubb Group of Insurance Companies ("Chubb") at their headquarters in Warren, New Jersey. As part of my responsibilities, I had frequent interaction with other Chubb claims and underwriting executive personnel and handled many claims, particularly ones involving directors and officers ("D&O") and other complex litigation in various courts throughout the United States.

7.     Beginning in 1988, I was employed at Reliance National ("Reliance"), part of the Reliance Group of Insurance Companies, to head their D&O and professional liability claims department. Over the course of my tenure at Reliance until late 1999, my areas of responsibility significantly increased along with subordinate staff under my management, and I was also promoted to the level of Senior Vice President and appointed as an officer in one or more insurance companies in the Reliance Group of Insurance Companies. My expanded responsibilities included excess liability exposures under various third party and first party lines of business.

8.     In 1999, I joined Kemper Insurance Companies to form and head their D&O claims operation and serve as underwriting counsel. My role there was similar to my role at Reliance and included responsibility for claims, policy and endorsement drafting and oversight of the process for filing new policies and endorsements in various states.

9.     In 2001, I joined the Hartford Insurance Company, which by that time had purchased renewal rights to the Reliance D&O and professional liability business. The Hartford Insurance Company also hired most of the former Reliance underwriting and claims staff, so I returned to a structure very similar to what I had at Reliance. At Hartford, I worked with the same underwriting and claims teams for D&O and other management liability policies that handled these products at Reliance. Hartford became an even more significant player in this industry sector, and I had a lead role in its claims handling.

10.    From 1985 through 2005, my primary areas of responsibility were professional and management liability insurance, which includes policies similar to the policies at issue in the Litigation.

11.    In 2005, I returned to private practice as a partner at Duane Morris LLP. There, and subsequently at Tressler LLP, Rivkin Radler LLP, and my current firm, Weber Gallagher Simpson Stapleton Fires & Newby LLP, my practice has been predominantly in providing legal services to clients in the areas of professional and management liability insurance, including both claims and underwriting assistance, as well as other lines of insurance as a coverage and monitoring counsel. As such, I am familiar with the major policy forms and claims issues under such policies that have arisen in recent years.

12.    During my career, I have practiced in various areas of insurance and am familiar with different types of insurance products, including policies similar to the policies at issue in the Litigation. As stated above and set forth in Exhibit 1, I have worked for a number of insurance companies during the period from September 1981 through March 2005 and thereafter through the present as a lawyer in private practice, and I have been involved in and had primary or joint responsibility for drafting insurance policies, including application forms and endorsements to those policies. I also have many years of experience in the claims field, both as a claims executive and as a lawyer in private practice providing counsel to claims personnel and underwriters at

insurance companies. As such, I have extensive, in-depth and hands-on experience working with insurance underwriters and claims professionals in drafting and applying policy provisions.

13.     I have also done some academic writing as indicated in my CV, notably for *The Business Lawyer* and *The Western New England Law Review*, as well as numerous articles in insurance trade publications. I have made over two hundred presentations on various topics over the course of my career, and they are all listed in Exhibit 1. As an expert witness, I have testified on behalf of both insurers and policyholders and frequently provide consultative advice to insurance companies, insurance brokers, and policyholders.

14.     My *curriculum vitae* sets forth in greater detail my experience in the insurance industry and in the private practice of law.

15.     All my expert opinions in this report are made to a reasonable degree of professional and technical certainty pursuant to the customs and standards applicable to the insurance industry. I reserve the right to supplement my expert opinions if additional information is made available to me and I may be requested to supplement my opinions in the course of additional reports or testimony.

## II.     FACTUAL BACKGROUND

16.     The Litigation is brought by PNI Litigation Trust (the "Trust") as successor to Patriot National, Inc. ("PNI") and as an assignee of five former directors of PNI, Terry L. Coleman, Ernst N. Csiszar, Glenn T. Hibler, Michael J. Purcell, and Jeffrey P. Rohr (collectively, the "*Coblentz* Directors"), against the Insurers.

17.     The primary policy at issue is National Union Executive Edge® Broad Form Management Liability Insurance Policy No. 06-680-86-39 issued to PNI for the **Policy Period**[1] January 16, 2017 to January 16, 2018 (the "2017 Policy"), which was extended to May 16, 2018. The 2017 Policy provides a Limit of Liability of $10,000,000 excess of a $1,000,000 retention.

18.     The excess policies at issue are RSUI Excess Liability Policy No. HS670803 issued to PNI for the **Policy Period** January 16, 2017 to January 16, 2018 (the "2017 RSUI policy") and Argonaut ARGO FLEX-XS℠ Follow Form Excess Insurance Policy No. MLX 7601240-02 issued to PNI for the **Policy Period** January 16, 2017 to January 16, 2018 (the "2017 Argonaut policy"), which were both also extended to May 16, 2018. The 2017 RSUI policy provides a Limit of Liability of $10,000,000 excess of the $10,000,000 Limit of Liability under the 2017 Policy. The 2017 Argonaut policy provides a Limit of Liability of $10,000,000 excess of $20,000,000 in underlying limits provided by the 2017 Policy and 2017 RSUI policy. The 2017 RSUI policy and the 2017 Argonaut policy are "follow form" policies, which means for purposes of this report they incorporate the pertinent provisions in the 2017 Policy. Because of the follow form nature of these excess policies, my references in this report with regard to claims handling and underwriting

---

[1] All initial capitalized, boldfaced terms used in this report are as defined in the National Union policy or excess policies.

activities are also applicable to the excess policies. I have not seen anything in the documents that I have reviewed that supports a notion that either RSUI or Argonaut acted differently from National Union in these activities.

19.     All the foregoing policies will be referenced collectively herein as the "2017 policies").

20.     Prior to the issuance of the 2017 policies, the Insurers also issued policies of which the 2017 policies were renewals. Specifically, in 2016 National Union issued a primary policy, Policy No. 06-185-94-19 (the "2016 Policy"), for the **Policy Period** January 16, 2016 to January 26, 2017, which provided a Limit of Liability of $10,000,000 excess of a $1,000,000 retention.

21.     RSUI and Argonaut issued excess policies for the same **Policy Period**. Policy No. NHS666236 was issued by RSUI (the "2016 RSUI policy") and Policy No. MLX 7601240-01 was issued by Argonaut (the "2016 Argonaut policy"). The 2016 RSUI policy provided a Limit of Liability of $10,000,000 excess of the $10,000,000 Limit of Liability under the 2016 Policy. The 2016 Argonaut policy provided a Limit of Liability of $10,000,000 excess of $20,000,000 in underlying limits provided by the 2016 Policy and 2016 RSUI policy. As discussed above with reference to the 2017 policies, the 2016 RSUI policy and the 2016 Argonaut policy are follow form policies.

22.     All the foregoing policies issued in the 2016 **Policy Period** will be referenced collectively herein as the "2016 policies". The 2017 policies, as defined herein, were renewals of the 2016 policies.

23.     Many provisions of the 2016 policies and the 2017 policies were substantially identical including the following, which in part state:

1.INSURING AGREEMENTS

All coverage granted for **Loss** under this policy is provided solely with respect to: (i) **Claims** first made against an **Insured**, (ii) **Pre-Claim Inquiries** first received by an **Insured Person**, and (iii) **Crises** first occurring, in each such event, during the **Policy Period** or any applicable **Discovery Period** and reported to the **Insurer** as required by this policy.Subject to the foregoing and the other terms, conditions and limitations of this policy, this policy affords the following coverage:

A.     *Insured Person Coverage*

This policy shall pay the **Loss** of any **Insured Person** that no **Organization** has indemnified or paid, and that arises from any:

4

Claim (including any **Insured Person Investigation**) made against such **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; or

**Pre-Claim Inquiry,** to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs.**

B.      *Indemnification of Insured Person Coverage*

This policy shall pay the **Loss** of an **Organization** that arises from any:

(1)     **Claim**(including any **Insured Person Investigation**) made against any **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; and

(2)     **Pre-Claim Inquiry,** to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs.**

but only to the extent that such **Organization** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Insured Person.**

C.      *Organization Coverage*

This policy shall pay the **Loss** of any **Organization**:

(1)     arising from any **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization;**

(2)     incurred as **Derivative Investigation Costs,** subject to a $250,000 aggregate sublimit of liability; or

(3)     incurred by an **Organization** or on its behalf by any **Executives** of the **Organization** (including through any special committee) as **Defense Costs** in seeking the dismissal of any **Derivative Suit** against an **Insured.**

\* \* \*

7. NOTICE AND REPORTING

(b) *Relation Back to the First Reported Claim or Pre-Claim Inquiry*

5

Solely for the purpose of establishing whether any subsequent **Related Claim** was first made . . . during the **Policy Period** or **Discovery Period** (if applicable), if during any such period:

(1)     a **Claim** was first made and reported in accordance with Clause 7(a) above, then any **Related Claim** that is subsequently made against an **Insured** and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time that such previously reported **Claim** was first made;. . .Claims actually first made or deemed first made prior to the inception date of this policy. . . and Claims . . . arising out of any circumstances of which notice has been given under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

* * *

**Claim**, as amended by endorsements to the policies, means in pertinent part:

(1)     a written demand for monetary, non-monetary or injunctive relief, including, but not limited to, any demand for mediation, arbitration or any other alternative dispute resolution process;

(2)     a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges;

"**Claim**" shall include any **Securities Claim** and any **Employment Practices Claim**.

* * *

**Executive** means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in subparagraph (1) above, or a member of the senior-most executive body (including, but not limited to, a supervisory board); and

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

* * *

**Insured** means any:

(1)     **Insured Person**; or

(2)     **Organization**.

* * *

**Insured Person** means any:

(1) **Executive** of an **Organization**;

(2) **Employee** of an **Organization**; or

(3) **Outside Entity Executive**.

* * *

**Related Claim** means a **Claim** alleging, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in another **Claim** made against an **Insured**; or (ii) the subject of a **Pre-Claim Inquiry** received by an Insured Person.

* * *

**Wrongful Act** means:

(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation** or **Third-Party EPL Violation**:

(i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

(ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) Securities **Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

7

(iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim**.

24.     The litigation underlying the coverage dispute that is the subject of this Litigation was commenced in November 2016 in Delaware Chancery Court as a Verified Stockholder Class Action Complaint, *Wasik v. Mariano, et al.* (the "Original *Wasik* Complaint"). In that litigation, it was alleged that Steven M. Mariano ("Mariano"), the founder, controlling shareholder, CEO and chairman of PNI was using PNI as "his personal piggybank" in order to entrench and unjustly enrich himself at the expense of PNI and its minority stockholders. It is alleged that Mariano implemented a number of measures in 2016, including a Dividend and Repurchase Program, to preserve his controlling interest and also rejected an acquisition offer for a significant premium over the then current trading price of PNI. The plaintiff asserted counts of breach of fiduciary duty against Mariano and his co-defendants PNI and members of its Board of Directors.

25.     On December 29, 2016, AIG Claims, Inc. on behalf of National Union issued a letter to PNI accepting coverage for the Original *Wasik* Complaint under the 2016 Policy subject to reservation of rights. RSUI also issued a reservation of rights letter on December 8, 2016 under the 2016 RSUI policy, and Argonaut did likewise on June 29, 2017 under the 2016 Argonaut policy.[2]

26.     The Original *Wasik* Complaint was amended in March 2017 to include shareholder derivative claims and to add other defendants. PNI became a nominal defendant in the amended action. The Insurers continued to pay **Defense Costs** under the 2016 policies for the amended *Wasik* Complaint.

27.     A proposed Supplemental Verified Stockholder Class Action and Derivative Complaint (the "Supplemental *Wasik* Complaint") was thereafter filed on or about June 27, 2017 alleging acts undertaken by Mariano subsequent to the commencement of the original *Wasik* Complaint and the grant by that Court of a Temporary Restraining Order with respect to the Dividend and Repurchase Program.

28.     On August 1, 2017, National Union advised that there was no coverage for the proposed Supplemental *Wasik* Complaint under the 2017 Policy, advising among other things, that it was part of the same proceeding as the Original *Wasik* Complaint made and reported in 2016. A substantively similar position was asserted on behalf of RSUI on August 1, 2017 and by Argonaut

---

[2] In issuing these reservation of rights letters, the Insurers accepted coverage under their respective 2016 policies. It is my understanding that the limits of liability under the respective 2016 policies exhausted as well as all excess policies in the 2016 tower.

on August 2, 2017. The Insurers continued to fund **Defense Costs** under the 2016 policies subject to a reservation of rights.

29.   On August 11, 2017, the Second Amended *Wasik* Complaint was filed.   The Insurers again advised that there was no coverage under the 2017 policies but continued to provide coverage under the 2016 policies subject to a reservation of rights and to the extent the 2016 policies had not exhausted.

30.   On or about January 30, 2018, PNI filed its Chapter 11 bankruptcy petition and its claims against the director defendants were subsequently assigned to the Trust. The Trust was thereafter substituted as the real party in the interest in the Wasik litigation and realigned as the plaintiff. On or about April 30, 2019, the Trust made a demand to all defendants to settle the *Wasik* litigation.  The Insurers responded by again advising that no coverage was available under the 2017 policies, and reiterated that any coverage would properly be under  the 2016 policies to the extent the limits  of those policies had not already exhausted.

31.   On or about August 21, 2019, the Trust moved to sever the derivative claims asserted in the *Wasik* litigation from the shareholder class claims and to file those same derivative claims with a new case number. The Trust's Motion was granted on or about November 19, 2019 and on or about November 20, 2019, the Trust filed a Verified Complaint in Delaware Chancery Court in *Peter Kravitz, as Litigation Trustee of the PNI Litigation Trust, et al. v. Mariano, et al.* (the "Successor Litigation").

32.   On or about May 6, 2020, the Trust entered into a settlement agreement with three of the then former directors in the amount of $2,950,000 to be paid under the 2016 tower.  A second settlement agreement was entered into on or about June 29, 2020 with all director defendants except the *Coblentz* Directors in the amount of $11,000,000 to be paid from the remaining limits of the 2016 tower. It is my understanding that these payments were actually made and exhausted the entire 2016 tower.

33.   On October 5 and October 6, 2020, National Union, Argonaut and RSUI each again advised that there was no coverage for the Successor Litigation under the 2017 policies.

34.   Subsequently, the Trust entered into two separate *Coblentz* settlement agreements with the five *Coblentz* Directors in the total amount of $30,000,000.  In the settlement agreements the Trust covenanted not to execute against the *Coblentz* Directors, and the *Coblentz* Directors assigned their rights under the 2017 policies to the Trust.  These *Coblentz* settlement agreements were approved by the bankruptcy court on January 14, 2021.

## III.   MY EXPERT OPINIONS

### A.   The Insurers at all pertinent times followed industry custom and practice in underwriting the risk and issuing their respective policies.

9

35.     Mr. Goanos' expert report is replete with speculation as to various "options" available to the Insurers and PNI upon renewal of the 2016 policies.

36.     According to Mr. Goanos, there were essentially five (5) options with respect to renewing the 2016 policies. My review of the documents demonstrates that option 5 was the option considered and ultimately agreed to, by the parties. In my opinion, the option utilized by the parties (option 5) was reasonable and consistent with standard industry practice and the other options suggested by Mr. Goanos would not have been advantageous to PNI.

37.     I also fail to see any bases for Mr. Goanos' opinions as to National Union's underwriting intent, particularly as he does not rely on any underwriter testimony or make reference to the National Union underwriting file. Simply put, his report in this regard is unsupported speculation.

38.     With respect to Mr. Goanos' option 5, the Insurers' underwriters were aware of the *Wasik* litigation when they were considering renewal of the 2016 policies. Unlike Mr. Goanos, I do not consider his options 1-4 as the only appropriate options, but rather believe his option 5, which is what the Insurers and PNI elected to pursue, was an appropriate course of action in accordance with industry custom and practice. Option 5 provided PNI with the same Limits of Liability from the Insurers as in their expiring 2016 policies, which could be available, as appropriate, for covered **Claims** first made in the 2017 **Policy Period** which were not **Related Claims** to any matter reported under the prior policies, including the 2016 policies.

39.     If PNI believed the premium increase for the 2017 Policy was unwarranted, it could have shopped the market for different terms and pricing. At that time, the D&O market was very competitive as to both policy terms and pricing. In my opinion based upon historical industry custom and practice, the premium increase for the 2017 policies was in line for a financially distressed risk with a significant claim history as was the case here with PNI. It is standard custom and practice in setting renewal premiums for an insurer to consider multiple factors including, but not limited to, loss history and the financial condition of the insured. Mr. Goanos entirely ignores this in his report.

**B. It is consistent with industry custom and practice to view the underlying litigation as a single Claim first made during the 2016 Policy Period.**

40.     As detailed above, the 2016 and 2017 policies apply only to **Claims** first made during the respective **Policy Period**, and **Claim** is defined in part to include a civil proceeding commenced by the service of a complaint or similar pleading. The underlying litigation was all part of the same civil proceeding.

41.     Based on the foregoing language, it is my opinion that it was consistent with industry custom and practice to view all of the underlying litigation as a single **Claim** under the 2016 policies without need to consider whether the various pleadings and allegations therein were **Related Claims** and undertaking a "related claim anaylsis". The alleged custom and practice described in paragraph 70 of Mr. Goanos' report does not exist. In my opinion, that industry custom and practice supports the Insurers' position that a single proceeding, including amendments and/or supplements thereto, constitutes a single **Claim**.

10

42.     Mr. Goanos' focus on alleged separate and distinct **Wrongful Acts**, underlying transactions and the inclusion of different directors in later filings is misplaced and ignores that the definition of **Claim** includes a civil proceeding commenced by the service of a complaint or similar document. The definition of **Claim** does not depend on actual or alleged **Wrongful Acts**, underlying transactions and/or the number of different directors named as defendants in such civil proceeding.

43.     The position asserted by the Insurers that appears to particularly trouble Mr. Goanos is that set forth in footnote 4 on page 3 of the October 5, 2020 coverage letter sent on behalf of National Union to Alan Wachs. That footnote stated in pertinent part "we do not believe the allegations or causes of action in a single proceeding can qualify as separate Claims as matter of the policy language and law". In my opinion, that statement is consistent with industry custom and practice.

**C. It would also be within industry custom and practice to view all of the underlying litigation as Related Claims falling under the 2016 policies.**

44.     In my opinion, Section 7(b) of each of the 2016 Policy and 2017 Policy titled NOTICE AND REPORTING, *Relation Back to the First Reported Claim or Pre-Claim Inquiry* (the "**Related Claim** provision") is a key provision in both the 2016 and 2017 policies at issue in the Litigation. I strongly disagree with Mr. Goanos' opinion that industry custom and practice would not support the view that the various pleadings (and allegations asserted therein) filed in the underlying litigation are **Related Claims**.

45.     The **Related Claim** provision in the 2016 Policy, to which the 2016 RSUI policy and 2016 Argonaut policy follow form, works here by pulling **Related Claims** made subsequent to the 2016 policies back into the 2016 policies, under which the initial **Claim** (the original *Wasik* Complaint) was first made and reported. The **Related Claim** provision in the 2017 policies clearly provides that there is no coverage under the 2017 policies for any such **Related Claims**, as they are deemed first made prior to the 2017 **Policy Period**. All **Related Claims** are deemed to be first made in the earlier **Policy Period** when the initial **Claim** was first made. Here the earlier **Policy Period** when the **Claim** was first made was the 2016 Policy Period.

Specifically, the **Related Claim** provision provides:

Solely for the purpose of establishing whether any subsequent **Related Claim** was first made . . . during the **Policy Period** or **Discovery Period** (if applicable), if during any such period:

(2)     a **Claim** was first made and reported in accordance with Clause 7(a) above, then any **Related Claim** that is subsequently made against an **Insured** and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time that such previously reported **Claim** was first made; . . .

11

Claims actually first made or deemed first made prior to the inception date of this policy . . and **Claims** . . . arising out of any circumstances of which notice has been given under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

46.     Mr. Goanos also completely ignores in his opinion the language of the **Related Claims** provision in the 2017 Policy stating "[C]laims actually first made or deemed first made prior to the inception date of this policy. . .. are not covered under this policy".

47.     Mr. Goanos opines that **Wrongful Acts** alleged of the defendants Coleman, Csiszar and Hibler cannot be part of a **Related Claim** because these individuals were not **Insureds** during the 2016 **Policy Period**. However, Mr. Goanos fails to recognize that the definition of **Executive** under the 2016 policies includes any "past, present *and future* duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position)." (my emphasis added).  Accordingly, in my opinion based on industry custom and practice, the fact that these individuals were elected or appointed to their positions after the 2016 **Policy Period** should be of no moment to the issue of their insured status under the 2016 policies.

48.     Mr. Goanos' opinions on this issue conflates claims made with occurrence-triggered coverage.  In my opinion, this is an inappropriate attempt to construe these *claims made* policies as *occurrence* policies that could be triggered in multiple years by a single claim.[3]

49.     Under industry custom and practice, related claims provisions are designed such that a single claim or related claims are limited to a single policy limit. Accordingly, it would be unreasonable in these circumstances to expect that coverage would be available under the 2017 policies for a single **Claim** first made in the 2016 **Policy Period** and/or **Related Claims** to a **Claim** first made during the 2016 **Policy Period**, especially, given that the director defendants, including the *Coblentz* Directors, received and accepted coverage under the 2016 tower.

50.     Here, consistent with industry custom and practice, the Insurers considered the allegations asserted in all of the underlying litigation as a whole and concluded that the allegations asserted in later filed complaints, including the Successor Litigation, involved the same or related facts or **Wrongful Acts** as the original *Wasik* Complaint. In my opinion, it would not be in keeping with industry custom and practice to view, in these circumstances, the complaints which involved allegations concerning the same course of conduct as the original *Wasik* complaint as being comprised of separate, unrelated **Claims**. Thus, I disagree with Mr. Goanos in this regard.

---

[3] In industry custom and practice, for claims made policies a single claim triggers only one policy, that which is in effect at the time the claim was first made. The related claim concept is consistent with this in bringing all subsequent related claims back to that original policy year.  On the other hand, an occurrence policy is triggered by an accident or occurrence taking place in the policy year, regardless of when any claim was actually made against the insured.

51.     I agree with Mr. Goanos that Section 7(b) in the 2016 and 2017 Policy does not constitute an exclusion.  Section 7(b) is a provision in the 2016 and 2017 policies that is available as much to the Insurers as the insured.   I disagree with Mr. Goanos' opinion that this provision is only available for the insured's use.  In other words, I disagree with Mr. Goanos' opinion that the insurers can only rely on  Endorsement No. 35 to support their positions that there is no coverage under the 2017 policies for the underlying litigation.  As noted, Mr. Goanos completely ignores, and his report completely omits, the language in Section 7(b) of the 2017 Policy, stating "[C]laims actually first made or deemed first made prior to the inception date of this policy. . .are not covered under this policy".

52.     Endorsement No. 35, which amends the Pending and Prior Litigation exclusion in the 2017 Policy is, in my opinion, completely irrelevant here because (1) as Mr. Goanos concedes it only applies to litigation filed as of June 24, 2011 and (2) the definition of **Related Wrongful Acts(s)** contained in that endorsement applies to that endorsement only and is not part of the **Related Claim** definition or relevant to Section 7(b).

53.     The assertions by Mr. Goanos that the Insurers are engaging in "post-claim underwriting" is quite simply preposterous, conclusory and unsupported.  Goanos Report at ¶ 86 and 87, pages 28-29.  Post claim underwriting is not in my experience a term used pejoratively or otherwise in industry custom and practice.  If anything, it is an allegation frequently used by the policyholder bar in suits against insurance companies.  There was no underwriting after the policies were issued to PNI. The Insurers made no "gamble" that they subsequently lost and the positions of the Insurers in the Litigation are completely consistent with industry custom and practice and not an attempt to re-underwrite the risk.

**D. The Insurers at all pertinent times acted in good faith and fair dealing in handling the claims at issue, including with respect to the settlement of those claims.**

54.     Mr. Goanos makes several assertions of bad faith conduct by the Insurers without any substantive support for his opinions, and despite the fact that no such claims are asserted in the Litigation. Thus Mr. Goanos' opinions in this regard are simply unsupported speculation on his part.  Goanos' Report at ¶ 88 through 92, pages 29 – 30.

55.     Nonetheless, in my opinion based upon industry custom and practice, based on my review of the documents listed in Exhibit 2, I have seen nothing but good faith conduct on the part of the Insurers in both underwriting of the PNI risk and in the handling of the various litigations filed against PNI and the individual insureds.

56.     There was no issue on which there could be reasonable doubt and, thus, there was nothing on which the Insurers should give the insureds "the benefit of the doubt" as Mr. Goanos opines in ¶91 on page 30 of his report.

57.     In summary, nothing in the documents I reviewed supports Mr. Goanos' conclusion that the Insurers "failed to meet minimal standards of good faith and fair dealing with respect to claims handling according to insurance industry custom and practice."

## IV.     CONCLUSION

58.     My opinions are expressed herein to a reasonable degree of certainty based upon my experience in the areas of insurance claims handling and insurance company underwriting practices. I fully reserve the right to supplement or otherwise amend this report, as new information, facts, expert opinions and deposition testimony are made available to me and may warrant such supplementation or amendment.

Dated:  April 13, 2022

_____

Joseph P. Monteleone

**Exhibit 1**

*Curriculum Vitae*

# JOSEPH P. MONTELEONE

**15 Parkwood Court**
**Edison, New Jersey 08837-2309**

(973) 242-1630 (Business Phone)
(973) 854-1076 (Business Fax)
(732) 494-6882 (Residence Phone)
(732) 740-8935 (Mobile Phone)

| | | |
|---|---|---|
| **E-Mail:** | jmonteleone@wglaw.com | (business) |
| | jpmonte@gmail.com | (personal) |

| | |
|---|---|
| **LinkedIn Profile:** | www.linkedin.com/in/jpmonteleone. |
| **Firm Website:** | www.wglaw.com |

## LEGAL AND INSURANCE CAREER

**PARTNER (Weber Gallagher Simpson Stapleton Fires & Newby LLP, Bedminster, NJ May 2018 – present)**
- Litigation and insurance coverage practice primarily in the area of director's and officer's (D&O) and professional liability insurance
- Expert witness engagements with regard to coverage and claim handling issues
- Insurance policy and other contract consultation and drafting
- Mediation services
  - International Institute for Conflict Prevention & Resolution (CPR) certified mediator
- Arbitration services
  - Member of ARIAS-US and certified arbitrator on their panel

  - CPR Panel of Distinguished Neutrals – Insurance Panel of Arbitrators

**SENIOR COUNSEL (Rivkin Radler LLP, Hackensack, NJ January 1, 2017 – May 2018)**
- See above for Weber Gallagher

**PARTNER (Rivkin Radler LLP, Hackensack, NJ April 2014 – December 31, 2016)**
- See above for Weber Gallagher

**PARTNER (Tressler LLP, New York, NY, May 2006 – April 2014)**
- See above for Weber Gallagher

**PARTNER (Duane Morris, LLP, New York, NY, March 2005 – May 2006)**
- See above for Weber Gallagher

**VICE PRESIDENT AND CLAIMS COUNSEL (The Hartford, Hartford Financial Products, New York, NY, November 2001 – March 2005)**
- Management responsibility for staff of 50 and professional liability claims and litigation including all international claims, directors and officers, architects and engineers, lawyers' professional, intellectual property, employment practices liability, fiduciary, fidelity, financial and specialty risks, and miscellaneous errors and omissions coverages
- Counsel underwriting staff in drafting policy language, endorsement wording and risk evaluation
- Development of new claims procedures and insurance products

**SENIOR VICE PRESIDENT AND GENERAL COUNSEL (Kemper Insurance Companies, Kemper Financial Protection Insurance Company, Berkeley Heights, NJ, November 1999 – November 2001)**
Chief legal officer for all business underwritten in Financial Insurance Solutions and Surety groups, including directors and officers, employment practices, fiduciary, fidelity, kidnap and ransom, representations and warranties, and related products
- Chief claims officer for Financial Insurance Solutions group
- Counsel to underwriting group responsible for policy drafting, endorsement wording and state filing process

**SENIOR VICE PRESIDENT AND CLAIMS COUNSEL (Reliance Insurance Company, New York, NY, February 1988 - November 1999)**
See Hartford duties and responsibilities, above. Hartford Financial Products was the functional successor to Reliance's directors and officers, professional liability and related insurance operations

**NATIONAL DIRECTORS AND OFFICERS LIABILITY CLAIMS COUNSEL (Chubb & Son, Inc., Warren, NJ, May 1985 - February 1988)**
Responsibility on national basis for various litigation involving directors' and officers' liability, fiduciary liability and similar executive protection insurance policies
- Draft policy and endorsement language and assist underwriters in risk evaluation

**ENVIRONMENTAL CLAIMS COUNSEL (Continental Insurance Companies, Livingston, NJ, September 1981 - May 1985)**
Supervise and coordinate national environmental litigation and insurance coverage litigation, primarily in asbestos and hazardous waste actions
  Supervise staff of fifteen, including three line supervisors

**ASSOCIATE (Mendes & Mount, New York, NY, August 1980 - September 1981)**
Represent interests of London underwriters as excess insurers and reinsurers, primarily in the area of products liability and toxic tort exposures

**EDUCATION**
LEGAL:          NEW YORK LAW SCHOOL      J.D. 1980        Graduated *cum laude*
                Editor, LAW REVIEW
                Alfred Gross Scholar
                Joseph Solomon Scholar at New York Law School

UNIVERSITY OF BOLOGNA, Center of Legal Studies (Bologna, Italy - July 1978)

GRADUATE:   HUNTER COLLEGE           M.A. (Social Sciences), 1975

COLLEGE:    ST. JOHN'S UNIVERSITY    B.A. (Social Sciences), 1972   Graduated
            *cum laude*

3

## PUBLICATIONS, PRESENTATIONS, PROFESSIONAL ASSOCIATIONS, AWARDS AND BAR ADMISSIONS

## PUBLICATIONS
## BOOKS

1. Cottrell and Monteleone, **Corporate Directors and Officers: Liability Insurance and Risk Management** (co-editor of book and chapter author) (Executive Enterprises, Inc. 1989)

2. Hagglund, Weimer and Monteleone, **Directors & Officers Liability: Guide to Risk Exposures and Coverage,** The National Underwriter Company (1999)

3. Monteleone and Cope (co-authors), Directors' and Officers' (D&O) Liability: Exposures, Risk Management and Insurance Coverage, **The National Underwriter Company,** November 2008

4. Monteleone, Directors and Officers Liability: Exposures, Risk Management and Coverage, 2nd Edition, **The National Underwriter Company,** November 2012

## ARTICLES

5. Comment, Constitutional Law - First Amendment - Establishment Clause - State Aid to Nonpublic Schools - Wolman v. Walter, 24 **N.Y.L.S.L. Rev. 545** (1978)

6. Monteleone, Asbestos-Related Claims: The Coverage Controversy, UAC **Update,** Vol, 12 No. 5 (Fall 1982)

7. Monteleone and Falkowski, Misrepresentations in Applications for Director's and Officer's Insurance: Severability and Other Issues, 381 **Practicing Law Institute Course Handbook** 443 (1986)

8. Monteleone and Jones, Delaware Statute: Will it be a relief to D&O Insurers?, **CASHFLOW** 35 (April 1987)

9. Monteleone, Limiting the Liability of Directors and Officers, 1 **John Liner Review** 3 (Vol. 1, No. 4 - Winter 1988)

10. Monteleone, Defense Agreements in Directors' and Officers', Liability Insurance Claims, 454 **Practicing Law Institute Course Handbook** 727 (1988)

11. Monteleone, Defense of Director and Officer Litigation: Issues of Control Advancement and Conflicts of Interest, **Corporate Counsel's Guide To Director and Officer Liability Insurance and Indemnification** (Business Laws, Inc. 1989)

12. Monteleone, Directors and Officers Liability Insurance: Timing of Payment of Defense Expenses and Allocation of Defense Expenses, Settlements and Judgment Amounts, 535 **Practicing Law Institute Course Handbook** 261 (1990)

13. Monteleone, Understanding the Reservations of Rights Letter, **Claims,** Vol. 38 No. 6, June 1990

14. Monteleone, Defense Costs Shall be Paid Promptly, **Business Insurance,** July 16, 1990

15. Monteleone, Liabilities of REIT Directors, Officers and Trustees: To Whom, For What and How Much in 1991, NAREIT **Insurance Issues,** May 1991

16. Monteleone, The Insured vs. Insured and Regulatory Exclusions in Policies Issued To Banks and Other Financial Institutions, 578 **Practicing Law Institute Course Handbook** 245 (1991)

17. Monteleone, Timing of Payment of Defense Expenses, 578 **Practicing Law Institute Course Handbook** 299 (1991)

18. Monteleone and McCarrick, Allocation of Defense Costs Settlement Amounts and Judgments, 578 **Practicing Law Institute Course Handbook** 315 (1991)

19. Monteleone and Hutcheon, **Directors and Officers Liability and Insurance,** a Reliance National publication (1991)

20. Monteleone, Observations of a Directors and Officers Claims Attorney, **Currency**, Vol. 5 No. 3, June/July 1991

21. Monteleone, Bailey and McCarrick, Directors and Officers Insurance: Allocation of Defense Costs and Settlements Under Directors and Officers Policies, **Insights** Vol. 5 No. 11, November 1991

22. Monteleone, Setting the Record Straight, **PLUS**, Vol. IV No. XI, November/December 1991

23. Monteleone, CLAIMS: Emerging Trends and Issues of the 90's, **The Choice**, Vol. IV No. II, Spring 1992

24. Monteleone, Working with the Insurer in the Defense of D&O Litigation: A Primer, **Counsel to Counsel** (an Arthur Andersen & Co. publication), Vol. 2 No. 4, July/August 1992

25. Monteleone, Shareholder Litigation: Whose Interests Are At Stake?, **PLUS**, Vol. V No. VI, August 1992

26. Monteleone and McCarrick, Directors and Officers Liability and Insurance, **Update 1992**, published by The Federation of Insurance and Corporate Counsel, August 1992

27. Monteleone and McCarrick, Recent D&O Liability and Insurance Decisions and Developments, **PLUS**, continuing monthly series beginning in 1992

28. Monteleone, Legal and Practical Aspects of Reservations of Rights and Disclaimers of Coverage, **Executive Enterprises Conference Handbook** (April 1993)

29. Monteleone, Professional Liability Insurance: Protection For Lawyers and Accountants in Thrift Crisis Litigation, **Insights**, Vol. 7 No. 4, April 1993

30. Monteleone and McCarrick, A D&O Policy Road Map: The Coverage Exclusions, **Insights**, Vol. 7 No. 7, July 1993 (reprinted in Hamilton and Macey, **Cases and Materials on Corporations**, 10th Ed., American Casebook Series, Thomson West)

31. Monteleone and McCarrick, Practical Concerns Involving Directors' and Officers' Liability Litigation, **Insights**, Vol. 7 No. 11, November 1993

32. Monteleone and Conca, Understanding and Avoiding Procedural Problems in D&O Claim Management, **The D&O Book**, Griffin Communications, Inc. 1994

33. Monteleone and Eisler, Professional Liability Insurance for Designers, **Interior Design Law & Business Practices**, by C. Jaye Berger, John Wiley & Sons, Inc., 1994

34. Machson and Monteleone, Insurance Coverage for Wrongful Employment Practices Claims under Various Liability Policies, **The Business Lawyer**, Vol. 49 No. 2, February 1994

35. Monteleone, Wrongful Employment Practices Claims: Will your Liability Policies Respond? **The John Liner Review**, Vol. 8 No. 1, Spring 1994

36. Monteleone, Directors' and Officers' Liability Insurance: Claims Management Issues and Practical Concerns, **International Risk Management Institute, Professional Liability Insurance Manual,** June 1994

37. Monteleone, Insurance Coverage Litigation: The Role of the Insurer's In-House Claims Counsel, **ABA Section of Litigation, Insurance Coverage Committee Annual Midyear Meeting Handbook,** February 1995

38. Monteleone and Conca, Bringing D&O Insurance Right On Target, **Risk Management,** May 1995

39. Monteleone, Insurance in the '90s For Employment-Related Claims: Is There Coverage Under Traditional Business Insurance And Other Policies And Are The New Employment Practices Liability Insurance (EPLI) Policies Enforceable? **New Jersey Institute For Continuing Legal Education Coursebook (June 1995)**

40. Monteleone and Conca, Directors' and Officers' Indemnification and Liability Insurance: An Overview, **The Lawyer's Brief,** (Business Laws, Inc. 1995)

41. Monteleone, Securities Litigation Reform: The Dawn of a New Era - Or Much Ado About Nothing, **Director's Monthly,** Vol. 19, No. 9, September 1995

42. Monteleone, Employment-Related Liabilities and Insurance: Now and Into the 21st Century, **The Choice,** Vol. VI No. III. 3rd Quarter 1995

43. Monteleone, D&O Allocation: Problems and Solutions, **The Risk Report,** Vol XVIII, No. 8, April 1996

44. Monteleone, Insurance Coverage of Employment Disputes: Coverage Issues Under Commercial General Liability and Directors' and Officers' Liability Policies, **Western New England Law Review,** Vol. 18 Issue No. 1, 47 (1996)

45. Monteleone, Employment Practices Liability Insurance (EPLI) Policies: Who Controls Section of Defense Counsel, **Western New England Law Review,** Vol. 18 Issue No. 1, 159 (1996)

46. Monteleone and Hoeg, Measuring Legal Results Can Reduce Costs, Audits, **Best's Review (P/C),** May 1996

47. Monteleone, Securities Litigation: Defense and Settlement Issues From the Insurer's Perspective, **American Conference Institute Coursebook** (June 1996)

48. Monteleone and Conca, Directors and Officers Indemnification and Liability Insurance: In Overview of Legal and Practical Issues, **The Business Lawyer,** Vol. 51 No.3, May 1996

49. Monteleone, Variations Upon a Theme: Lawyers in Insurance Company Claims Departments, **The Metropolitan Corporate Counsel** (July 1996)

50. Monteleone, Recent Developments in Coverage for Employment-Related Claims Under New Jersey and Other Law; Policies Other Than Commercial General Liability (CGL) Policies, **New Jersey Institute For Continuing Legal Education Coursebook** (August 1996)

51. Monteleone and McCarrick, Settlement Issues in Securities Litigation Involving Directors and Officers, **INSIGHTS,** Vol. 10 No. 9, September 1996

52. Monteleone, Sexual Harassment: Liability, Insurance and Risk Management, **Global Reinsurance,** Vol. 5 No. 8 (North American Special Edition, September 1996)

53. Monteleone, The Uncertainty of Coverage for Wrongful Employment Practices Claims, **Managing Risk,** Vol. 10 No. 12 (LRP Publications, December 1996)

54. Monteleone, Directors and Officers Coverage: The Allocation Issue Today, **Managing Risk,** Vol. 11, No. 1 (LRP Publications, January 1997)

6

55. Monteleone, The Year 2000: Just Another Millennium, Or Armageddon for Corporate Directors and Officers, **Insurance Specialist**, Volume 2, No. 4 (February 1997)

56. Monteleone, Resolving Continuing Allocation Challenges in D&O Liability Coverage, **Practising Law Institute Coursebook** (May 1997)

57. Murov and Monteleone, Insurance For Employment Claims - Do You Have or Need It? **The Louisiana Labor Letter**, Vol. II No. 5 (May 1997).

58. Monteleone and Skarzynski, Coverage for EPL Exposures Under Traditional Insurance Policies, **American Conference Institute Conference Handbook** (October 1997).

59. Monteleone and McCarrick, Developments In Directors' and Officers' Liability Insurance, **Practising Law Institute Coursebook** (October 1997).

60. Monteleone, Evaluating Insurance Coverage In Employment Claims, Chapter 36 in **Insurance Settlement Handbook** (March 1998 Supplement, James Publishing, Inc.)

61. Monteleone, Directors' and Officers' Liability and Insurance - 1998, **Practising Law Institute Coursebook** No. H-584 (May 1998).

62. Monteleone, D&O 1998 - Living In a Powderkeg, **National Underwriter** (May 11, 1998).

63. Monteleone, Financial Officers Need To Focus on D&O Risks, **National Underwriter** (October 26, 1998).

64. Monteleone, Y2K: Implications for Directors, Officers and Their Insurers, **ALI-ABA** (December, 1998)

65. Hagglund, Weimer and Monteleone, Directors & Officers Liability: Guide to Risk Exposures and Coverage (**The National Underwriter Company**, 1999)

66. Monteleone and Grotell, Coverage for Employment Liability under Various Policies: Commercial General Liability, Homeowners, Umbrella, Workers Compensation and Directors and Officers Liability Policies,(**Western New England Law Review**, Vol. 21 Issue No. 2 (1999)

67. McCarrick, Monteleone and DeBerry, Recent Developments In Directors' and Officers' Liability Insurance. Current Trends, New Financial Products and Y2K - Related Litigation (**PLI Coursebook**, September 1999)

68. Monteleone, Financial Insurance Solutions To Exposures Arising From Merger, Acquisition And Related Transactions (**American Conference Institute Seminar Coursebook**, May 2000)

69. Steinberg, Monteleone, Grotell, DeMarco and Arguin, Representing a Client with Insurance (Chapter 25 in Successful Partnering Between Inside and Outside Counsel, **West Group**, September 2000)

70. Monteleone, The Evolution of Employment Practices Liability Insurance: Coverage For Third Party Discrimination Claims (**CCH Global Employment Law Library**, published online October 10, 2000)

71. Monteleone, Employment Claims: A Primer for the Insurance Lawyer and Claims Professional (**PLI Coursebook**, April 2001)

72. McCarrick and Monteleone, Is It Time To Remove Junk Science From Securities Litigation? (**PLUS Journal**, August 2001)

73. Monteleone, Directors' and Officers' Liability Insurance: Policy Language Deserves A Closer Look (**PLI Coursebook**, September 2001)

74. Monteleone, Time Is Right For Claim-Made Settlements In Securities Fraud Class Actions (**National Underwriter,** December 3, 2001)

75. Monteleone and Mak, Employment Claims and Insurance: Update 2002 (**American Conference Institute Coursebook,** January 31, 2001)

76. Monteleone, 401 (k) Suits Follow Securities Fraud Litigation (National **Underwriter,** February 25, 2002)

77. Monteleone, Directors' and Officers' Liability Insurance: Selected Topics of Interest in 2002 (**ACCA**) July 23, 2002

78. Monteleone, Directors' and Officers' Liability Insurance: The Sarbanes-Oxley Act of 2002 and Other Topical Issues (**American Conference Institute**) September 23, 2002

79. Monteleone, Protecting Directors From Shareholder Lawsuits (**Insurance International/Commercial Insurance**) Summer 2002

80. Monteleone, Exclusion Clauses in U.S. D&O Policies (**Insurance International/Commercial Insurance**) Autumn 2002

81. Monteleone, Sarbanes-Oxley Implications for Directors and Officers, **The John Liner Review,** Vol. 16 No. 4, Winter 2003

82. Monteleone, D&O Liability and Insurance: The Hot Emerging Issues, **The Risk Report,** Vol. XXV, No. 9, May 2003

83. Monteleone, Inside Track with Broc: Joseph Monteleone on D&O Insurance Developments, **The Corporate Counsel.Net,** November 24, 2003

84. Monteleone, Directors' and Officers' Liability and Insurance: The Emerging Hot Issues in 2004, **ABA Section of Litigation Insurance Coverage Committee Midyear Meeting Coursebook,** March 6, 2004

85. Monteleone, Directors' and Officers' Liability and Insurance: A Changing Landscape, **Practising Law Institute Securities Litigation & Enforcement Institute 2004,** September 13, 2004

86. Monteleone, Employment Practices Liability Insurance, Ch.1 in The Practitioner's Guide To Defense Of EPL Claims (Editor, Ellis B. Murov), **ABA Publishing,** January 2005

87. Monteleone, Side A Only Coverage: Everything Old Is New Again, **Mealey's Teleconference On D&O Litigation,** December 15, 2005

88. Monteleone, Directors' and Officers' Liability Insurance In The United States: Emerging Trends In Securities Litigation And Coverage Developments, 2nd **Asian Conference on Corporate Governance and Directors' and Officers' Liability Insurance,** January 24, 2006

89. Monteleone and Conca, D&O Claims Management Issues Involving Securities Fraud Class Actions, The D&O Book, **NUCO Publishing,** February 2006

90. Monteleone, Insurance Coverage Issues – Chapter 5 in Employment Litigation in New Jersey, published by LexisNexis (**Matthew Bender,** April 2006

91. Monteleone, Insurance Implications of Stock Option Backdating Investigations and Litigation, **Mealey's Securities Teleconference on Stock Option backdating,** September 2006

92. Monteleone, Recent Developments in Directors' and Officers' (D&O) Liability Insurance, **Securities Reform Act Litigation Reporter**, Volume 22, Number 4, January 2007

93. Monteleone, D&O 2007: Litigation And Coverage Trends, **The Risk Report**, Volume XXIX, Number 9, May 2007

94. Monteleone, Global Warming – Will There Be Exposure For Directors And Officers And Will It Be Covered, **Environmental Claims Journal**, July 2007

95. Monteleone, A Review of Recent Key Coverage Decisions in 2006 and 2007 Affecting D&O Insurers, **Practising Law Institute Course Handbook, Securities Litigation & Enforcement Institute 2007**, September 2007

96. Monteleone, A Golden Opportunity is Knocking for the D&O Insurance Industry, **PLUS Journal**, December 2007

97. Monteleone, How Courts And Claims Are Altering The D&O Landscape, **Insurance Journal**, National Edition, April 7, 2008

98. Monteleone and Hanekamp, Insurance Policy Rescission, **The Risk Report**, Volume XXX, Number 10, June 2008

99. Cope and Monteleone, Cutting Edge Coverage: Developments Impacting Directors' and Officers' Liability Insurance Policy Drafting, Negotiations and Claims, **New Appleman on Insurance: Current Critical Issues In Insurance Law (Publication 60098, Release 8)**, August 2008

100. Monteleone, Recent Significant Decisions in Securities Litigation and Related Disputes Affecting D&O Insurers, **Practising Law Institute Course Handbook, Securities Litigation & Enforcement Institute 2008**, September 2008

101. Monteleone, Top 10 D&O And E&O Claim Battlegrounds, **The Risk Report**, Volume XXX!, No.12, August 2009

102. Monteleone, Why Securities Fraud Class Actions Are Rarely Tried, **Agents of America Website**, October 2009

103. Hanekamp, Morrison & Monteleone, From Subprime Crisis To Credit Crunch To Recession: The Liability And Coverage Implications For Professional Liability And E&O Insurers "Emerging Issues In Insurance Coverage, **Federation of Defense & Corporate Counsel Quarterly**, Vol. 59, No. 4, Summer 2009

104. Grimes and Monteleone, Bumpy Seas Ahead: Navigating the Shoals of D&O Insurance, **Corporate Counsel**, January 2010

105. Monteleone, Escalating D&O Defense Costs Fuel Disputes Between Carriers, Insureds, **National Underwriter**, May 17, 2010

106. Monteleone, **DandOEandOMonitor**, blog initiated by Joseph P. Monteleone in September 2010 at www.dandoeandomonitor.com – over 140 postings through April 2014

107. Monteleone, The Evolution of D&O Liability Insurance Coverage, **The Risk Report**, Volume XXXIII, No. 8, April 2011

108. Monteleone, Managing Directors and Officers Liability Claims, **Professional Liability Manual**, International Risk Management Institute, July 2011

109. Monteleone, Employment Litigation in New Jersey (Insurance Coverage Issues), chapter in **Lexis-Nexis Matthew Bender** treatise, 2011

110. Monteleone. Did Second Circuit Open Door to Millions of Dollars of Added Exposure for D&O Insurers?, **Advisen Management Liability Journal**, December 2011

111. Monteleone, D&O Liability Policy Pitfalls Can Ensnare Bank Executives, **Banking New York**, March 2012

112. Monteleone, Attention Forum Shoppers!  There May Be No Reason To Flee Delaware, **Advisen Management Liability Journal**, April 2012

113. Monteleone, What Are The Top 10 Areas Of D&O And PI Coverage Disputes In The United States In 2012?,presented at **Professional Liability Underwriting Society (PLUS)** Symposia  in Hong Kong (April 24, 2012) and Singapore (April 26, 2012)

114. Monteleone, Not All ERISA Violations Covered Under Fiduciary Policies, Court Rules, **Advisen Management Liability Journal**, June 2012

115. Monteleone, Disturbing Precedent or One-Time Aberration?, **Advisen Management Liability Journal**, September 2012

116. Monteleone, Plaintiff Class representative Need Not prove Materiality As A Requirement For Class Certification In A Private Securities Fraud Action, **Tressler LLP Specialty Lines Advisory**, March/April 2013

117. Monteleone, News Corp. Settles Shareholder Derivative Litigation With $139M In Insurance Proceeds, **Tressler LLP Specialty Lines Advisory**, March/April 2013

118. Monteleone and Arguello, *Zeig* Revisited by Second Circuit:  Excess Insurers' Payment Obligation Not Triggered Until Underlying Insurance Is Exhausted, **Tressler LLP Specialty Lines Advisory**, June 2013

119. Monteleone, Insurer Cannot Assert Lack Of Coverage For Default Judgment Due To Exclusions After Breaching Duty To Defend, **Tressler LLP CGL Dispatch**, July 2013

120. Monteleone, Risks Face Directors and Officers, interview with other panelists published in **Financier Worldwide**, July 2013

121. Monteleone and Betterley, Is Your Insurance Helping You Sleep Better?, **Inside Trustee**, July 2013

122. Monteleone, The Importance of Liability Exclusion Preambles, **The Risk Report**, Volume XXXV, No. 12, August 2013

123. Monteleone and Granof, A Call for Action:  Mandatory Mediation of Insurance Coverage Disputes in the D&O and E&O Arenas, **PLUS Journal**, Volume XXVI, Number 9, September 2013

124. Monteleone, Insurance Implications of Various Business Activities, **Tressler LLP Business & Regulatory Compliance Update**, Autumn 2013

125. Monteleone, Chapter 11 – The Perils and Pitfalls of the Insurance Application, in **Insurance Agency Risk Management: A Comprehensive Guide to Avoiding E&O Claims Book Two**, published by Thomson Reuters Company, November 2013

126. Monteleone, Title Agents E&O Insurer Is Entitled to Rescission Based Upon Material Misrepresentation Despite Subjective Belief of Applicant That No Covered Claim Would Ensue, **Tressler LLP Specialty Lines Advisory**, January 2014

127. Monteleone, Exposures Faced by Directors, Officers, Trustees and Others in Privately-Held and Not-for-Profit Organizations: Risks and Insurance Solutions, Three-Part Article published online by **AgentsofAmerica**, June 2014

128. Monteleone, Dealing with Divergent Interests Among Defense Counsel, the Primary Insurer and Excess Insurers in Complex Litigation Involving Directors and Officers, **PLUS Journal**, Volume XXVII, Number 6, June 2014

129. Monteleone and Zauderer, Exposures Faced by Directors & Officers in Privately Held Companies: Corporate Risks & Insurance Solutions, **AXIS Insurance Company White Paper**, December 2014

130. Monteleone. Competing Constituencies and the Role of Mediation in Complex D&O Claims, **The Risk Report**, Volume XXXVII, No. 6, February 2015

131. Monteleone, When Products Liability Begets Directors and Officers Liability, **New Jersey Defense**, publication of New Jersey Defense Association, Volume 30, Issue 3, Spring 2015

132. Monteleone, Cautionary Tale for Directors and Officers of Not-for-Profit Organizations, **Rivkin Radler Publications – Directors & Officers Bulletin**, April 21, 2015

133. Monteleone, Notice-Prejudice Requirements in D&O Policies: Diverse Trends in Contract Language and Case Law, **Guest Post on The D&O Diary**, November 23, 2015

134. Monteleone, Notice-Prejudice Requirements in D&O Policies: Diverse Trends in Contract Language and Case Law (updated and Revised), **Rivkin Radler Publications – Directors & Officers Bulletin**, February 17, 2016

135. Monteleone, Protecting Directors: D&O Insurance and Corporate Indemnification, **The Risk Report**, Volume XXXIX, No. 3, November 2016

136. Monteleone, D&O Insurance 2.0:  Side A DIC Policies, **USLAW Network**, October 2017

137. Monteleone, Securities Litigation: What To Do When It Happens To You, **The Risk Report**, Volume XL, No. 9, May 2018

138. Monteleone, D&O Insurance - Policy Changes That Need to be Made to Minimize Coverage Disputes,  **The Risk Report**, Volume XLI, No. 10, June 2019

139. Monteleone, **COVID-19: The Evolving Management Liability Insurance Implications**, New Jersey Law Journal, April 1, 2020

140. Monteleone, Problems and Solutions With D&O Insurance Policies, **The Risk Report**, Volume XLII, No. 10, June 2020

141. Monteleone, Recent D&O, E&O, Employment Practices, and Fiduciary Liability Cases, **The Risk Report**, Volume XLIII, No. 8, April 2021

142. Gilbert, Grace, Monteleone and Prendergast, Stress Testing Your Corporate Governance Structure: Examining Board Oversight to Enhance Operations and Minimize Litigation Experience, **Business Law Today**, October 2021

## PRESENTATIONS

1. "Recent Amendments to Virginia Stock Corporation Act and Virginia Nonstock Corporation Act - Potential Impact Upon Corporations, Their Directors, Officers and Insurers", Chubb & Son, Inc. sponsored presentation to local insurance community, Richmond, Virginia - May 13, 1987

2. "D&O Insurance Issues in Light of S.2510", New Jersey State Bar Association, Atlantic City, New Jersey - May 15, 1987

3. "D&O Claims and Legal Issues in Light of Recent Massachusetts Directors' Liability Legislation", Chubb & Son, Inc. sponsored presentation to local insurance community, Boston, Massachusetts - May 27, 1987

4. "Current Trends and Issues in Directors' and Officers' Liability Insurance", Frank B. Hall & Company sponsored presentation to local insurance community Milwaukee, Wisconsin - October 29, 1987

5. "Current Trends and Issues in Directors' and Officers' Liability Insurance", Marsh & McLennan sponsored presentation to clients, Milwaukee, Wisconsin - January 5, 1988

6. "Current Issues in Directors' and Officers' Liability Insurance - Wisconsin Legislation Regarding Indemnification and Limitation of Liability", First Interstate Insurance Agency sponsored presentation to local insurance community Sheboygan, Wisconsin - January 6, 1988

7. "Defense Issues in Directors' and Officers' Liability Insurance Claims: Allocation, Advancement and Other Matters", Practicing Law Institute - Directors and Officers Liability Insurance Program New York, New York - May 5, 1988

8. "Director and Trustee Responsibilities", National Association of Real Estate Investment Trusts Chicago, Illinois - June 1, 1988

9. "Limiting D&O Liability and Indemnification Issues - A Comparison of The New York and Delaware Statutes", Marsh & McLennan sponsored presentation to local insurance community, Buffalo, New York - March 27, 1989

10. "The State of Director/Officer Liability - 1989: To Whom, For What and How Much?", RIMS 1989 Annual Conference Atlanta, Georgia - April 10, 1989

11. "Defense of Director and Officer Litigation. Issues of Control, Advancement and Conflicts of Interest", Practicing Law Institute - Directors and Officers Liability Insurance Program, New York, New York - May 10, 1989

12. "D&O Claims", RIMS, Virginia Chapter, Educational Conference, Charlottesville, Virginia – October 6, 1989

13. "Investigation and Legal Issues in E&O and D&O Claims", 1990 Insurance Claims and Fraud Investigation Seminar Phoenix, Arizona - March 7, 1990

14. "Professional Liability Update", RIMS, Detroit Chapter, Annual RIMS Day, Troy, Michigan – March 2, 1990

15. "Directors and Officers Liability Insurance: Timeliness of Payment of Defense Expenses and Allocation of Defense Expenses, Settlements and Judgment Amounts," Practicing Law Institute - Directors and Officers Liability Insurance Program, New York, New York - May 8, 1990

16. "D&O Litigation: The Claims Handling Process, Defense Issues and Dispute Resolution", The Institute for International Research (Law Division) - Duties and Liabilities of Directors and Officers Program New York, New York - September 27, 1990

12

17. "Architect-Engineer Liability Under Delaware Law", The Cambridge Institute, Wilmington, Delaware - January 18, 1991

18. "Directors and Officers Liability Insurance for Publicly and Privately Held Corporations", Alexander & Alexander sponsored presentation to clients, Old Greenwich, Connecticut - March 19, 1991

19. "Getting Paid", Long Island Chapter of the American Institution of Architects, Plainview, New York - April 11, 1991

20. "Directors and Officers Liability Insurance: The Insured vs. Insured and Regulatory Exclusions in Policies Issued To Banks and Other Financial Institutions; Timing of Payment of Defense Expenses; Allocation of Defense Costs, Settlement Amounts and Judgments" Practicing Law Institute - Directors and Officers Liability Insurance Program, New York, New York - May 8, 1991

21. "An Analysis and Overview of Key Exclusions in the D&O Policy Form", Minnesota Institute of Legal Education - Director and Officer Insurance Coverage Seminar Bloomington, Minnesota - June 27, 1991

22. "Directors and Officers Insurance: Substance or Mirage", Ohio Continuing Legal Education Institute - Director and Officer Liability and Insurance Program Cleveland, Ohio - September 26, 1991

23. "Directors and Officers Liability Insurance: An Overview", Professional Liability Underwriting Society - Annual Convention (Session Panel Leader) Chicago, Illinois - November 15, 1991

24. "Defense Mechanisms When Confronting A Lawsuit", The Institute For International Research (Law Division)/Andrews Publications - Directors' and Officers' Duties and Liability Program, Washington, DC - November 19, 1991

25. "Directors and Officers Liability Insurance: The Reliance National Approach" - Presentation to Frank B. Hall & Co. Financial Services Staff Denver, Colorado - November 21, 1991

26. "Directors and Officers Policy/Directors and Officers Claims", The Society of CPCU (Maine Chapter) Portland, Maine - February 10, 1992

27. Program Moderator, "Managing Directors' and Officers' Liability", The New Jersey Institute for Continuing Legal Education and New Jersey State Bar Associations (Section on Corporate and Business Law) co-sponsors, New Brunswick, New Jersey - February 27, 1992

28. "The Directors and Officers Policy and Current Developments in U.S. Insurance Law", Conference on Directors & Officers Liability and Insurance: The U. S. and U. K . Experiences London, England - March 18, 1992

29. "Directors and Officers Policy/Directors and Officers Claims", The Society of CPCU (Northeastern Pennsylvania Chapter) Clarks Summit, Pennsylvania - May 7, 1992

30. "Directors' and Officers' Liability Insurance: Insured vs. Insured Exclusion; Allocation, Advancement Issues", Practicing Law Institute - Directors and Officers Liability Insurance Program  New York, New York - May 14, 1992

31. "Directors' and Officers' Liability and Insurance: Defense Expense Advancement, Allocation and United States Sentencing Commission - Corporate Sentencing Guidelines", The Wyatt Company - 16th Symposium on Directors and Officers Liability Chicago, Illinois - July 23-24, 1992

32. "Role of Insurance Coverage Counsel in Directors' and Officers' Liability Litigation", RIMS, Houston Chapter Houston, Texas - September 30, 1992

33. "Reservation of Rights: The Legal and Practical Impact Upon the Relationship Among the Insurer, Insureds, Counsel and Other Parties", The Institute for International Research - Property/Casualty Claims Litigation Management Conference Washington, DC - October 1, 1992

34. "Directors and Officers Liability Insurance: Allocation, Advancement and Defense Coordination Issues", Practicing Law Institute - Securities Litigation 1992 Program New York, New York - October 12, 1992

35. "Getting Paid in the 90's: Strategies For Funding Defenses In White Collar Cases", American Bar Association Section of Criminal Justice - White Collar Crime 1993 - New Orleans, LA - March 11, 1993

36. "D&O Policy/D&O Claims", The Society of CPCU (Maryland Chapter) - Timonium, MD - March 22, 1993

37. "Preserving Your Coverage Position: Insurer's Perspective", Executive Enterprises - Resolving Bad Faith Claims Program - New York, NY - April 1, 1993

38. "D&O Claims In The U.S. - Just How Tough Is It?", 5th Annual Lloyd's of London Press Ltd./Gouldens Directors' and Officers' Liability and Insurance Conference London, England – April 21, 1993

39. "Implications of the Reservation of Rights: Legal & Practical Considerations", The Institute For International Research - Property/Casualty Claims Litigation Management Conference - Washington, DC - May 17, 1993

40. "Selected Current Loss Control Issues and Overview of D&O Insurance", The Wyatt Company - 19th Symposium on Directors and Officers Liability - New York, New York - July 22-23, 1993

41. "D&O Liability Insurance Overview", American Bar Association/Tort & Insurance Practice Section/Professional, Officers' & Directors' Liability Law Committee Annual Meeting - New York, New York - August 8, 1993

42. "D&O Insurance Doesn't Necessarily Follow D&O Liability: Why Insurers May Say Yes, No or Maybe", The Corporate Insurance Protection Institute, New York, New York, September 22, 1993

43. "Employment-Related Claims Against Directors and Officers", Professional Liability Underwriting Society - Annual Convention Chicago, Illinois - November 12, 1993

44. "Coverage Aspects and Marketing Strategy: D&O, Fiduciary Liability and Employment Practices Liability", The Society of CPCU (Chicago - West Suburban Chapter) – Oak Brook, IL – November 11, 1993

45. "Directors and Officers Liability", The Society of CPCU (Central Jersey Chapter) Woodbridge, New Jersey - December 1, 1993

46. "Directors and Officers, Fiduciary and Employment Practices Liability Insurance: Coverage and Marketing/Issues and Strategies", CPCU Society (District of Columbia Chapter) - Bethesda, MD - February 24, 1994

47. "Claim Defense Issues and The Role of D&O Insurance In Complex Corporate Litigation", The Wyatt Company - 21st Symposium on Directors & Officers Liability - Denver, CO - March 4, 1994

14

48. "Coverage Aspects and Marketing Strategy:  D&O Fiduciary Liability and Employment Practices Liability", The Society of CPCU (Minnesota Chapter) - Bloomington, MN - April 12, 1994

49. "Allocation Roundtable", American Bar Association/Section on Business Law/Business Insurance Committee - Washington, DC - April 18, 1994

50. "D&O Liabilities, Insurance, Loss Control and Risk Management", Risk and Management," Risk and Insurance Management Society - New Orleans, LA - April 18, 1994

51. "Canadian D&O Issues", Reliance National sponsored seminar for local insurance community - Toronto, Canada - May 26, 1994

52. "Coverage Aspects and Marketing Strategy:  D&O, Fiduciary Liability and Employment Practices Liability", The Society of CPCU (Dallas Chapter) - Dallas, TX - June 9, 1994

53. "D&O Claims Management", Advertising Industry Insurance Symposium - New York, NY - June 14, 1994

54. "D&O Insurance - Misrepresentations and Other Application Issues/Bankruptcy Issues in D&O Litigation and Insurance", Practising Law Institute - Directors and Officers Liability Insurance Program - New York, NY - June 15, 1994

55. "D&O Coverage Issues", American Bar Association, Section of Business Law, Business Insurance Committee, Annual Meeting  New Orleans, LA - August 9, 1994

56. "Alternative Dispute Resolution For Insurance Coverage Disputes," American Bar Association, Litigation Section, Insurance Coverage Committee (ADR Subcommittee) - Telluride, CO - August 26, 1994

57. "Coverage Aspects and Marketing Strategy: D&O, Fiduciary Liability and Employment Practices Liability", CPCU Society (Southern California Inland Empire Chapter) - Ontario, CA - October 6, 1994

58. "Wrongful Employment Practices:  Liability and Insurance Issues", CPCU Society (Excess/Surplus/Specialty Lines Section) - Cromwell, CT - October 18, 1994

59. "Employment Practices:  Liabilities, Loss Control and Insurance", Professional Liability Underwriting Society - Annual Convention, New York, NY - November 11, 1994

60. "Emerging Issues Regarding Coverage For Employment Related Offenses:  Employment Practices Liability Insurance Policies", American Bar Association, Tort and Insurance Practice Section, Insurance Coverage Litigation Committee - San Diego, CA - February 25, 1995

61. "Insurance Coverage Litigation, The Role of the Insurer's In-House Claims Counsel", American Bar Association, Section of Litigation, Insurance Coverage Litigation Committee - Tucson, AZ – March 4, 1995

62. "D&O, Fiduciary Liability, and Employment Practices Liability:  Coverage Aspects and Marketing Strategy", CPCU Society – Houston, TX - March 9, 1995

63. "D&O, Fiduciary Liability, and Employment Practices Liability:  Coverage Aspects and Marketing Strategy", CPCU Society – Baltimore, MD - March 20, 1995

64. "Availability of Insurance Coverage for Employment-Related Cases", Joint Chicago Bar Association/American Bar Association Program on Employment Chicago, IL - April 12, 1995

65. "Developments in Directors & Officers Insurance and Liability Insurance for the Employed Attorney", American Corporate Counsel Association, Greater New York Chapter, New York, N.Y. - April 26, 1995

15

66. "Disposing of D&O Disputes", Risk and Insurance Management Society, San Francisco, CA – April 27, 1995

67. "Auditor and Director & Officer Liability for Misstated Financial Statements", The Business, Law, and Economics Center of Washington University, St. Louis, MO - April 28, 1995

68. "Employment Law Liability Claims:  What You Need To Know About Insurance Coverage", Practising Law Institute, New York, N.Y. - May 10, 1995

69. "D&O, Fiduciary Liability and Employment Practices Liability:  Coverage Aspects and Marketing Strategy", CPCU Society, Rockford, IL – May 11, 1995

70. "Employment Liability:  Whose Right?", Seminar on Torts & Claims Into the 21st Century sponsored by CPCU Society (Claims Section), Elmhurst, IL - May 12, 1995

71. "Loss Control/Prevention For Directors and Officers", Reliance (Canada) sponsored seminar Vancouver, BC, Canada - May 16, 1995

72. "Coverage For Employment Related Claims", Boston Bar Foundation Continuing Legal Education Boston, MA - June 6, 1995

73. "Insurance Coverage for Sexual Harassment and Other Employment - Related Cases", New Jersey Institute for Continuing Legal Education, Mt. Laurel, Hasbrouck Heights and New Brunswick, NJ - June 10, 22 and July 11, 1995.

74. "D&O, Fiduciary Liability and Employment Practices Liability: Coverage Aspects and Marketing Strategy", CPCU Society (Western Carolina Chapter) – Asheville, NC  - August 7, 1995

75. "Insurance in the '90s for Employment-Related Claims:  Coverage and Defense Issues", American Bar Association, Tort & Insurance Practice Section, Labor and Employer-Employee Relations Committee, Chicago, IL - August 8, 1995

76. "Coverage Issues In The Context of Employment-Related Claims Under Various Liability Insurance Policies", International Risk Management Institutes, 15th Annual Construction Industry Symposium – San Antonio, TX - October 26, 1995

77. "D&O Fiduciary Liability and Employment Practices Liability: Coverage Aspects and Marketing Strategy", CPCU Society (Akron-Canton Chapter) – Akron, OH - November 2, 1995

78. "Employment Practices Liability Insurance and Other Insurance For Employment-Related Claims", Upstate New York RIMS – Rochester, NY - November 21, 1995

79. "Managing Securities Fraud Class Actions and Derivative Litigation", American Corporate Counsel Association Greater New York Chapter – New York, NY - November 30, 1995

80. "Employment Liability and Insurance", American Corporate Counsel Association, Greater New York Chapter – New York, N.Y. - December 5, 1995

81. "D&O Liability:  Critical Legal and Insurance Issues", Co-Chair with John F. McCarrick, American Conference Institute  New York, NY - January 29-30, 1996

82. "Employment Practices Liability Insurance:  An Insurer's View", The Corporate Bar Association of Westchester and Fairfield, Inc. – Stamford, CT - February 13, 1996

83. "Coverage For Employment Related Claims", Committee CLE Midyear Meeting, Insurance Coverage Litigation Committee, Tort and Insurance Practice Section, American Bar Association – Newport Beach, CA - February 23, 1996

84. "Insurance Coverage For Employment Law Liability", The Pennsylvania Defense Institute – Harrisburg, PA - March 29, 1996

85. "Insurance Coverage For Employment Law Liability," Society for Human Resource Management (North Jersey-Rockland Chapter) – Saddle Brook, NJ - April 30, 1996

86. "Employee Claims and their Costs", Tidewater Insurance Associates sponsored seminar for area employers – Hanover, MD - May 1, 1996

87. "Securities Litigation:  Defense and Settlement Issues From The Insurer's Perspective", American Conference Institute - New York, NY - June 4, 1996

88. "Reservation of Rights, Non-Waiver Agreements, and Conflicts of Interests", New Jersey Corporate Counsel Association – Parsippany, NJ - July 17, 1996

89. "Recent Developments in Coverage for Employment - Related Claims Under New Jersey and other Law: Policies Other Than Commercial General Liability (CGL) Policies" New Jersey Institute for Continuing Legal Education, Paramus, Cherry Hill and Edison, NJ - August 13, September 25 and October 17, 1996

90. "D&O Insurance Coverage Issues In The U.S. and Mexico", Seguros Renamex sponsored seminar for the Mexican brokerage community, Mexico City, Mexico - September 5, 1996

91. "Recent Developments In Coverage for Employment Related Claims", Institute for Continuing Legal Education in Georgia, St. Simons Island, GA - September 27, 1996

92. "Developments in Directors' and Officers' Liability Insurance" Practising Law Institute, New York, NY - October 1, 1996

93. "D&O Liability Insurance:  Issues Arising Outside The United States" Protecting Your Decision Makers - Shearman & Sterling - Sponsored Seminar, New York, NY - November 6, 1996

94. "Developments in D&O Insurance Since The Reform Act", Professional Liability Underwriting Society (PLUS), Orlando, FL - November 14, 1996

95. "D&O Liability and Insurance:  Current Issues", Co-Chair with John F. McCarrick, Professional Liability Underwriting Society (PLUS) – New York, NY - January 23-24, 1997

96. "An Underwriter's Perspective on the Reform Act and Current D&O Policy Initiatives and Coverage Issues", The Watson Wyatt Company - 30th Symposium on D&O Liability – San Diego, CA - February 7, 1997

97. "D&O Allocation:  Contractual Solutions to Legal Issues and Other Problems", American Bar Association, Section of Litigation, Insurance Coverage Litigation Committee, Tucson, AZ - March 14, 1997

98. "Arbitrating Employment Related Disputes:  An Insurer's Perspective", American Bar Association, Section of Labor - Employment Law, Employer-Employee Relations Committee, Kiawah Island, SC - March 19, 1997

99. "Resolving Continuing Allocation Challenges in D&O Liability Coverage", Institute for International Research, New York, NY (March 24, 1997) and San Francisco, CA (September 15, 1997)

100. "Employment Practices Liability Insurance:  Is It For Your Company", American Corporate Counsel Association, Greater New York Chapter, New York, NY - April 15, 1997

101. "Current Developments In Directors' and Officers' Coverage", Practising Law Institute, New York, NY - May 19, 1997

102. "Mediation of Professional Liability Disputes:  Strategies For Maximizing Effective Advocacy", Defense Research Institute, Boston, MA - June 13, 1997

17

103. "D&O: Breaking Developments", Professional Liability Underwriting Society, New England Chapter, Boston, MA - June 19, 1997

104. "Current Developments in D&O Insurance", American Bar Association Annual Meeting, Section of Business Law, Business Insurance Committee, San Francisco, CA - August 2, 1997

105. "EPLI Policies: Everything The New York Employment Lawyer Needs To Know", New York State Bar Association, Labor and Employment Section, Bolton Landing, NY - September 13, 1997

106. "Employment Related Practices Liability Heats Up!", Association of Professional Insurance Women (APIW), New York, NY, September 18, 1997

107. "Developments in Directors' and Officers' Liability Insurance", Practising Law Institute, New York, NY, October 17, 1997

108. "Insurability Issues and the Evolution of the EPL Policy", American Conference Institute, New York, NY, October 22, 1997

109. "Introduction to Patent Enforcement Insurance", Insight Information, New York, NY, December 3, 1997

110. "Insurance Coverage For Employment Practice Liability", Insurance Society of Philadelphia, Radnor, PA, December 10, 1997

111. "D&O Liability & Insurance Issues Symposium", Co-Chair with John F. McCarrick, Professional Liability Underwriting Society (PLUS) – New York, NY - January 22-23, 1998

112. "The Bermuda Triangle of Ethics: Insurance Company, Policyholder and Defense Counsel" - The Association of the Bar of the City of New York – New York, NY - February 3, 1998

113. "Enterprise Liability Issues in Employment Litigation" - Eastern Mineral Law Foundation – Sanibel Island, FL - February 13, 1998

114. "Insurance for Employment Practices Liability", Co-Chair with Baba M. Zipkin, Insight Information, Inc. – New York, NY - February 19-20, 1998

115. "Corporate Counseling and Litigation Management in the New Millennium", American Bar Association Center for Continuing Legal Education – Boston, MA - March 20, 1998

116. "Year 2000 Executive Briefing", Program Co-Sponsored by Aon Financial Services Group, Inc., and Hall & Evans, L.L.C., Englewood, CO - August 19, 1998

117. "Developments in Directors' and Officers' Liability Insurance", Securities Litigation 1998 Program sponsored by Practicing Law Institute, New York, NY - September 11, 1998

118. "D&O Liability - Hot Issues For The Remainder of the Nineties", Zurich Re sponsored program on Emerging Issues of the Nineties - Professional Liability, New York, NY - October 7, 1998

119. "EPL Underwriting and Claims Handling Issues", Mealey's Sexual Harassment: Litigation and Insurance Coverage Seminar – Arlington, VA - October 23, 1998

120. "Y2K: D&O and Professional Liability Exposures to and Insurance Coverage For The Millennium Bug", ABA and Association of the Bar of the City of New York program - New York, NY - November 5, 1998

121. "Patent Enforcement Insurance", Insight Information, New York, NY December 7, 1998

122. "Y2K Liability Insurance Coverage", ALI-ABA sponsored program on The Year 2000 (Y2K) Problem, Philadelphia, PA, December 10, 1998

123. "Y2K and the American Consumer", WCBS-FM Dialogue Radio Program, New York, NY, aired in December 1998

18

124. "D&O Liability & Insurance Symposium", Co-Chair with John F. McCarrick, Professional Liability Underwriting Society (PLUS) – New York, NY - January 20-21, 1999

125. "Employment Practices Liability: Coverage Under Various Policies", EPL Symposium, Professional Liability   Underwriting Society (PLUS)- New York, NY - March 2, 1999

126. "Employment Practices Liability" - How to Act, React and Insure Against EPL Exposure in the 21st Century", ABA/TIPS/PODL Committee – New York, NY - March 19, 1999

127. "Solving Year 2000 Disputes Through ADR" -JAMS/Endispute -sponsored program – New York, NY - May 19, 1999

128. "Corporate Management Liability Coverage: Riding The Wave of Coverage Changes Into The Next Millennium" - American Bar Association and Association of the Bar of the City of New York program – New York, NY - June 18, 1999

129. "Corporate Armageddon For Directors and Officers?: Y2K And The Approaching Millennium" - Federation of Insurance and Corporate Counsel Annual Meeting – Whistler, British Columbia – July 30, 1999

130. "Ethical Issues Arising Out of Defense of Directors, Officers, Professionals and Other Employees Under Comprehensive General Liability, Directors and Officers, and Employment Practices Liability Insurance Policies", American Bar Association Annual Meeting, TIPS/PODL Committee – Atlanta, GA - August 8, 1999

131. "Developments In Directors' and Officers' and Employment Practices Liability Insurance", Practising Law Institute - New York NY - September 17, 1999

132. "Hot Issues In Directors' and Officers' and Employment Practices Liability Insurance", Risk and Insurance Management Society (RIMS) – San Diego, CA - September 23, 1999

133. "Liability of Professionals For Year 2000 Computer Problems", Defense Research Institute Annual Meeting – New York, NY - October 7, 1999

134. "Insurance Claims For Y2K Damages", Fulcrum Information Services – Washington, DC - October 19, 1999

135. "Current Issues In Liability Insurance: Y2K And Other Hot Topics", New York County Lawyers Association –New York, NY - November 4, 1999

136. "Protecting Your Decision - Makers: Beyond D&O", Arthur J. Gallagher and Co.-sponsored seminar – Chicago, IL - November 16, 1999

137. "Y2K and Insurance: Issues and Impending Controversies, ALI-ABA, Washington, DC – December 2, 1999

138. "D&O Liability and Insurance Symposium", Co-Chair with John F. McCarrick, Professional Liability Underwriting Society   PLUS) – New York, NY - February 9-10, 2000

139. "Financial Insurance Solutions To Exposures Arising From Merger, Acquisition and Related Transactions", American Conference Institute, New York, NY - May 15, 2000

140. "Directors and Officers Liability Insurance", Practising Law Institute Securities Litigation 2000 Conference, New York, NY - September 15, 2000

141. "Balancing Disclosure and Litigation Risks for Public Companies - D&O Coverage and Indemnity Issues", Alston & Bird and RR Donnelley Financial-sponsored seminar, Nashville, TN and Charlotte, NC - September 27,2000 and November 15, 2000

142. "New Financial Insurance Products", Zurich Re - sponsored program on Professional Liability in the 21st Century, New York, NY - October 6, 2000

143. "Coverage For Employment Practices Liability Claims", New York State Bar Association Program on Emerging Insurance Coverage Issues For Experienced Attorneys, New York, NY - December 1, 2000

19

144. "Recent Trends In The Case Law; Implications For EPLI Coverage" - American Conference Institute, New York, NY - January 18, 2001

145. "Hot Topics Concerning Claims Handling of D&O Insurance" - Professional Liability Underwriting Society (PLUS)D&O Symposium-New York, NY - February 8, 2001

146. "Employment Claims: A Primer for the Insurance Lawyer and Claims Professional", Practising Law Institute Insurance Law 2001 Conference, New York, NY - April 24, 2001

147. "IPO Tie-In/Laddering Litigation Roundtable", PLUS, New York, NY - September 7, 2001

148. "Directors' and Officers' Liability Insurance - Policy Language Deserves a Closer Look", Practising Law Institute Securities Litigation 2001 Conference, New York, NY - September 10, 2001

149. "The Association Response to Business, Insurance and Security Issues In Light of September 11 Terrorist Event", Virtual Seminar Co- Sponsored by Association Forum of Chicagoland and Greater Washington Society of Association Executives, Chicago, IL – October 1, 2001

150. "D&O: Armageddon or the Dawn of a New Golden Age?", Professional Liability Underwriting Society (PLUS) International Conference – Chicago, IL – November 16, 2001

151. "The Evolving EPLI Product: At Home and Abroad", American Conference Institute, New York, NY – January 31, 2002

152. "Emerging Trends in Non-Securities D&O Liability" – Professional Liability Underwriting Society (PLUS) D&O Symposium – New York, NY – February 7, 2002

153. "A Comprehensive Roadmap to IPO Allocation Cases" and "The Changing Face of Entity Coverage", American Conference Institute, New York, NY – May 21-22, 2002

154. "Executive (D&O) Liability in the Wake of Enron & WorldCom:  How to be Prepared & What Changes Lie Ahead", Washington ACCA Chapter Presentation – Redmond, WA – July 23, 2002

155. "Insurance Protection in the Age of Terrorism", American Bar Association, Section of Litigation, Insurance Coverage Litigation Committee, Annual meeting – Washington, DC – August 10, 2002

156. "Advanced Forum on Professional Liability Insurance", Co-Chair, American Conference Institute, New York, NY – September 23-24, 2002

157. "Directors' and Officers' Liability Insurance", Practising Law Institute Securities Litigation 2002 Conference, New York, NY – September 23, 2002

158. "The D&O World Post-Enron", Converium Re Seminar, New York, NY – October 18, 2002

159. "Enron, WorldCom and the Sarbanes-Oxley Act of 2002", ALI- ABA, Washington, DC – November 21, 2002

160. "Insurance Law Update: D&O", Practising Law Institute MCLE Marathon 2002, New York, NY – December 18, 2002

161. "Directors, Officers and Professionals: Finding an Oasis Following Enron, WorldCom and Sarbanes-Oxley", Federation of Defense and Corporate Counsel (FDCC) 2003 Winter Meeting, Rancho Mirage, CA – February 27, 2003

162. "D&O Liability and Insurance: Recent Developments", PLUS Southwest Chapter Seminar, Denver, CO – March 6, 2003

163. "Directors & Officers Liability: The Current Environment", Hylant Group Sponsored Seminars, Indianapolis, IN and Cleveland, OH – March 11 and 12, 2003

164. "Corporate Governance Issues Internationally", European Insurance Forum, Dublin, IRELAND – March 19, 2003

165. "Cover Your Boss: D&O Insurance Coverage", 41st Annual Risk and Insurance Management Society (RIMS)Conference, Chicago, IL – April 10, 2003
166. "Sarbanes-Oxley and Its Effect on Corporate Governance", ALI-ABA's Second Annual Advanced Sarbanes-Oxley Institute, Washington, DC – September 4, 2003
167. "Directors' and Officers' Liability Insurance", Practising Law Institute Securities Litigation & Enforcement Institute 2003, New York, NY – September 15, 2003
168. "D&O Liability Insurance", Institute for International Research, New York, NY – September 24, 2003
169. "Current Topics in D&O and E&O Insurance", PLUS Hartford Chapter Seminar, Hartford, CT – October 9, 2003
170. "D&O Liability and Insurance: The Hot Emerging Issues", Eagle International Fall 2003 Seminar, New York, NY – October 10, 2003
171. "Fundamentals of Insurance Coverage Law", Mealey Publications and Conferences Group, Chicago, IL – October 20, 2003
172. "Emerging Issues in Handling Professional Liability Claims", PLUS International Conference – Philadelphia, PA – November 11, 2003
173. "D&O Carrier Rescission Cases on the Rise: The Causes and Effects", PLUS D&O Symposium – New York, NY – February 12, 2004
174. "Directors' and Officers' Liability and Insurance: The Emerging Hot Issues in 2004", ABA Section of Litigation, Insurance Coverage Litigation Committee Mid-Winter Meeting – Tucson, AZ – March 6, 2004
175. "My Policy Says What? Reading The Fine Print", 42nd Annual Risk and Insurance Management Society (RIMS) Annual Meeting San Diego, CA – April 19, 2004
176. "Who and What Is Covered? Insurance Coverage in the Post-Enron Corporate World", IADC Corporate Counsel College – Chicago, IL – April 22, 2004
177. "D&O Financial Protection: Current Developments", McGriff, Seibels & Williams Conference – Greensboro, GA – May 19, 2004
178. "Mediation: Preparation, Strategies and Expectations", Boston Bar Association, Litigation Section, Alternative Dispute Resolution Committee – Boston, MA – May 20, 2004
179. "Insurance Coverage: Misrepresentations in Applications and Insurance Brokers and Agents E&O". Federation of Defense and Corporate Counsel (FDCC) Annual Meeting – Cambridge, MD – July 30, 2004
180. "Directors' and Officers' Liability Insurance", Practising Law Institute (PLI) Securities Litigation & Enforcement Institute 2004 – New York, NY – September 13, 2004
181. "Containing Damages in Securities Cases", Wiley Rein & Fielding LLP sponsored seminar – Washington, DC – October 21, 2004
182. "The Advanced Forum on Professional Liability", Co-Chair and Speaker at this American Conference Institute (ACI) Conference – New York, NY – December 7-8, 2004
183. "The Global Implications & Compliance Strategies of the Sarbanes-Oxley Act of 2002", Seminar at Bryant University – Smithfield, RI – January 14, 2005
184. "When The Fraud Hits The Fan: Current Issues in D&O Coverage", American Bar Association, Section of Litigation, Insurance Coverage Litigation Committee – Tucson, AZ – March 4, 2005
185. "Avoiding Pitfalls When Defending Employment Claims Under EPL Policies – Understanding the Ethical Issues and Protecting Against Bad Faith Claims", American Bar

Association, Trial Tort and Insurance Practice Section, Employer-Employee Relations Committee – Chicago, IL – August 7, 2005

186. "Directors' and Officers' Liability Insurance", Practising Law Institute (PLI) Securities Litigation & Enforcement Institute 2005 – New York, NY – September 19, 2005

187. "The Four Horsemen of Rescission", PLUS 2005 International Conference – Boston, MA – November 14, 2005

188. "Side A Only D&O Coverage: Everything Old Is New Again", Mealey's Teleconference On D&O Litigation – Teleconference December 15, 2005

189. "A Look at the Future in Asia Through the Looking Glass of the U.S. Scene", Asia Insurance Review's 2nd Asian Conference on Corporate Governance and Directors' and Officers' Liability Insurance – Singapore – January 24, 2006

190. "Developing Issues Against Directors & Officers", Excess Surplus Lines Claims Association, New York Mini-Conference – New York, NY – April 5, 2006

191. "Emerging Issues for Underwriters – Pension Liability", Reinsurance Association of America 2006 Current Issues Forum  Philadelphia, PA – May 24, 2006

192. "Avoiding Fraud and Bad Faith: Counseling Your Clients on the Procurement and Rescission of Insurance Policies", ABA Annual Meeting – Honolulu, HI – August 5, 2006

193. "Insurance Implications of Stock Option Backdating Investigations and Litigation", Mealey's Securities Teleconference on Stock option backdating – Teleconference – September 19, 2006

194. "Negotiating Hot Topic Issues Affecting D&O Coverage", Mealey's Insurance Contract Wording Conference – Philadelphia, PA – September 20, 2006

195. "Directors' & Officers' Liability Insurance", Practising Law Institute (PLI) Securities Litigation & Enforcement Institute 2006 – New York, NY – September 28, 2006

196. "The D&O Coverage You *Thought* You Had . . . How to Address Conflicts and Coverage Issues", DRI Corporate Counsel Roundtable – New York, NY – January 25, 2007

197. "Understanding the Insurance marketplace:  Specialized Products – D&O and EPLI", Mealey's Fundamentals of Insurance Conference – Washington, DC – February 8, 2007

198. "Stock Options Backdating – D&O Insurance Coverage Implications", 3rd Annual Directors and Officers Insurance ExecuSummit – New York, NY – May 16, 2007

199. "Is D&O Liability for Global Warming Exposures on the Horizon, and Will It Be Covered?", Mealey's Global Warming Insurance Litigation Conference – San Francisco, CA – June 6, 2007

200. "Not-for-Profit and Private Company D&O Liability" and "D&O and EPL Claims Handling", PLUS University – Malvern, PA – August 8 and 9, 2007

201. "Mealey's D&O Litigation Teleconference", Mealey's    Teleconference Series – August 15, 2007

202. "Directors' and Officers' Liability Insurance", PLI Securities Litigation & Enforcement Institute 2007 – New York, NY – September 17, 2007

203. "Cutting Edge Coverage: Developments Impacting Directors' and Officers' Liability Insurance Policy Drafting, Negotiation and Claims", LexisNexis Webinar – May 15, 2008

204. "D&O, EPL and Fiduciary Liability Claim Issues", PLUS University – Lisle, IL – May 21-22, 2008

205. "Excess/Primary Relationship Issues In D&O Claims", City Bar Center CLE Program on Current Issues in D&O Liability & Insurance 2008 – New York, NY – June 6, 2008

22

206. "From Subprime Crisis To Credit Crunch To Recession:  The Liability And Coverage Implications For Professional Liability And E&O Insurers", Fourth Annual National Errors And Omissions Insurance ExecuSummit, - New York, NY - July 23, 2008.

207. "Not-for-Profit and Private Company D&O and D&O/EPL Claim Issues", PLUS University – Malvern, PA – August 6, 2008

208. "Directors' and Officers' Liability Insurance", PLI Securities Litigation & Enforcement Institute 2008 – New York, NY – September 15, 2008

209. "The Top Ten D&O Claim Battlegrounds", NUCO Webinar – November 12, 2008

210. "How to Manage Insurance Coverage In The Subprime Crisis", Defense Research Institute (DRI) Web conference – January 6, 2009

211. "Foreign Corrupt Practices Act (FCPA):  Unexpected Liabilities for D&O Insurers", PLUS Annual International Conference – San Antonio, TX – November 11, 2010

212. "Managing Coverage and Costs: Significant Claim Concerns and the Reasonableness of Defense Costs" and "Crafting D&O Policies, Conducting Renewals and Negotiating Favorable Terms", American Conference Institute's 16th Annual Summit on D&O Liability – New York, NY – December 1, 2010

213. "Key & Emerging Specialty Coverages For The Middle Market Company: D&O, Employment Practices And Fiduciary Liability", Crittenden Middle Market Conference – Chicago, IL – September 12, 2011

214. "What Are The Top 10 Areas Of D&O And PI Coverage Disputes In The United States In 2012?",presented at Professional Liability Underwriting Society (PLUS) Symposia  in Hong Kong (April 24, 2012) and Singapore (April 26, 2012)

215. "The Barclays LIBOR-Interest Rate Manipulation Scandal: In-Depth Analysis of the Case and Prediction on Possible Outcomes and Implications", Thomson Reuters webcast, August 22, 2012

216. "The Evolution of D&O Insurance in China and Elsewhere In Asia", PLUS Annual International Conference – Chicago, IL – November 8, 2012

217. "Failed Bank Litigation", webinar sponsored by American Bar Association, Tort Trial & Insurance Practice Section, Professionals' Officers' and Directors' Liability Committee – February 21, 2013

218. "The Foreign Corrupt Practices Act – What is it and Do We Have Insurance to Cover the Alleged Violations?", New Jersey State Bar Association, Insurance Law Section – March 13, 2013 – New Brunswick, NJ

219. "What Makes Directors' and Officers' (D&O) Liability Insurance Unique?", CLE PowerPoint Presentation at Law Line – June 20, 2013 – New York, NY

220. "Mediation of Coverage Disputes under Professional Liability Policies:  Should it be Mandatory?" – PowerPoint and Moderator at PLUS Webinar – October 3, 2013

221. "Failed Bank Litigation and How It's Impacting D&O Coverage and Claims", American Conference Institute's 17th Forum on D&O Liability – October 21, 2013 – New York, NY

222. "The Top 2013 Directors & Officers and Other Professional Liability Cases", CLE PowerPoint Presentation at Law Line – November 14, 2013 – New York, NY

223. "E&O and Fiduciary Liability Coverage:  What Financial Institutions, Carriers, Brokers and Counsel Now Need to Know in Today's Competitive Market", American Conference Institute's 2nd National Advanced Forum on Financial Institutions Insurance – November 21, 2013 – New York, NY

224. "International Dispute Resolution – Arbitration, Mediation, Litigation and Other Forms of Dispute Resolution", American Bar Association, Tort Trial and Insurance Practice Section, Professionals' Officers' and Directors' Liability Committee, A Day at Lloyd's of London Part II – January 27, 2014 – New York, NY

225. "Coverage and Claims: Why are Underwriting Results Suffering?", Advisen Management Liability Insights Conference - September 23, 2014 – New York, NY

226. "The Latest on D&O for Privately-Held Companies, Private Equity and Non-Profits", American Conference Institute's 18th Forum on D&O Liability – October 1, 2014 – New York, NY

227. "Current State of Shareholder Derivative Litigation", H.S. Grace & Co. Insurance Update Seminar – October 15, 2014 – New York, NY

228. "Interplay of Allocation Issues in the D&O Space", American Conference Institute's National Forum on Insurance Allocation – October 29, 2014 – New York, NY

229. "When Good People Disagree: Divergent Interests Among D&O Insurers, Insureds and Defense Counsel" - PowerPoint and Moderator at PLUS Webinar – January 21, 2015

230. "What Makes Directors' and Officers' (D&)) Liability Insurance Unique?", CLE PowerPoint Presentation at Law Line – May 27, 2015 – New York, NY

231. "The Essential Claims Roundup", C5's 25th Conference on D&O Liability Insurance – March 9, 2016 – London, England

232. "Removing the Mysteries from Directors' and Officers' (D&O) Liability Insurance", CLE PowerPoint Presentation at Law Line – June 13, 2016 – New York, NY

233. "Interplay of Allocation Issues in the D&O Space", American Conference Institute's National Forum on Insurance Allocation – June 23, 2016 – New York, NY

234. "The Yates Memo and the New Individual Accountability Landscape: An In-Depth Analysis  of How the Prosecution of Individuals in Corporate Investigations Will Impact Securities Litigation and Side A D&O Policies", American Conference Institute's 20th Forum on D&O Liability – July 26, 2016 – New York, NY

235. "The Unique Predicament of Bump-Up Claims and D&O Coverage", American Conference Institute, M&A Liability Conference – October 26, 2016 – New York, NY

236. "Mediating Coverage Disputes Between Insurers in the London Market and Policyholders", American Bar Association, Tort Trial and Insurance Practice Section, Alternate Dispute Resolution Committee, A Day at Lloyd's of London Part III – February 7, 2017 – New York, NY

237. "Damage Claims in Financial Institution Litigation", CLE Presentation at JPMorgan Chase October 4, 2017 – New York, NY

238. "Cyber Attacks on the Rise:  Risk Management and Insurance Solutions", CLE Presentation for USLAW Network at Everest Re – October 18, 2017 – Liberty Corner, NJ

239. "Let's Make a Deal: Mergers & Acquisitions Update", American Conference Institute M&A Liability Conference – December 5, 2017 – New York, NY

240. "Is the Tripartite Relationship a Healthy One? – Issues Unique To Non-Duty To Defend 'Wasting Limits' Policies" – American Bar Association, Section of Litigation, Insurance Coverage Litigation Committee – March 2, 2018 – Tucson, AZ

241. "What Makes Directors' and Officers' (D&O) Liability Insurance Unique? (Update)", CLE PowerPoint Presentation at Law Line – May 21, 2019 – New York, NY

24

242. "Breaking Down the Mystery of D&O Insurance: Key Features, Practical Tips, & New COVID-19 Implications", CLE PowerPoint Presentation for Law Line – May 19, 2020 – via Zoom

243. "Insurance Policy Rescission after a Claim is Filed: Bad Faith and Third Party Claims", CLE Presentation for Strafford Publications – April 20, 2021 – via Zoom

244. "Analyzing Recent Developments in D&O and E&O Coverage Law", CLE PowerPoint Presentation for Law Line – May 13, 2021 – via Zoom

245. "The Arbitrator's Tool: How Much Should The Law Matter?", ARIAS-U.S. Webinar – September 21, 2021 – via Zoom

246. "For Whom the (Governance) Bells Toll: Stress Testing the Governance Structure", American Bar Association, Section of Business Law, Virtual Annual Meeting – September 22, 2021 – via Zoom

247. "Governance and Ethics Update: The Increased Focus on Director Responsibilities", New York County Lawyers Association, Webinar – February 9, 2022 – via Zoom

## PROFESSIONAL ASSOCIATIONS AND AWARDS

- **American Bar Association (1980 -2020)**
  Member since 1980
  Member, Tort Trial and Insurance Practice Section
  > Vice-Chair, Professional Liability Insurance Committee, 2005 – 2006 and 2012 – 2020
  > Vice-Chair, Dispute Resolution Committee, 2016 –2020
  Former Member, Litigation Section and Insurance Coverage Litigation Committee
  Former Member, Business Law section

- **Professional Liability Underwriters Society (PLUS) (Member since 1988)**
  Member since 1988
  Trustee, 1997 - 2003
  Chair, Education Committee, 1999 - 2001
  Co-Chair, Curriculum Committee, 2004 - 2008
  PLUS I Award Recipient – 2003

- **International Institute for Conflict Prevention & Resolution (CPR)** Panel of Distinguished Neutrals – Insurance Panel of Arbitrators

- Member, **AIDA Reinsurance and Insurance Arbitration Society (ARIAS·U.S)**
  Certified Arbitrator (ARIAS U.S.)

- 2006 – 2011 and 2013 - 2014 **New York Super Lawyers** – New York - Metro Edition)

- 2006 Citation for Excellence, **Chambers USA: America's Leading Lawyers for Business**

- Member, **Insurance Coverage Law Center Editorial Advisory Board**

- Member, **The Armadillo Club** – social association of in-house and outside coverage lawyers

- Selectee, **Who's Who in Finance and Industry**

- Fellow, **American College of Coverage Counsel (Member since 2019)**

## BAR ADMISSIONS

- New York (including U.S.D.C. for E.D.N.Y. and S.D.N.Y.)
  Attorney Registration No.  1700830

- New Jersey (including U.S.D.C. New Jersey)
  Attorney ID No.  016481980

- *Pro Hac* Admissions

  o Superior Court, San Mateo County, California

  o 14th Judicial District Court, Dallas County, Texas

  o Superior Court, Complex Commercial Law Division, Delaware

26

**EXPERT WITNESS TESTIMONY (LAST 4 YEARS)**

- *Northrop Grumman Innovation Systems, Inc. v. Zurich American Insurance Company, et al.,* Superior Court, State of Delaware – deposition testimony on November 13, 2020

- *Security National Insurance Company vs. City of Anaheim, California, et al.,* United States District Court for the Central District of California – deposition testimony on April 1, 2021

- *Sycamore Partners Management, L.P., et al. v. Endurance American Insurance Company, et al.,* Superior Court, State of Delaware – deposition testimony on May 12, 2021

- *EMCOR Group v. Certain Underwriters at Lloyd's, London,* American Arbitration Association – deposition testimony on July 13, 2021

- *Reference Watch LLC, et al. v. Jewelers Mutual Insurance Company,* Superior Court, In and for the County of Los Angeles, California – deposition testimony on December 13, 2021

# EXHIBIT 2

### *Documents Reviewed*

1. Expert Report of Larry Goanos dated March 11, 2022

2. National Union **Executive Edge®** Broad Form Management Liability Insurance Policy No. 06-680-86-39 issued to PNI for the Policy Period January 16, 2017 to January 16, 2018

3. National Union **Executive Edge®** Broad Form Management Liability Insurance Policy No. 06-185-94-19 issued to PNI for the Policy Period January 16, 2016 to January 16, 2017

4. RSUI Excess Liability Policy No. HS670803 issued to PNI for the Policy Period January 16, 2017 to January 16, 2018

5. Argonaut **ARGO FLEX-XS**SM Follow Form Excess Insurance Policy No. MLX 7601240-02 issued to PNI for the Policy Period January 16, 2017 to January 16, 2018

6. Amended Verified Stockholder Class Action and Derivative Complaint, *Henry Wasik v. Steven M. Mariano, et al.*, Court of Chancery, State of Delaware, No. 12953-VCL

7. Letter dated December 8, 2016 from Scott J. Fahy of RSUI to Gex Richardson at PNI

8. Letter dated December 29, 2016 from James T. De Silva of AIG to Gex Richardson at PNI

9. Letter dated April 20, 2017 from Thomas E. Geyer, Esq. to Gex Richardson at PNI

10. Supplemental Complaint dated June 27, 2017. *Henry Wasik v. Steven M. Mariano, et al.*, Court of Chancery, State of Delaware, No. 12953-VCL

11. Letter dated June 29, 2017 from E. Joseph O'Neil, Esq. to Timothy W. Burns, Esq.

12. Letter dated July 24, 2017 from Timothy W. Burns, Esq. to AIG

13. E-mail exchanges in July and August 2017 between Thomas E. Geyer, Esq. and Timothy W. Burns, Esq.

14. Letter dated July 31, 2017 from Timothy W. Burns, Esq. to various insurers

15. Letter dated August 1, 2017 from David J. Kuffler, Esq. to Gex Richardson at PNI

16. Letter dated August 1, 2017 from Thomas E. Geyer, Esq. to Gex Richardson at PNI

17. Letter dated August 2, 2017 from Timothy W. Burns, Esq. to David J. Kuffler, Esq.

18. Letter dated August 2, 2017 from E. Joseph O'Neil, Esq. to Timothy W. Burns, Esq.

19. Letter dated August 3, 2017 from David J. Kuffler, Esq. to Timothy W. Burns, Esq.

20. Letter dated August 4, 2017 from Jon M. Wilson, Esq. to various insurers

21. Letter dated August 8, 2017 from Timothy W. Burns, Esq. to Thomas E. Geyer, Esq.

22. Letter dated August 16, 2017 from David J. Kuffler, Esq. to Gex Richardsson at PNI

23. Letter dated September 1, 2017 from Timothy W. Burns, Esq. to various insurers

24. Letter dated September 5, 2017 from William R. Scherer, Esq. to Thomas E. Geyer, Esq.

25. Letter dated September 28, 2017 from Timothy W. Burns, Esq. to various insurers

26. Letter dated October 4, 2017 from Thomas E. Geyer, Esq. to Timothy W. Burns, Esq

27. Letter dated October 13, 2017 from David J. Kuffler, Esq. to Timothy W. Burns, Esq.

28. Letter dated October 17, 2017 from Timothy W. Burns, Esq. to David J. Kuffler, Esq.

29. Letter dated October 17, 2017 from Timothy W. Burns, Esq. to Thomas E. Geyer, Esq.

30. Letter dated March 16, 2018 from Hughes Hubbard & Reed to AIG

31. Letter dated December 4, 2018 from Eric D. Madden, Esq. to David J. Kuffler, Esq.

32. Letter dated June 28, 2019 from David J. Kuffler, Esq. to various counsel

33. Letter dated June 28, 2019 from E. Joseph O'Neil, Esq. to various counsel

34. Letter dated July 11, 2019 from Thomas E. Geyer, Esq. to various counsel

35. Letter dated January 7, 2020 from Thomas E. Geyer, Esq. to Thorn Rosenthal, Esq.

36. Letter dated January 10, 2020 from Bradley J. Bondi, Esq. to various insurers

37. Letter dated January 21, 2020 from Thomas E. Geyer, Esq. to Bradley J. Bondi, Esq.

38. Letter dated January 22, 2020 from Thomas E. Geyer, Esq. to Thorn Rosenthal, Esq.

39. Letter dated June 12, 2020 from Timothy W. Burns, Esq. to Thomas E. Geyer, Esq.

40. Letter dated June 25, 2020 from Thomas E. Geyer, Esq. to Timothy W. Burns, Esq.

41. Letter dated September 25, 2020 from Alan S. Wachs, Esq. to David J. Kuffler, Esq.

42. Letters (2) dated October 5, 2020 from David J. Kuffler, Esq. to Alan S. Wachs, Esq.

43. Letters (2) dated October 6, 2020 from Thomas E. Geyer, Esq. to Alan S. Wachs, Esq.

44. Letters (2) dated October 5, 2020 from E. Joseph O'Neil, Esq. to Alan S. Wachs, Esq.

45. Letters (2) dated October 5, 2020 from Leland H. Jones IV, Esq. to Alan S. Wachs, Esq.

46. Letters (2) dated October 5, 2020 from Cara Tseng Duffield, Esq. to Alan S. Wachs, Esq.

47. Settlement Agreements (2), *In re: PatriotNational, Inc.*, United States Bankruptcy Court, District of Delaware, No. 18-10189

48. Mediator's Declaration, *In re: PatriotNational, Inc.*, United States Bankruptcy Court, District of Delaware, No. 18-10189

49. Order Approving Settlement, *In re: PatriotNational, Inc.*, United States Bankruptcy Court, District of Delaware, No. 18-10189

50. Letters (2) dated February 22, 2021 from Eric D. Madden, Esq. to Alan S. Wachs, Esq.

51. Trustee's Motion for Leave to file Verified Complaint and Sever Trustee's Claims to a Separate Action, *Peter Kravitz as Litigation Trustee of the PNI Litigation Trust v. Steven M. Mariano, et al.*, Court of Chancery, State of Delaware,

52. Verified Complaint and First Amended Complaint, *Peter Kravitz as Litigation Trustee of the PNI Litigation Trust v. Steven M. Mariano, et al.*, Court of Chancery, State of Delaware, No. 2019-0934

2

53. Complaint filed April 13, 2021 in 11th Judicial Circuit for Miami Dade County, Florida styled *PNI Litigation Trust, et al. v. National Union, et al.*

54. National Union Claim Notes

55. Argonaut Claim Notes

56. National Union underwriting file

57. RSUI underwriting file

58. Argonaut underwriting file