# EXHIBIT A

EXHIBIT

170

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 1:21-cv-21416-DPG-TORRES

PNI LITIGATION TRUST,
the duly authorized successor to
PATRIOT NATIONAL, INC.,

      Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
RSUI INDEMNITY COMPANY,
and ARGONAUT INSURANCE COMPANY,

      Defendants.

_____/

### REPORT OF EXPERT WITNESS ANTHONY V. ALFIERI

ANTHONY V. ALFIERI, pursuant to 28 U.S.C. § 1746, states under penalty of perjury

that the following is true and correct:

### I. PROFESSIONAL QUALIFICATIONS

1.      I am a Professor of Law, Dean's Distinguished Scholar, and the founding Director

of the Center for Ethics and Public Service[1] at the University of Miami School of Law where I

have taught legal ethics and professional responsibility, civil procedure, litigation and transactional

skills, law firm management, and legal malpractice since 1991. Prior to my academic appointment

at the University of Miami, I held clinical appointments at Marquette University, where I directed

---

[1] Founded in 1996, the Center for Ethics and Public Service is an interdisciplinary ethics education, experiential skills training, and community engagement program devoted to the values of ethical judgment, professional responsibility, and public service in law and society. It is the winner of numerous awards including the American Bar Association 1998 E. Smythe Gambrell Professionalism Award, the Florida Bar Seventh Annual 1999-2000 Professionalism Award, and the Miami-Dade County Commission on Ethics and Public Trust 2001 *Arete* Award for nonprofit of the year.

1

the clinical studies program, and New York Law School, where I served as the Managing Attorney of the Federal Litigation Clinic supervising a docket of federal and state administrative, district court, and appellate cases. Additionally, I recently served as a Visiting Scholar for a five-year term at the Dartmouth College Ethics Institute. *See* Ex. A.

2.      I earned an A.B. from Brown University, graduating magna cum laude in 1981 with concentration and senior thesis honors in Law and Society from the Center for Law and Liberal Education, and a J.D. from the Columbia University School of Law graduating in 1984 with Harlan Fiske Stone Scholar, Charles Evans Hughes Fellowship, and Jane Marks Murphy Prize honors. *See* Ex. A.

3.      I have written 92 published and forthcoming articles, essays, chapters, and editorials on ethics and professional responsibility, the law of lawyering, and the legal profession in leading law journals, newspapers, and book anthologies. This body of scholarship, together with my work on behalf of the Center for Ethics and Public Service, has been cited and downloaded more than 8,000 times in law journals, research networks, and the media (e.g., *Daily Business Review, Miami Herald, New York Times, Sun-Sentinel, Wall Street Journal, Washington Post,* ABC News Nightline, CNN, National Public Radio, and PBS). This scholarship has been cited by both trial and appellate courts.[2] I also have lectured widely on ethics and professional responsibility for bar associations, civic and faith-based groups, corporations, for-profit and nonprofit law firms, government agencies, and federal and state courts. *See* Ex. A.

4.      I am an elected member of the American Law Institute and a member of the New York Bar; a Law Faculty Affiliate Member of The Florida Bar; a former member of the Ethics,

---

[2] *See, e.g., Ne. Ohio Coal. for the Homeless v. Husted,* 837 F.3d 612, 641 n.10, 647 n.39 (6th Cir. 2016) (Keith, J.); *Bryan v. Mullin,* 335 F.3d 1207, 1244 (10th Cir. 2003) (Henry, J.); *G.M.M. ex rel. Hernandez-Adams v. Kimpson,* 116 F. Supp. 3d 126, 148 (E.D.N.Y. 2015) (Weinstein, J.).

Integrity & Accountability Task Force of the Miami-Dade County Commission on Ethics and Public Trust, the Florida Bar Standing Committee on Professionalism, the Florida Bar Task Force on the Attorney-Client Privilege, and the Executive Committees of the Association of American Law Schools Sections on Clinical Education and Professional Responsibility; a former advisor to the Miami-Dade County Alliance for Ethical Government; an elected fellow of the American Bar Foundation and an elected member of the Omicron Delta Kappa Honor Society and the Alpha Epsilon Lambda Graduate Honor Society at the University of Miami; a former Contributing Op-Ed Columnist for the *Miami Herald*; and the winner of the Florida Supreme Court 1999 Faculty Professionalism Award, the Association of American Law Schools Section on Clinical Education 2004-2005 Gary Bellow Scholar Award, the Association of American Law Schools Section on Clinical Legal Education 2007 William Pincus Award, the Association of American Law Schools Section on Pro Bono and Public Service Opportunities 2007 Father Robert Drinan Award, the University of Miami School of Law's 2011-2012 Public Interest Innovative Service Award, and the Association of American Law Schools Section on Professional Responsibility 2022 Fred C. Zacharias Memorial Prize for Scholarship in Professional Responsibility. *See* Ex. A.

5.      I have been accepted in federal and state courts as an expert witness in numerous matters of legal ethics, malpractice liability, and professional responsibility, and served as a legal ethics expert for the Discipline Counsel of the Florida Bar. During the previous 26 years, I have served as a testifying expert witness and a non-testifying expert consultant in many legal ethics and professional responsibility matters on behalf of for-profit and nonprofit law firms as well as governmental and non-governmental entities, and civic associations.[3] In that capacity, I have testified at trial and by deposition, provided advisory opinions, and submitted written reports,

---

[3] Compensation for the study and testimony in this case is calculated at the rate of $600 per hour.

affidavits, and declarations in federal and state courts, in arbitration proceedings (e.g., American Arbitration Association, Financial Industry Regulatory Authority, International Centre for Dispute Resolution, and Judicial Arbitration and Mediation Services (JAMS)), in the proceedings of federal, state, and local government tribunals (e.g., U.S. Department of the Treasury Office of the Comptroller of the Currency, Florida Bar Discipline Counsel, Coral Gables City Commission, City of Miami Planning, Zoning and Appeals Board, City of Miami Commission, City of South Miami Commission, and Miami-Dade County Commission on Ethics and Public Trust), and in other litigation and non-litigation matters. *See* Ex. B.[4]

      **6.**     I submit this Report upon personal knowledge of the law governing lawyers, the body of law regulating the fiduciary duties[5] and professional responsibilities of the legal profession and others in Florida under the Rules of Professional Conduct[6] and related laws, rules, and regulations,[7] and in states throughout the nation. Like the American Bar Association Model Rules of Professional Conduct,[8] the Florida Rules of Professional Conduct ("Florida Rules") "establish *standards of conduct* by lawyers."[9] *See* FLA. RULES OF PRO. CONDUCT pmbl. [6] (2022) (scope)

---

[4] Exhibit B contains a list of all other cases in which, during the previous four years, I have testified as an expert at trial or by deposition.

[5] *See* RESTATEMENT (THIRD) OF AGENCY § 1.01 (AM. LAW INST. 2006); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 (AM. LAW INST. 2000). Numerous Florida courts rely on the American Law Institute's Restatements for authority on lawyer standards of ethical and professional conduct. *See Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 368 (Fla. 1995); *Balaban v. Philip Morris USA Inc.*, 240 So. 3d 896, 899 (Fla. 4th Dist. Ct. App. 2018); *Canta v. Philip Morris USA, Inc.*, 245 So. 3d 813, 821 n. 8 (Fla. 3d Dist. Ct. App. 2017) ("Florida courts have regularly turned to the Restatement (Third) for guidance in cases involving the professional obligations of lawyers and law firms.").

[6] *See generally In re Amendments to the Rules Regulating The Fla. Bar*, 933 So. 2d 417, 419–20 (Fla. 2006), *as revised on denial of reh'g* (June 29, 2006) (adopting amendments to the Rules Regulating the Florida Bar, effective May 22, 2006).

[7] *See, e.g.*, Fed. Rules Bankr. Proc. 9019.

[8] *See, e.g.*, MODEL RULES OF PRO. CONDUCT (AM. BAR ASS'N 2021); AMERICAN BAR ASSOCIATION, A LEGISLATIVE HISTORY: THE DEVELOPMENT OF THE ABA MODEL RULES OF PROFESSIONAL CONDUCT, 1982-2013 (Art Garwin ed., 2013); AMERICAN BAR ASSOCIATION, ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT (9th ed. 2019).

[9] *See* FLA. RULES OF PRO. CONDUCT r. 4-5.5 cmt. [1] (2021) ("Regardless of whether the lawyer is admitted to practice law on a regular basis or is practicing as the result of an authorization granted by court rule or order or by the law, the *lawyer must comply with the standards of ethical and professional conduct set forth in these Rules Regulating the Florida Bar*.") (emphasis added).

4

(emphasis added); N.Y. RULES OF PRO. CONDUCT pmbl. [12] (2020) (scope); MODEL RULES OF PRO. CONDUCT pmbl. [20] (AM. BAR ASS'N 2021) (scope).[10]

## II. RETENTION IN THIS MATTER

7.      I have been engaged as an expert witness by the law firms Carlton Fields, P.A. on behalf of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"); Bailey Cavalieri LLC on behalf of RSUI Indemnity Company ("RSUI"); and Peabody & Arnold, LLP on behalf of Argonaut Insurance Company ("Argonaut"), to render an objective and truthful opinion regarding the purported *Coblentz* settlement agreements at issue in this proceeding, specifically whether those settlement agreements are the result of bad faith conduct.[11]

## III. DOCUMENTS REVIEWED IN FORMING MY OPINIONS

8.      In working on this matter and forming my opinions, I reviewed all or parts of the Defendants' Notice of Removal, National Union Fire Insurance Company of Pittsburgh, Pa.'s Answer and Affirmative Defenses, Defendant Argonaut Insurance Company's Answer to the Plaintiff's Complaint, RSUI Indemnity Company's Answer and Affirmative Defenses to the Complaint, Plaintiff's Complaint for Damages and Expert Report of Melanie E. Damian, and other papers. *See* Ex. C.

## IV. FACTS CONSIDERED

9.      For the purposes of my opinion, I assume the facts set forth below to be true.

---

[10] In Florida and elsewhere, "a lawyer's *violation* of a rule may be *evidence of a breach* of the applicable standard of conduct." FLA. RULES OF PRO. CONDUCT pmbl. [6] (2022) (scope) (emphasis added); MODEL RULES OF PRO. CONDUCT pmbl. [20] (AM. BAR ASS'N 2021) (scope); *Fed. Deposit Ins. Corp. v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, No. 8:11-CV-2831-T-33MAP, 2013 WL 4402968, at *10 (M.D. Fla. Aug. 15, 2013) ("[T]he Rules of Professional Conduct do establish a baseline standard of care, which is applicable to all attorneys."); *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 52(2)(c) (AM. LAW INST. 2000).

[11] *See* National Union Fire Insurance Company of Pittsburgh, Pa.'s Answer and Affirmative Defenses 16-17; Defendant Argonaut Insurance Company's Answer to the Plaintiff's Complaint 12-13; RSUI Indemnity Company's Answer and Affirmative Defenses to the Complaint at 23-24.

**a.** Both the 2016 and 2017 National Union Policies, to which the RSUI and Argonaut Policies follow form, contained a Defense and Settlement provision for Claims and Pre-Claims Inquiries governing Claims Participation and Cooperation. *See* D.E. 1-2, at p. 39 of 873; D.E. 1-2, at p. 139 of 873; D.E. 1-2, at p. 149 of 873; Kravitz Dep., Ex. 63. The provision provided, in relevant part: "The *Insurer shall have the right*, but not the obligation, *to fully and effectively associate with each and every Organization and Insured Person in the defense* and prosecution *of any Claim or Pre-Claim Inquiry that involves, or appears reasonably likely to involve the Insurer, including, but not limited to, negotiating a settlement. Each and every Organization and Insured Person shall give the Insurer full cooperation and such information as it may reasonably require.* . . . The *Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs or Pre-Claim Inquiry Costs, without the prior written consent of the Insurer.* Such consent shall not be unreasonably withheld." *Id.* (emphasis added).

**b.** In July 2018, the Litigation Trust (the "Trust") appointed Peter Kravitz as the Litigation Trustee (the "Trustee"). *See* Madden Dep. 23:8-11.

**c.** In mid to late 2018, the Trust retained Eric Madden ("Madden") of Reed Collins & Tsai LLP as counsel for the Trust. *See* Madden Dep. 12:6–23; D.E. 1-2, p. 684 of 783.

**d.** With respect to the Trustee Lawsuit, three *Coblentz* Directors (Terry Coleman, Ernst Csiszar, and Glenn Hibler) retained Bradley Bondi ("Bondi") of Cahill Gordon & Reindel LLP and two *Coblentz* Directors (Michael Purcell and Jeffrey Rohr) retained Arthur Aufses ("Aufses") of Kramer Levin as insurer-funded defense counsel paid under the 2016 Policies. *See* Csiszar Dep. 19:1–6, 20:6–15; Purcell Dep. 12:6–13:4.

6

e.  On September 9, 2019, two months prior to the filing of the Trustee Lawsuit, Bondi e-mailed Madden stating that "the directors are moving expeditiously toward a coverage action." *See* PNI Litigation Trust 0160162–0160163.

f.  In September 2019, Madden engaged in discussions with Bondi and Aufses regarding the best potential venue for a coverage action by the *Coblentz* Directors and others against the 2017 Insurers (National Union, RSUI, Argonaut, et al.). *See* PNI Litigation Trust 0160432–0160438. Madden engaged in similar discussions with Alan Wachs ("Wachs") of Smith, Gambrell & Russell, LLP, including a discussion of arbitration. *Id.*; Madden Dep. 71:22–75:25.

g.  On October 15, 2019, the Trust oversight committee agreed to the retention of Wachs as Trust-funded coverage counsel for the *Coblentz* Directors and certain of the non-*Coblentz* Directors. *See* PNI Litigation Trust 0125286; SGR 012428.

h.  On January 8, 2020, Madden asked Wachs to review a draft settlement agreement with four non-*Coblentz* Directors for "coverage pitfalls" under the 2017 Policies. *See* PNI Litigation Trust 0125637; PNI Litigation Trust 0125656–0125673; Wachs Dep. 51:17–54:18.

i.  On or about January 16, 2020, Wachs confirmed the terms of Smith Gambrell's representation of nine clients, including the five *Coblentz* Directors and four non-*Coblentz* directors. SGR 012424–012433. On January 23, 2020, Madden asked Wachs for his "thought[s] on coverage issues relating to the existing [Trust] complaint" prior to the filing of the Trust's First Amended Complaint. *See* PNI Litigation Trust 0125875; Wachs Dep. 73:3–18; Madden Dep. 142:1–143:1. On the same day, Madden also asked Wachs again to review a draft settlement agreement between the Trust and four non-*Coblentz* Directors for "coverage pitfalls." *See* PNI Litigation Trust 0161543.

7

j.  In March 2020, Madden and Wachs began substantive discussions regarding a potential *Coblentz* Agreement between the Trust and the *Coblentz* Directors. *See* SGR 009827; PNI Litigation Trust 0126454.

k.  On May 8, 2020, the Trust and Wachs finalized a fee agreement for the Trust to engage Smith Gambrell as coverage counsel for the *Coblentz* Directors and other non-*Coblentz* Directors. The fee agreement provided for the Trust to pay Smith Gambrell on a monthly basis at a 25% reduced hourly rate and also to pay Smith Gambrell a bonus equal to the amount of aggregate fees already paid if the Trust recovers more than $1 million from the 2017 Policies ("Smith Gambrell Fee Bonus Agreement"). *See* PNI Litigation Trust 0127159–0127162. *Neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the Smith Gambrell Fee Bonus Agreement to the 2016 Insurers or the 2017 Insurers in May 2020.*

l.  In May and June 2020, the Trustee, *Coblentz* Directors, Madden, Wachs, Bondi, and Aufses negotiated and drafted a Non-Objection Agreement with respect to the Trust, the 2016 Directors, and the 2016 Policies as well as the form of a *Coblentz* Agreement with respect to the 2017 Policies and the 2017 Insurers, relegating the settlement amount to be determined by mediation. *See* PNI Litigation Trust 0164290–0164312. *Neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the Non-Objection Agreement or the Coblentz Agreement to the 2016 Insurers or the 2017 Insurers in May and June 2020.*

m.  On May 13, 2020, Wachs sent the initial draft *Coblentz* Agreements to the Trust. *See* PNI Litigation Trust 0127062–0127077. *Neither the Trustee, nor Madden, nor Wachs, nor*

*Bondi, nor Aufses disclosed the draft Coblentz Agreements to the 2016 Insurers or the 2017 Insurers in May 2020.*

n. On May 18, 2020, Wachs asked Madden to send him a draft of the Trust's forthcoming demand letter specific to the remaining non-*Coblentz* Directors for the remaining limits of the 2016 Policies. *See* PNI Litigation Trust 0164346, 0127132. *Neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the Coblentz demand letter draft to the 2016 Insurers or the 2017 Insurers in May 2020.*

o. In May 2020, the Trustee and the *Coblentz* Directors exchanged several drafts of the Non-Objection Agreement. *See* PNI Litigation Trust 0127286–0127308. *Neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the Non-Objection Agreement to the 2016 Insurers or the 2017 Insurers in May 2020.*

p. On June 2, 2020, the Trust made a demand on the remaining non-*Coblentz* Directors named as defendant parties in the Trustee Lawsuit for the remaining limits of the 2016 Policies. *See* ARGO000651–000654.

q. On June 18, 2020, the Trust and the *Coblentz* Directors executed the Non-Objection Agreement, which attached the draft of the form *Coblentz* Agreements. *See* PNI Litigation Trust 0128594–128623. *Neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the Non-Objection Agreement or the form Coblentz Agreements to the 2016 Insurers or the 2017 Insurers in June 2020.*

r. On June 18, 2020, Joseph Smick ("Smick") of Skarzynski Marick & Black LLP, counsel for the 2016 Insurer Everest, e-mailed Madden and David Kuffler ("Kuffler") of Kaufman Dolowich Voluck, LLP, counsel for the 2016 and 2017 Insurers National Union and Illinois National, to inquire: "Would the Litigation Trust *agree to settle and release*

*all* remaining insureds (defendants, including what you defined to be the 2016 Directors and 2017 Directors) as part of a global settlement of all pending matters in exchange for the balance of the 2016 insurance policy limits?" *See* PNI Litigation Trust 0128498– 128501 (emphasis in original). Smick added: "the answers of your client may assist us in achieving either a global or further partial resolution." *Id.* Later that day, Madden replied that the Trustee's answer to Smick's questions "is 'no.'" *Id. Neither the Trustee nor Madden disclosed the Non-Objection Agreement, the draft Coblentz Agreements, or the Smith Gambrell Fee Bonus Agreement to Smick, Kuffler, the 2016 Insurers, or the 2017 Insurers in June 2020.*

s. On June 23, 2020, Wachs sent a letter to the 2016 Insurers stating that the *Coblentz* Directors did not object to the exhaustion of the 2016 Policies. *See* PNI Litigation Trust 0128644–128646. *Neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the Non-Objection Agreement, the draft Coblentz Agreements, or the Smith Gambrell Fee Bonus Agreement to the 2016 Insurers or the 2017 Insurers in June 2020.*

t. In June 2020, Wachs disclosed to Madden communications labeled confidential between and among Smick, Kuffler, the *Coblentz* Directors, and other insureds related to the Trust's June 2, 2020 settlement demand to the non-*Coblentz* Directors. *See* PNI Litigation Trust 0128943–0128947. *Neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses informed Smick or Kuffler of Wachs's disclosure of communications labeled confidential to Madden.*

u. On September 24, 2020, in accordance with the Non-Objection Agreement, the Trust made a demand on the *Coblentz* Directors for $70 million, the limits of the 2017 Policies. *See* PNI Litigation 0000015–0000019.

10

**v.** On September 25, 2020, in accordance with the Non-Objection Agreement, Wachs tendered the $70 million demand to the 2017 Insurers. *See* PNI Litigation 0000015–0000019.

**w.** On or about October 5, 2020, National Union and the other 2017 Insurers declined to provide coverage under the 2017 Policies stating that the Trustee Lawsuit was properly handled under the 2016 Policies. *See* PNI Litigation Trust 0171512–0171520.

**x.** On October 28, 2020, in preparation for mediation before Robert Meyer, Madden, Bondi, and Aufses submitted statements on behalf of the Trustee and the two groups of *Coblentz* Directors. *See* PNI Litigation Trust 0003303–0003309, 0003094–3190, 0003191–0003204. *Neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the Smith Gambrell Fee Bonus Agreement in their mediation statements for the November 2020 mediation.*

**y.** On November 2, 2020, the Trustee, Madden, Wachs, Bondi, Aufses, the *Coblentz* Directors, and others participated in the mediation. *Neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the Smith Gambrell Fee Bonus Agreement to Meyer at the mediation on November 2, 2020.*

**z.** On November 18, 2020, Madden, Wachs, Bondi, Aufses, and other associated lawyers "discussed" Meyer's previous Declaration, dated October 28, 2019, in the Patriot National, Inc. Securities Litigation. *See* PNI Litigation Trust 0173974–0173980. The 2019 Meyer Declaration used the terms "arm's-length," "fair," and "reasonable" to describe the 2019 mediation and settlement in that matter. *Id.*

**aa.** On November 23, 2020, Madden submitted a "proposed declaration" to Meyer "jointly drafted" by Bondi, Aufses, Wachs, and Madden. The Madden-Bondi-Aufses-Wachs

"proposed declaration" added the terms "hard-fought," "extensive," "contentious," and "good-faith" to the prior 2019 Meyer Declaration to describe the subsequent 2020 mediation and settlement in this case. *See* PNI Litigation Trust 0174005–0174010 (emphasis added). *Neither the Trustee, nor Madden, nor Bondi, nor Aufses, nor Wachs disclosed the Smith Gambrell Fee Bonus Agreement in the "proposed declaration."*

bb. On November 23, 2020, Meyer executed the Madden-Bondi-Aufses-Wachs "proposed declaration." *See* PNI Litigation Trust 0174011–0174017. *The 2020 Meyer Declaration makes no mention of the Smith Gambrell Fee Bonus Agreement.*

cc. On December 8, 2020, the *Coblentz* Directors executed two *Coblentz* Agreements for a total of $30 million in settlement amounts. *See* DE 1-2, pp. 836-864 of 873. *The Coblentz Agreements make no mention of the Smith Gambrell Fee Bonus Agreement.*

dd. On December 18, 2020, the Trustee filed its Rule 9019 motion to approve the *Coblentz* settlements in the U.S. Bankruptcy Court for the District of Delaware accompanied by the Meyer Declaration. *The Trustee's Rule 9019 Motion makes no mention of the Smith Gambrell Fee Bonus Agreement.*

## V. BRIEF SUMMARY OF OPINIONS

10. In summary, based on consideration of the above-mentioned facts, in my opinion: the purported *Coblentz* settlement agreements between the Litigation Trustee for the PNI Litigation Trust and five former directors and officers of Patriot National were the result of bad faith conduct. I hold these opinions to a reasonable degree of professional certainty.

12

# VI. STATEMENT OF OPINIONS AND REASONS

**11. The Purported *Coblentz* Settlement Agreements Between the Litigation Trustee for the PNI Litigation Trust and Five Former Directors and Officers of Patriot National Were the Result of Bad Faith Conduct.**

The purported *Coblentz* settlement agreements between the Litigation Trustee for the PNI Litigation Trust and five former directors and officers of Patriot National were the result of bad faith conduct. The actions of the Plaintiff and others demonstrate that there was a lack of truthfulness, fairness, cooperation, and honest dealing during all relevant time periods.

## A. Plaintiff's Actions Demonstrate Bad Faith Conduct.

Plaintiff bears the initial burden of going forward with the production of evidence sufficient to make a prima facie showing that the purported *Coblentz* settlement agreements stand untainted by bad faith. *See Chapman v. ACE Am. Ins. Co.*, No. 8:16-CV-2111-T-36MAP, 2018 WL 8459518, at *6 (M.D. Fla. June 21, 2018), *aff'd*, 774 F. App'x 556 (11th Cir. 2019) (citations omitted). That required showing is fact-intensive. *Id.* Failing this requirement renders the settlements unenforceable. *Id.* at *9–10 (citing *Travelers Indem. Co. of Connecticut v. Attorney's Title Ins. Fund, Inc.*, 194 F. Supp. 3d 1224, 1237 (M.D. Fla. 2016)). *See also Jimenez v. Gov't Emps. Ins. Co.*, 651 Fed. Appx. 850, 853–54 (11th Cir. 2016).

Contrary to the record, Plaintiff argues that "the Trust and the 2017 Patriot Directors engaged in arms-length, good-faith, and contentious negotiations to settle their dispute[,]" claiming "lengthy and protracted negotiations include[ing] a full-day mediation with Robert Meyer, a nationally respected mediator with JAMS." Pl.'s Complaint for Damages 12, 13, 18 (Apr. 13, 2021). Paradoxically, Plaintiff insists that "[t]he mediator attested to the arms-length, good-faith nature of the settlement negotiations in a declaration filed with the Bankruptcy Court" while at the same time admitting that the declaration itself was "jointly drafted" by Bondi, Aufses,

13

Wachs, and Madden *and* while acknowledging that they, rather than Meyer, engrafted the terms "hard-fought," "extensive," "contentious," and "good-faith" into the text of the declaration.

Plaintiff's expert witness, Melanie Damian, twice reiterates this argument contending that "the process in reaching the settlements through extended arms-length negotiations with an experienced mediator, and with representation by experienced lead counsel, was free of bad faith, fraud, collusion, and that the process reflected significant efforts to minimize liability." Damian Report at 2, 10-11, 14. Rotely reciting alleged "indicia of good faith" — "a full-day mediation," "detailed mediation statements," "'extensive arms-length, good-faith, and even contentious negotiations,'" "experienced lead counsel," "'hard-fought negotiations,'" and a Bankruptcy Court finding of "'good faith'" — Plaintiff's expert witness overlooks and omits numerous indicators of bad faith conduct by the Trustee and others occurring prior to, during, and after the mediation. *Id.* at 10-11, 14.

Doubly vexing, Plaintiff's expert witness erroneously relies on two federal appellate cases that expressly affirm district court determinations of bad faith based on evidence of improper negotiation conduct, as here. *See Jimenez v. Gov't Emps. Ins. Co.*, 651 F. App'x 850, 851 (11th Cir. 2016) (concluding that there was sufficient evidence for a jury to find both that the *Coblentz* settlement was not reasonable and that the settlement was not made in good faith); *Sidman v. Travelers Cas. & Sur.*, 841 F.3d 1197, 1201–07 (11th Cir. 2016) (affirming district court determination that settlement agreement was negotiated in bad faith). For *Coblentz* purposes, the recent decision of the U.S. Court of Appeals for the Eleventh Circuit in *Sidman v. Travelers Cas. & Sur.* is noteworthy in defining the term *collusion* to "include a 'secret agreement,'" or "secret cooperation for a fraudulent or deceitful purpose[.]'" *Id.* at 1206 (citation omitted). Against the backdrop of this case law, the actions of the Plaintiff and others demonstrate that there was a lack

14

of truthfulness, fairness, cooperation, and honest dealing during all relevant time periods in this matter.

**B. Plaintiff's Failure to Address Multiple Indicators of Bad Faith Conduct.**

Plaintiff and Plaintiff's expert witness compound their errors by failing to address multiple indicators of bad faith conduct exhibited by the Trustee and others occurring prior to, during, and after the mediation. Three key indicators of bad faith conduct pertain to the misrepresentation and nondisclosure of the Smith Gambrell Fee Bonus Agreement, the Non-Objection Agreement, and the *Coblentz* Agreements.

Consider the repeated nondisclosure of the Smith Gambrell Fee Bonus Agreement by the Trustee and others. In May and June 2020, for example, neither the Trustee, nor Madden, nor Wachs, nor any other counsel involved in this action disclosed the Smith Gambrell Fee Bonus Agreement to the 2016 Insurers or the 2017 Insurers. Likewise, in June 2020, neither the Trustee nor Madden disclosed the Smith Gambrell Fee Bonus Agreement to Smick or Kuffler. Further, in November 2020, neither Madden, nor Bondi, nor Aufses disclosed the Smith Gambrell Fee Bonus Agreement in their mediation statements. At the mediation itself on November 2, 2020, neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the Smith Gambrell Fee Bonus Agreement to Meyer. Even in their "proposed declaration," neither the Trustee, nor Madden, nor Bondi, nor Aufses, nor Wachs disclosed the Smith Gambrell Fee Bonus Agreement to Meyer. As a consequence of this continuing nondisclosure by the Trustee and others, there is no mention of the Smith Gambrell Fee Bonus Agreement in the 2020 Meyer Declaration, the *Coblentz* Agreements, the Trustee's Rule 9019 Motion, or the findings of the Bankruptcy Court.

Next consider the nondisclosure and misrepresentation of the Non-Objection Agreement by the Trustee and others. In May and June 2020, for example, neither the Trustee, nor Madden,

nor Wachs, nor Bondi, nor Aufses disclosed the Non-Objection Agreement to the 2016 Insurers or the 2017 Insurers. Similarly, in June 2020, neither the Trustee nor Madden disclosed the Non-Objection Agreement to Smick or Kuffler. Recall that on June 18, 2020, Smick e-mailed Madden and Kuffler to inquire: "Would the Litigation Trust *agree to settle and release all remaining insureds (defendants, including what you defined to be the 2016 Directors and 2017 Directors) as part of a global settlement of all pending matters in exchange for the balance of the 2016 insurance policy limits?*" *See* PNI Litigation Trust 0128498–128501 (emphasis added). Smick explained: "the answers of your client may assist us in achieving either a global or further partial resolution." *Id.* Instead of truthfully disclosing the Non-Objection Agreement, the draft *Coblentz* Agreements, and the Smith Gambrell Fee Bonus Agreement to Smick and Kuffler, Madden misleadingly replied that the Trustee's answer to Smick "is 'no,'" leaving the 2016 Insurers and the 2017 Insurers without material information concerning the secret negotiations ongoing between and among the Trustee, the *Coblentz* Directors, and others. *Id.*

Additionally, consider the nondisclosure of the *Coblentz* Agreements by the Trustee, the *Coblentz* Directors, and others. In May and June 2020, for example, neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the draft *Coblentz* Agreements or the *Coblentz* demand letter draft to the 2016 Insurers or the 2017 Insurers. In the same way, in June 2020, neither the Trustee nor Madden disclosed the draft *Coblentz* Agreements to Smick or Kuffler. In fact, neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses informed Smick or Kuffler of Wachs's prejudicial disclosure of communications labeled confidential to Madden.

By failing to address the key indicators of bad faith conduct pertaining to the misrepresentation and nondisclosure of the Smith Gambrell Fee Bonus Agreement, the Non-

16

Objection Agreement, and the *Coblentz* Agreements prior to, during, and after the November 2020 mediation, Plaintiff's expert witness overlooks the lack of truthfulness, fairness, cooperation, and honest dealing demonstrated by the actions of the Plaintiff and others throughout all relevant time periods here.

### C. Plaintiff's Failure to Discharge Its Duties of Truthfulness, Fairness, Cooperation, and Honest Dealing.

The record of bad faith conduct by the Trustee, the *Coblentz* Directors, and others surrounding the Smith Gambrell Fee Bonus Agreement, the Non-Objection Agreement, and the *Coblentz* Agreements raises troubling concerns about misrepresentation, truthfulness, procedural unfairness, cooperation, and honest dealing in this case.

#### 1. Misrepresentation of Facts

By now, it is well-settled that "[t]he law of misrepresentation applies to lawyers." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 98 cmt. c (AM. LAW INST. 2000) (citations omitted). As Madden's e-mail reply to Smick and Kuffler on June 18, 2020 illustrates, "[a] knowing misrepresentation may relate to a proposition of fact or law." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 98 cmt. c (AM. LAW INST. 2000). In this instance, the proposition of fact pertained to the existence of the Smith Gambrell Fee Bonus Agreement, the Non-Objection Agreement, and the *Coblentz* Agreements.

According to the American Law Institute, "[a] misrepresentation can occur through direct statement or through affirmation of a misrepresentation of another, as when a lawyer knowingly affirms a client's false or misleading statement." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 98 cmt. c (AM. LAW INST. 2000). Here, Madden's e-mail reply to Smick and Kuffler on June 18, 2020 illustrates the example of a lawyer knowingly affirming a client's misleading statement bound up in the calculated nondisclosure of the Smith Gambrell Fee Bonus Agreement,

17

the Non-Objection Agreement, and the *Coblentz* Agreements. In addition, the American Law Institute explains, "[a]statement can also be false because only partially true." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 98 cmt. c (AM. LAW INST. 2000). Here also, Madden's e-mail reply to Smick and Kuffler on June 18, 2020 illustrates a statement that can be construed as false because it is only partially true with respect to the extant negotiation of the Smith Gambrell Fee Bonus Agreement, the Non-Objection Agreement, and the *Coblentz* Agreements.

In this respect, the American Law Institute adds: "If constrained from conveying specific information to a nonclient, for example due to confidentiality obligations to the lawyer's client, the lawyer must either make no representation or make a representation that is not false."[12] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 98 cmt. c (AM. LAW INST. 2000). Yet, instead of making no material representation in his e-mail reply to Smick and Kuffler on June 18, 2020, Madden made a representation that was only partially true, that is a representation not in accord with the facts of the plainly existing Smith Gambrell Fee Bonus Agreement, the Non-Objection Agreement, and the *Coblentz* Agreements.[13] *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 98 rep. note cmt. c (AM. LAW INST. 2000) (noting that the "Restatement Second, Torts § 525 defines fraudulent misrepresentation, sometimes called deceit, as 'a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it'") (citations omitted).

---

[12] *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 98 cmt. c (AM. LAW INST. 2000) (noting that "for disciplinary purposes, reliance by and injury to another person are not required").
[13] When communicating on behalf of a client with a nonclient, for example an insurer having the status of a nonclient third party payor of the lawyer's fees as here, a lawyer "may not: (1) knowingly make a false statement of material fact or law to the nonclient, (2) make other statements prohibited by law; or (3) fail to make a disclosure of information required by law." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 98 (AM. LAW INST. 2000).

### 2. Lack of Truthfulness in Statements to Others

Rule 4.1 of the American Bar Association ("ABA") Model Rules of Professional Conduct governs lawyer truthfulness in statements to others. The text of the rule prohibits a lawyer, in the course of representing a client, from knowingly making a false statement of material fact or law to a third person; or failing to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6 regulating confidentiality. MODEL RULES OF PRO. CONDUCT r. 4.1(a), (b) (AM. BAR ASS'N 2021). *See also* MODEL RULES OF PRO. CONDUCT r. 8.4 (c) (AM. BAR ASS'N 2021) ("It is professional misconduct for a lawyer to . . . engage in conduct involving *dishonesty, fraud, deceit or misrepresentation*[.]") (emphasis added).

In explicating a lawyer's duty "to be truthful when dealing with others on a client's behalf," the Comment accompanying Rule 4.1 points out that "[m]isrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements." MODEL RULES OF PRO. CONDUCT r. 4.1 cmt. [1] (AM. BAR ASS'N 2021). *See also* MODEL RULES OF PRO. CONDUCT r. 4.1 cmt. [2] (AM. BAR ASS'N 2021) ("This Rule refers to statements of fact. Whether a particular statement should be regarded as one of fact can depend on the circumstances."); ABA/BLAW LAW. MAN. ON PROF. CONDUCT 71:201.60 (ABA/BLAW 2022) ("A statement is material if it could have significantly influenced the hearer's decision-making process — whether or not it did.").

Again, here it appears that Madden, acting at the direction of the Trustee, in his e-mail reply to Smick and Kuffler on June 18, 2020 knowingly made a *misrepresentation* (a partially true but misleading statement or omission that was the equivalent of an affirmative false statement) of a *material* fact (i.e., the fact that the Smith Gambrell Fee Bonus Agreement, the Non-Objection

Agreement, and the *Coblentz* Agreements were already in existence) to two third persons (Smick and Kuffler), thereby misleading them into believing that the Smith Gambrell Fee Bonus Agreement, the Non-Objection Agreement, and the *Coblentz* Agreements were *not* in existence.

In the same way, on June 23, 2020, Wachs, acting as Trust-funded coverage counsel for the five *Coblentz* Directors and four non-*Coblentz* Directors, knowingly made a *misrepresentation* (again, a partially true but misleading statement or omission that was the equivalent of an affirmative false statement) of a *material* fact (i.e., the fact that the Trust and the *Coblentz* Directors had already executed the Non-Objection Agreement, which attached the draft of the form *Coblentz* Agreements, on June 18, 2020) to third persons (the 2016 Insurers) in a letter stating *only* that the *Coblentz* Directors did not object to the exhaustion of the 2016 Policies, thus misleading the 2016 Insurers into believing that the Non-Objection Agreement and the draft form *Coblentz* Agreements had *not* already been executed.

### 3.  Lack of Procedural Fairness

Procedural fairness requirements stem from several sources in this case, including the ABA Model Rules of Professional Conduct, the JAMS Mediators Ethics Guidelines, and the Model Standards of Conduct for Mediators.

ABA Model Rule 2.4 governs the conduct of a lawyer serving as a third-party neutral, in this case Meyer. *See* MODEL RULES OF PRO. CONDUCT r. 2.4(a) (AM. BAR ASS'N 2021). According to the Comment accompanying Rule 2.4, a third-party lawyer-neutral "may also be subject to various codes of ethics, such as the Code of Ethics for Arbitrators in Commercial Disputes prepared by a joint committee of the American Bar Association and the American Arbitration Association or the Model Standards of Conduct for Mediators jointly prepared by the American

Bar Association, the American Arbitration Association and the Society of Professionals in Dispute Resolution." *See* MODEL RULES OF PRO. CONDUCT r. 2.4 cmt. [2] (AM. BAR ASS'N 2021).

Furthermore, according to the Comment, lawyers who represent clients in alternative dispute-resolution processes, here for example Madden, Wachs, Bondi, and Aufses, are governed by the Rules of Professional Conduct. Their lawyer-based duty of candor toward both the third-party neutral (Meyer) and other parties is guided by ABA Model Rule 4.1 governing lawyer truthfulness in statements to others. Recall that Rule 4.1 prohibits a lawyer, in the course of representing a client, from knowingly making a false statement of material fact to a third person. MODEL RULES OF PRO. CONDUCT r. 4.1(a) (AM. BAR ASS'N 2021). Recall also that under Rule 4.1 "[m]isrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements." MODEL RULES OF PRO. CONDUCT r. 4.1 cmt. [1] (AM. BAR ASS'N 2021). Despite the text and commentary guiding enforcement of Rule 4.1, neither the Trustee, nor Madden, nor Wachs, nor Bondi, nor Aufses disclosed the Smith Gambrell Fee Bonus Agreement in their mediation statements to Meyer for the November 2020 mediation. Their deliberate omission runs afoul of Rule 4.1 and its core command of truthfulness.

Moreover, their omission impaired the procedural fairness of the Meyer November 2020 mediation. *See* JAMS Mediators Ethics Guidelines V (2022) ("A mediator should endeavor to provide a procedurally fair process . . . ."); American Arbitration Association, American Bar Association, & Association for Conflict Resolution, MODEL STANDARDS OF CONDUCT FOR MEDIATORS VI (A) (2005) ("A mediator shall conduct a mediation in . . . a manner that promotes . . . procedural fairness . . . ."). Indeed, their omission deprived Meyer of a full and fair opportunity to assess all material facts, for example the Smith Gambrell Fee Bonus Agreement and the Wachs-Smith Gambrell conflict-of-interest risk associated with it, and to consider withdrawal from the

21

mediation.[14] *See* JAMS Mediators Ethics Guidelines VII (2022) ("[A] mediator should be aware of the potential need to withdraw from the case if procedural or substantive unfairness appears to have undermined the integrity of the mediation process."). *See also* ABA/BLAW LAW. MAN. ON PROF. CONDUCT 51:1601.30.80.20 (ABA/BLAW 2022) ("The mediator must not knowingly misrepresent any material fact or circumstance."); CPR-Georgetown Comm'n on Ethics & Standards in ADR, *Model Rule for the Lawyer as Third-Party Neutral*, 13 WORLD ARB. & MEDIATION REP. 331 (2002) ("[T]he lawyer must attempt to conduct the process with fairness to all parties and to prevent misconduct that would invalidate any settlement.").

### 4. Lack of Cooperation, Information, and Honest Dealing.

The bad faith conduct demonstrated in this case is underscored by the lack of full cooperation, required information, and honest dealing by the Plaintiff and others, including certain of the insured directors and officers. Both the 2016 and 2017 National Union Policies, to which the RSUI and Argonaut Policies follow form, contained a Defense and Settlement provision for Claims and Pre-Claims Inquiries governing Claims Participation and Cooperation. *See* D.E. 1-2, at 48. The provision provided, in relevant part: "The *Insurer shall have the right*, but not the obligation, *to fully and effectively associate with each and every Organization and Insured Person in the defense* and prosecution *of any Claim or Pre-Claim Inquiry that involves, or appears reasonably likely to involve, the Insurer, including, but not limited to, negotiating a settlement. Each and every Organization and Insured Person shall give the Insurer full cooperation and such information as it may reasonably require.* . . . The *Insureds shall not admit or assume any liability,*

---

[14] *See* American Arbitration Association, American Bar Association, & Association for Conflict Resolution, MODEL STANDARDS OF CONDUCT FOR MEDIATORS VI (C) (2005) ("If a mediator believes that participant conduct, including that of the mediator, jeopardizes conducting a mediation consistent with these Standards, a mediator shall take appropriate steps including, if necessary, postponing, withdrawing from or terminating the mediation.").

*enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs or Pre-Claim Inquiry Costs, without the prior written consent of the Insurer." Id.* (emphasis added).

Here, the five *Coblentz* Directors' failure to cooperate, failure to disclose material information, and failure to engage in honest negotiation is manifested by their nondisclosure, and the nondisclosure of their counsel, of the Smith Gambrell Fee Bonus Agreement, the Non-Objection Agreement, and the *Coblentz* Agreements. As in *Travelers Indem. Co. of Connecticut v. Attorney's Title Ins. Fund, Inc.*, 194 F. Supp. 3d 1224, 1232–34 (M.D. Fla. 2016), *aff'd*, 733 F. App'x 524 (11th Cir. 2018), here the record is replete with evidence of extensive discussions and negotiations between and among the Trustee, the *Coblentz* Directors, and others "to figure out the best way to secure coverage," all without the knowledge or consent of the 2016 Insurers and the 2017 Insurers and in spite of one or more good faith inquiries regarding settlement negotiations. *See Travelers Indem. Co. of Connecticut v. Attorney's Title Ins. Fund, Inc.*, 194 F. Supp. 3d 1224, 1232–34 (M.D. Fla. 2016), *aff'd*, 733 F. App'x 524 (11th Cir. 2018). This material failure to cooperate, failure to provide full disclosure of information, and failure to facilitate a resolution substantially prejudiced the instant Defendants. In these fundamental respects, the actions of the Plaintiff and others demonstrate that there was a lack of truthfulness, fairness, cooperation, and honest dealing during all relevant time periods here.

## VII.   CONCLUSIONS

12.    For the reasons stated above, in my opinion: the purported *Coblentz* settlement agreements between the Litigation Trustee for the PNI Litigation Trust and five former directors and officers of Patriot National were the result of bad faith conduct. I hold these opinions to a reasonable degree of professional certainty.

Insofar as fact investigation and discovery are ongoing in this matter, I will continue to review discovery and other materials relevant to this opinion, including reports and depositions of other experts. Therefore, this Report is subject to change as additional information becomes available or receives clarification in the future.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 13, 2022

Coral Gables, Florida

Anthony V. Alfieri

# EXHIBIT A

# ANTHONY V. ALFIERI

1346 Alegriano Avenue
Coral Gables, Florida 33146
Tel. 305-661-9789
Mobile: 305-778-2193
E-Mail: avalfieri@gmail.com

University of Miami School of Law
P.O. Box 248087, 1311 Miller Drive
Coral Gables, Florida 33146
Tel. 305-284-2735; Fax 305-284-1588
E-Mail: aalfieri@law.miami.edu

## EDUCATION

**COLUMBIA UNIVERSITY SCHOOL OF LAW**
J.D., 1984

| | |
|---|---|
| HONORS | Jane Marks Murphy Prize, 1984 |
| | Harlan Fiske Stone Scholar, 1983–1984 |
| FELLOWSHIPS | Charles Evans Hughes Fellowship, 1983 |
| | Law Students Civil Rights Research Council Fellowship, 1983 |
| | Public Interest Student Funded Fellowship, 1982 |
| ACTIVITIES | Teaching Assistant, Child Advocacy Clinic, 1983–1984 |
| | NAACP LDF Clinical Seminar in Race and Poverty Law, 1983–1984 |
| | Child Advocacy Clinic, 1982–1983 |

**BROWN UNIVERSITY**
A.B., Law and Society, Center for Law and Liberal Education, 1981

| | |
|---|---|
| HONORS | Magna Cum Laude |
| | Concentration and Senior Thesis Honors |
| ACTIVITIES | Teaching Assistant, Philosophy Department, 1979–1980 |
| | Peer Counselor, Curricular Resource Center, 1979–1981 |

## ACADEMIC APPOINTMENTS

| | |
|---|---|
| UNIVERSITY OF MIAMI SCHOOL OF LAW | **DEAN'S DISTINGUISHED SCHOLAR, 2010–2022** |
| | **PROFESSOR OF LAW, 1996** |
| | **ASSOCIATE PROFESSOR OF LAW, 1992–1995** |
| | **VISITING ASSOCIATE PROFESSOR OF LAW, 1991–1992** |
| | **FOUNDER & DIRECTOR, CENTER FOR ETHICS & PUBLIC SERVICE, 1996** |
| | **CLINICS, 2004–2019**: Children & Youth Law; Community Economic Development & Design; Health & Elder Law; Environmental Justice. |
| | **PROGRAMS, 1996–2022**: *Black Church Program; Legal Prof. Program; Community Equity Lab (Economic Dev., Housing, & Health Disparities)*; Joint College of Arts & Sciences Program on Law, Public Policy, & Ethics; Prof'l Responsibility & Ethics Program; Street Law. |
| | **COURSES**: *Civil Procedure*; Social Enterprise; *Prof'l Responsibility*; Public Interest Law & Ethics; *Law Firm Management; Legal Malpractice*. |
| | **COLLEGE OF ARTS & SCIENCES**: Law, Public Policy, & Ethics, 2001–2003 |
| SCHOOL OF MEDICINE | **PROFESSOR OF PUBLIC HEALTH SCIENCES, 2021** |
| | DEP'T OF PUBLIC HEALTH SCIENCES, DIV. OF HEALTH SERVICES RESEARCH |
| ABESS CENTER FOR ECOSYSTEM SCIENCE & POLICY | **AFFILIATED FACULTY, 2016** |

# ACADEMIC APPOINTMENTS

| | |
|---|---|
| **UNIVERSITY OF CALIFORNIA BERKELEY LAW SCHOOL** | **VISITING SCHOLAR, Spring 2019**<br>Center for the Study of Law and Society |
| **BROWN UNIVERSITY** | **VISITING PROFESSOR & SCHOLAR, 2014–2017**<br>Department of Africana Studies |
| **DARTMOUTH COLLEGE** | **VISITING SCHOLAR, Summer 2012–2017**<br>Ethics Institute |
| **UCLA SCHOOL OF LAW** | **VISITING PROFESSOR, Spring 2015**<br>Social Enterprise |
| **UNIVERSITY OF ALABAMA SCHOOL OF LAW** | **JOHN SPARKMAN VISITING CHAIR, Fall 2009**<br>Public Interest Law and Ethics |

# CLINICAL ACADEMIC APPOINTMENTS

| | |
|---|---|
| **MARQUETTE UNIVERSITY LAW SCHOOL** | **ASSISTANT PROFESSOR OF LAW, Aug. 1990–Aug. 1991**<br>**DIRECTOR, CLINICAL STUDIES** |
| **NEW YORK LAW SCHOOL** | **CLINICAL ASSOCIATE PROFESSOR OF LAW, Dec. 1987–July 1990**<br>**MANAGING ATTORNEY, FEDERAL LITIGATION CLINIC** |

# PROFESSIONAL EXPERIENCE

| | |
|---|---|
| **THE LEGAL AID SOCIETY** | **STAFF ATTORNEY, Sept. 1984–Dec. 1987**<br>Civil Division, South Bronx Trial Office, New York<br>Public Benefits & Homeless |
| **NAACP L.D.F.** | **LAW CLERK, May 1983–May 1984**<br>National Office, New York<br>Capital Punishment & Voting Rights |
| **MFY LEGAL SERVICES** | **LAW CLERK, May 1982–Mar. 1983**<br>35 Avenue A Office, New York<br>Community Economic Development & Family Law |
| **COAL. CONSUMER JUSTICE** | **COMMUNITY ORGANIZER, Sept. 1980–Feb. 1981**<br>Providence, Rhode Island<br>Community Economic Development |
| **R.I. LEGAL SERVICES** | **COMMUNITY ORGANIZER, Apr. 1980–Sept. 1980**<br>Providence, Rhode Island<br>Housing Law |

## ACADEMIC AWARDS

**2022 FRED C. ZACHARIAS MEMORIAL PRIZE FOR SCHOLARSHIP IN PROFESSIONAL RESPONSIBILITY,** AALS SECTION ON PROFESSIONAL RESPONSIBILITY

**2011–2012 PUBLIC INTEREST INNOVATIVE SERVICE AWARD,** UNIVERSITY OF MIAMI SCHOOL OF LAW

**2009 RICHARD HAUSLER PROFESSOR OF THE YEAR AWARD,** UNIVERSITY OF MIAMI SCHOOL OF LAW

**2007 WILLIAM PINCUS AWARD,** AALS SECTION ON CLINICAL LEGAL EDUCATION

**2007 FATHER ROBERT DRINAN AWARD,** AALS SECTION ON PRO BONO & PUBLIC SERVICE OPPORTUNITIES

**2004–2005 GARY BELLOW SCHOLAR,** AALS SECTION ON CLINICAL EDUCATION

**2002 ELECTED MEMBER, OMICRON DELTA KAPPA HONOR SOCIETY,** UNIVERSITY OF MIAMI

**2002 ELECTED MEMBER, ALPHA EPSILON LAMBDA GRADUATE HONOR SOCIETY,** UNIVERSITY OF MIAMI

**2000 RICHARD HAUSLER PROFESSOR OF THE YEAR AWARD,** UNIVERSITY OF MIAMI SCHOOL OF LAW

**2000 AMICUS CURIAE YEARBOOK CLASS DEDICATION,** UNIVERSITY OF MIAMI SCHOOL OF LAW

**1995 WILLIAM PINCUS AWARD,** CLINICAL LAW REVIEW, AALS SECTION ON CLINICAL EDUCATION

## PROFESSIONAL AWARDS

**2017 COMMUNITY SERVICE AWARD,** COCONUT GROVE MINISTERIAL ALLIANCE OF BLACK CHURCHES

**2016 AWARD FOR SOCIAL JUSTICE,** COCONUT GROVE DRUG–FREE PREVENTION PARTNERSHIP

**2014 MIAMI PEOPLE,** MIAMI NEW TIMES, Nov. 27–Dec. 3, 2014.

**2014 COMMUNITY RECOGNITION AWARD,** G.W. CARVER HIGH SCHOOL ALUMNI ASSOCIATION

**2011 APPRECIATION AWARD,** COCONUT GROVE MINISTERIAL ALLIANCE OF BLACK CHURCHES

**2001 *ARETE* AWARD,** MIAMI-DADE COUNTY COMMISSION ON ETHICS AND PUBLIC TRUST

**2000 SEVENTH ANNUAL PROFESSIONALISM AWARD,** THE FLORIDA BAR

**1999 FACULTY PROFESSIONALISM AWARD,** FLORIDA SUPREME COURT COMMISSION ON PROFESSIONALISM

**1998 E. SMYTHE GAMBRELL PROFESSIONALISM AWARD,** ABA STANDING COMMITTEE ON PROFESSIONALISM

APR. 2022

## ACADEMIC PUBLICATIONS

### ARTICLES & ESSAYS (63)

*Civil Rights Law's Black Ghetto* (work in progress)

*"Better Homes for Better Negroes": Intraracial Class Conflict and Respectability Politics in Civil Rights Lawyering* (work in progress)

*Race Ethics,* 36 GEO. J. LEGAL ETHICS (forthcoming 2023)

*Lessons in Social Movement Lawyering,* 47 LAW & SOCIAL INQUIRY (forthcoming 2023)

*Racial Trauma in Civil Rights Representation,* 120 MICH. L. REV. (2022) (w/Angela Onwuachi-Willig)

*(Re)Framing Race in Civil Rights Lawyering,* 130 YALE L.J. 2052-2108 (2021) (w/Angela Onwuachi-Willig)

*The Poverty of Clinical Canonic Texts,* 25 CLINICAL L. REV. 53-79 (2019)

*Black, Poor, and Gone: Civil Rights Law's Inner-City Crisis,* 54 HARV. C.R.-C.L. L. REV. 629-702 (2019)

*Things Fall Apart: Hard Choices in Public Interest Law,* 31 GEO. J. LEGAL ETHICS 335-56 (2018)

*Inner-City Anti-Poverty Campaigns,* 64 UCLA L. REV. 1374-1462 (2017)

*Rebellious Pedagogy and Practice,* 23 CLINICAL L. REV. 5-36 (2016)

*Resistance Songs: Mobilizing the Law and Politics of Community,* 93 TEXAS L. REV. 1459-98 (2015)

*Objecting to Race,* 27 GEO. J. LEGAL ETHICS 1129-61 (2014)

*Paternalistic Interventions in Civil Rights and Poverty Law: A Case Study of Environmental Justice,* 112 MICH. L. REV. 1157-77 (2014)

*Next Generation Civil Rights Lawyers: Race and Representation in the Age of Identity Performance,* 122 YALE L.J. 1484-2013 (2013) (w/Angela Onwuachi-Willig)

*Community Education and Access to Justice in a Time of Scarcity: Notes from the West Grove Trolley Garage Case,* 2013 WISCONSIN L. REV. 121-43

*"He is the Darkey with the Glasses On": Race Trials Revisited,* 91 NORTH CAROLINA L. REV. 1497-1512 (2013)

*Law Firm Malpractice Disclosure: Illustrations and Guidelines,* 42 HOFSTRA L. REV. 17-54 (2013)

*Service Delivery, Resource Allocation and Access to Justice: Greiner and Pattanayak and the Research Imperative,* 122 YALE L.J. ONLINE 45-67 (2012) (w/Jeffrey Selbin, Jeanne Charn, & Stephen Wizner)

## ACADEMIC PUBLICATIONS

### ARTICLES & ESSAYS (63)

*Educating Lawyers for Community,* 2012 WISCONSIN L. REV. 115-58

*Fidelity to Community: A Defense of Community Lawyering*, 90 TEXAS L. REV. 635-56 (2012)

*Big Law and Risk Management: Case Studies of Litigation, Deals, and Diversity,*
    24 GEO. J. LEGAL ETHICS 991-1040 (2011), *reprinted in* SSRN eJournal LAW & PROSOCIALITY (2011)

*Integrating into a Burning House: Race- and Identity-Conscious Visions in* Brown's *Inner City,*
    84 S. CAL. L. REV. 541-603 (2011)

*Post-Racialism in the Inner-City: Structure and Culture in Lawyering*, 98 GEO. L.J. 921-66 (2010)

*Discovering Identity in Civil Procedure*, 83 S. CAL. L. REV. 453-72 (2010)

*Against Practice,* 107 MICH. L. REV. 1073-92 (2009)

*Jim Crow Ethics and the Defense of the Jena Six*, 94 IOWA L. REV. 1651-1701 (2009)

*Prosecuting the Jena Six*, 93 CORNELL L. REV. 1285-1310 (2008)

*(Un)Covering Identity in Civil Rights and Poverty Law*, 121 HARV. L. REV. 805-44 (2008)

*Faith in Community: Representing "Colored Town,"* 95 CAL. L. REV. 1829-78 (2007)

*Clinical Genesis in Miami: Introduction,* 75 UMKC L. REV. 1137-38 (2007)

*The Fall of Legal Ethics and the Rise of Risk Management*, 94 GEO. L.J. 1909-55 (2006)

*Gideon in White/Gideon in Black: Race and Identity in Lawyering,* 114 YALE L.J. 1459-88 (2005)

*Teaching Ethics/Doing Justice*, 73 FORDHAM L. REV. 851-63 (2005)

*Mercy Lawyers,* 82 NORTH CAROLINA L. REV. 1297-1318 (2004)

*Color/Identity/Justice: Chicano Trials,* 53 DUKE L. J. 1569-1617 (2004)

*Limited Scope Legal Representation under Model Rule 6.5: Ethical Issues,* ABA CENTER FOR
    PROFESSIONAL RESPONSIBILITY COURSE BOOK 553-57 (June, 2004)

*John Hart Ely: Fathers and Sons,* 58 U. MIAMI L. REV. 953-54 (2004)

*Retrying Race,* 101 MICH. L. REV. 1141-1200 (2003)
APR. 2022

## ACADEMIC PUBLICATIONS

### ARTICLES & ESSAYS (63)

*Community Prosecutors*, 90 CAL. L. REV. 1465-1512 (2002)

*Ethics, Race, and Reform*, 54 STAN. L. REV. 1389-1407 (2002)

*Teaching the Law of Race*, 89 CAL. L. REV. 1605-24 (2001)

*Activities of Law School Centers on Professionalism*, 52 SOUTH CAROLINA L. REV. 486-88 (2001)

*Race Prosecutors, Race Defenders*, 89 GEO. L. J. 2227-77 (2001)

*Prosecuting Violence/Reconstructing Community*, 52 STAN. L. REV. 809-871 (2000)

*Prosecuting Race*, 48 DUKE L. J. 1157-1264 (1999)

*(Er)Race-ing an Ethic of Justice*, 51 STAN. L. REV. 935-54 (1999)

*Black and White*, 85 CAL. L. REV. 1647-86 (1997), *reprinted in* 10 LA RAZA L. J. 561-600 (1998)

*Lawyering for Poor Communities in the Twenty-First Century*, 25 FORDHAM URB. L.J. 729-70 (1998)

*Race Trials*, 76 TEXAS L. REV. 1293-1369 (1998)

*Lynching Ethics: Toward A Theory of Racialized Defenses*, 95 MICH. L. REV. 1063-1104 (1997)

*Mitigation, Mercy, and Delay: The Moral Politics of Death Penalty Abolitionists*, 31 HARV. C.R.-C.L. L. REV. 325-52 (1996)

*Race-ing Legal Ethics*, 96 COLUM. L. REV. 800-07 (1996)

*Ethical Commitments*, 38 WM. & MARY L. REV. 199-205 (1996)

*Denaturalizing the Lawyer-Statesman*, 93 MICH. L. REV. 1204-30 (1995)

*Defending Racial Violence*, 95 COLUM. L. REV. 1301-42 (1995)

*Practicing Community*, 107 HARV. L. REV. 1747-64 (1994)

*The Ethics of Violence: Necessity, Excess, & Opposition*, 94 COLUM. L. REV. 1721-50 (1994)

*Impoverished Practices*, 81 GEO. L. J. 2567-2663 (1993)

*Stances*, 77 CORNELL L. REV. 1233-57 (1992)

APR. 2022

## ACADEMIC PUBLICATIONS

### ARTICLES & ESSAYS (63)

*Disabled Clients, Disabling Lawyers*, 43 HASTINGS L. J. 769-851 (1992)

*Reconstructive Poverty Law Practice: Learning Lessons of Client Narrative*, 100 YALE L. J. 2107-47 (1991)

*Speaking Out of Turn: The Story of Josephine V.*, 4 GEO. J. LEGAL ETHICS 619-53 (1991)

*The Politics of Clinical Knowledge*, 35 N.Y.L. SCH. L. REV. 7-27 (1990)

*The Antinomies of Poverty Law and a Theory of Dialogic Empowerment*, 16 N.Y.U. REV. L. & SOC. CHANGE 659-712 (1987-88)

### CHAPTERS IN BOOKS (9)

*Race, Legal Representation, and Lawyer Ethics*, in THE OXFORD HANDBOOK OF RACE AND LAW IN THE UNITED STATES (Devon Carbado, Emily Houh, & Khiara Bridges eds., forthcoming 2022)

*Fidelity to Community: A Defense of Community Lawyering*, in CRITICAL RACE THEORY: THE CUTTING EDGE 743-49 (Richard Delgado & Jean Stefancic eds., 3d ed. 2013)

*(Er)Race-ing an Ethic of Justice*, in LAWYERS' ETHICS AND THE PURSUIT OF SOCIAL JUSTICE: A CRITICAL READER 265-73 (Susan D. Carle ed., 2005)

*Race Prosecutors, Race Defenders*, in RACE, CULTURE, PSYCHOLOGY AND LAW 63-78 (Kim Barrett ed., 2004)

*Defending Racial Violence, in* BOLD BEGINNINGS, BRIGHT TOMORROWS 1-47 (Lynn Thompson, ed. 2002)

*Reconstructive Poverty Law Practice: Learning Lessons of Client Narrative & Race Prosecutors, Race Defenders, in* JURISPRUDENCE, CLASSICAL AND CONTEMPORARY: FROM NATURAL LAW TO POSTMODERNISM 521-32, 919-24 (Robert Hayman, Jr. et al., 2d ed. 2002)

*Reconstructive Poverty Law Practice: Learning Lessons of Client Narrative, in* CRITICAL RACE THEORY: THE CUTTING EDGE 600-06 (Richard Delgado & Jean Stefancic eds., 2d ed. 2000)

*Reconstructive Poverty Law Practice: Learning Lessons of Client Narrative, in* CLINICAL ANTHOLOGY: READINGS FOR LIVE-CLIENT CLINICS 290-99 (1997)

*Welfare Stories, in* LAW STORIES 31-49 (Gary Bellow & Martha Minow, eds. 1996)

### BOOKS IN PROGRESS

*Race Ethics*

APR. 2022

# NEWSPAPER EDITORIALS & MAGAZINE ARTICLES (21)

*Coconut Grove Village West: Black, Poor, and Gone,* PRESERVATION TODAY MAG. 46 (2019)
*Black, Poor, and Gone,* MIAMI LAW MAGAZINE 25-26 (Spr. 2019)
*Needs of Neighborhood Residents Must Be Priority,* MIAMI HERALD, Dec. 18, 2014
*West Grove: Old Smokey Remains a Hazard,* MIAMI HERALD, July 20, 2013 (w/Lipshultz & Lipshultz)
*Find somewhere else to park those trolleys,* MIAMI HERALD, Feb. 5, 2013 (w/Lipshultz & Lipshultz)
*Penn State – Lessons for the Board,* MIAMI HERALD, July 22, 2012 (w/Maderal & Martinez)
*Neighborhood Initiatives – How Students Can Help,* MIAMI HERALD, July 8, 2008
*South Florida Philanthropy: A Charitable Divide?,* MIAMI DAILY BUSINESS REV., Apr. 21, 2008
*Racists Remain Undeterred,* MIAMI HERALD, Feb. 23, 2008
*Blow the Whistle on Abusers of Public Funds,* MIAMI HERALD, Sept. 7, 2006
*Teaching the Spirit of Justice,* 20 ST. DAVID'S MAG. 12-13 (Summer 2006)
*Enron Trial: Lessons on Ethics for Lawyers,* MIAMI HERALD, Feb. 10, 2006
*Our Silence in the Face of Squalor,* MIAMI HERALD, Oct. 13, 2005
*Time for a Woman in this Job?,* MIAMI HERALD, June 8, 2005
*Knowing When to Call It Quits,* MIAMI HERALD, Apr. 28, 2005
*A Chance to Right Old Wrongs,* MIAMI HERALD, Feb. 10, 2005
*Some Resist Call to Arms,* MIAMI HERALD, Dec. 2, 2004
*Muzzled Mother Asks a Potent Question,* MIAMI HERALD, Oct. 5, 2004
*Rooting a New Iraq in Justice,* MIAMI HERALD, Aug. 27, 2004
*Regier Appointment: An Opportunity to Debate Faith's Role in Public Policy,* MIAMI HERALD, Sept. 15, 2002
*Try Talking to Children About World's Conflicts,* MIAMI HERALD, June 9, 2002

# ACADEMIC CITATIONS & SCHOLARLY IMPACT

HeinOnline: Cited by Articles **1,957** (Apr. 2022).

Google Scholar Citations: **2,952** (Apr. 2022).

Social Science Research Network: Scholarly Papers **57**; Total Downloads **3,742**; Top **10%** (Apr. 2022).

University of Miami School of Law Readership Report: Total Downloads **18,200** (Apr. 2022).

More than **2,082** citations in books, cases, law and social science journals, and the media (Mar. 2022).

## ACADEMIC & PROFESSIONAL ACTIVITIES

**BOARD OF DIRECTORS**, GRACE, Inc. (Grove Rights and Community Equity), 2019 to date

**CO-CHAIR**, Coconut Grove Village West Hous. & Cmty. Dev. Task Force, 2018–2019

**BOARD OF DIRECTORS**, St. Paul Cmty. Dev. Corp., 2016 to date

**BOARD OF DIRECTORS**, Coconut Grove Ministerial Alliance of Black Churches, 2010 to date

**BOARD OF TRUSTEES**, St. Thomas Episcopal Parish School, 2001–2017
    **Vice Chair Policy & Governance**, Executive Committee, 2009–2014
    **Vice Chair**, Executive Committee, 2007–2008
    **Secretary**, Executive Committee, 2005–2007
    **Co-Chair**, Strategic Planning Committee, 2007
    **Co-Chair**, Annual Fund, 2005–2006
    **Chair & Member**, Trusteeship Committee, 2001–2014
    **Member**, Diversity Committee, 2015–2017
    **Member**, Capital Campaign Committee & Head of School Search Committee

**TASK FORCE**, Collective Empowerment Group of Black Churches Strategic Plan, 2020

**TASK FORCE**, Brown University Alumni Interviewing Program, 2015

**EXECUTIVE COMMITTEE**, AALS Section on Professional Responsibility, 1997–1999, 2012–2015

**EXECUTIVE BOARD**, Little Haiti FC (soccer club), 2014–2015

**APPOINTED MEMBER**, AALS Standing Committee on Curriculum Issues, 2011–2013

**ELECTED FELLOW**, American Bar Foundation, 2011 to date

**APPOINTED MEMBER**, Ethics, Integrity & Accountability Task Force, Miami-Dade County Comm'n Ethics & Public Trust, 2007–2010

**APPOINTED MEMBER**, Attorney-Client Privilege Task Force, Florida Bar, 2006–2008

**EXECUTIVE COMMITTEE**, AALS Section on Clinical Education, 2006–2008

**CONTRIBUTING OP-ED COLUMNIST**, *Miami Herald*, 2002 & 2004

**CONSULTANT**, Discipline Counsel, Florida Bar, 2003–2004

**AREA CHAIR**, Brown University Alumni Schools Committees (BASC), 2001–2013

**APPOINTED MEMBER**, Diversity Committee, Law and Society Association, 2001–2004
APR. 2022

# ACADEMIC & PROFESSIONAL ACTIVITIES

ELECTED MEMBER, American Law Institute, 1998 to date

ADVISOR, Miami-Dade County Alliance for Ethical Government, 1998–2001

APPOINTED MEMBER, Standing Committee on Professionalism, Florida Bar, 1997–2002

BOARD OF DIRECTORS, Legal Services of Greater Miami, 1994–1999

BOARD OF ADVISORS & EDITORS, Clinical Law Review: Journal Lawyering & Legal Educ., 1992–1996

CO-CHAIR, AALS Clinical Section Committee on Clinical Scholarship, 1990–1994

BOARD OF DIRECTORS, Yorkville Common Pantry and Soup Kitchen, 1988–1990

PRO BONO PANEL, U.S. Ct. App. (2d Cir.) & U.S. Dist. Ct. (E.D.N.Y. & S.D.N.Y.), 1988–1990

OF COUNSEL, The Legal Aid Society, Civil Division, New York, 1987–1990

# PROFESSIONAL CONSULTING

Professional responsibility consultant and expert witness in attorney and judicial conduct matters, including ethics and professionalism, complex litigation (conflicts of interest, disqualification, fee disputes, and fraud), law office risk management and loss prevention, law firm organization and structure, legal malpractice, professional discipline and regulation, and professional liability.

# PROFESSIONAL FUNDRAISING

Since 1996, directed fundraising on behalf of the Center for Ethics & Public Service (e.g., annual giving fund, capital campaign, corporate relations, foundation grants, major gifts, & stewardship). Raised over **$2,500,000** in gifts and grants. Administered budgets in excess of **$1,000,000** in annual expenditures.

# DOCUMENTARY FILMS & ORAL HISTORIES

CULTURAL AND SOCIAL HISTORY
West Coconut Grove: Past, Present & Future, 2010
Churches in the West Grove History: Past, Present & Future, 2011

CIVIL RIGHTS AND PUBLIC EDUCATION
G.W. Carver: A Community School, 2012
Someday We'll All Be Free: The Desegregation of Miami, 2013

ENVIRONMENTAL JUSTICE
Old Smokey: A Community History, 2014

APR. 2022

## ACADEMIC & PROFESSIONAL ACTIVITIES: ATTORNEY OF RECORD

### FEDERAL CASES: PUBLISHED DECISIONS

*Hill v. Sullivan*, 125 F.R.D. 86 (S.D.N.Y. 1989)

*Baran v. Bowen*, 710 F. Supp. 53 (S.D.N.Y. 1989)

*Tirado v. Bowen*, 705 F. Supp. 179 (S.D.N.Y. 1989)

*Martinez v. Bowen*, 687 F. Supp. 71 (S.D.N.Y. 1988)

*Brandon v. Bowen*, 666 F. Supp. 604 (S.D.N.Y. 1987)

*Rodriguez v. Heckler*, 621 F. Supp. 194 (S.D.N.Y. 1985)


### STATE CASES: PUBLISHED DECISIONS

*Thrower v. Perales*, 138 Misc. 2d 172, 172, 523 N.Y.S.2d 933 (Sup. Ct. 1987)

*Williams v. Axelrod*, 133 Misc. 2d 817, 817, 508 N.Y.S.2d 371 (Sup. Ct. 1986)


### FEDERAL CASE ACADEMIC CITATIONS: U.S. COURTS OF APPEALS & FEDERAL DISTRICT COURTS

*Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 641 n.10, 647 n.39 (6th Cir. 2016) (Keith, J.)

*Bryan v. Mullin*, 335 F.3d 1207, 1244 (10th Cir. 2003) (Henry, J.)

*G.M.M. ex rel. Hernandez-Adams v. Kimpson*, 116 F. Supp. 3d 126, 148 (E.D.N.Y. 2015) (Weinstein, J.)

APR. 2022

# ACADEMIC & PROFESSIONAL PRESENTATIONS

PANEL, *Housing, Gentrification, & Community Benefits Agreements*, Miami-Dade Bar, Apr. 22, 2022

LECTURE, *Racial Trauma in Civil Rights Representation*, U. Michigan Law Review, Feb. 18, 2022

PANEL, *Public Health Immersion*, University of Miami MD/MPH Program, Nov. 17, 2021

PANEL, *Bankruptcy Ethics Training*, Florida Bankruptcy Bar Association, Nov. 10, 2021

PANEL, *Virtual Pretrial and Trial Practice Ethics*, Miami-Dade Trial Lawyers Association, Aug. 11, 2021

PANEL, *Community Engagement as a Lawyering Skill*, AALS Clinical Legal Educ. Conf., Apr. 28, 2021

PANEL, *Bankruptcy Ethics Training*, Florida Bankruptcy Bar Association, Mar. 11, 2021

LECTURE, *Environmental Justice*, University of Miami Ecosystem Science and Policy, Feb. 3, 2021

LECTURE, *Health Disparities*, University of Miami MD/MPH Program, Nov. 13, 2020

PANEL, *(Re)Framing Race in Civil Rights Lawyering*, Clinical L. Rev. Writers' Workshop, Oct. 3, 2020

LECTURE, *Community Equity Lab*, Midwest Clinical Conf., University of Michigan, Oct. 19, 2019

LECTURE, *Black, Poor, and Gone*, University of Miami MD/MPH Program, July 19, 2019

PANELS, *Legal Malpractice & Prof'l Liability Roundtable Series*, UM School of Law, Apr. 26, 2019

PANEL, *Harvard Civil Rights-Civil Liberties Law Review*, Harvard Law School, Apr. 18, 2019

LECTURE, *Black, Poor, and Gone*, UC Berkeley Center for the Study of Law & Society, Mar. 22, 2019

LECTURE, *Black, Poor, and Gone*, UC Berkeley Law School, East Bay Community L. Center, Mar. 20, 2019

PANEL, *Ethical Issues in Litigation*, Spellman-Hoeveler Chapter Am. Inns of Court, Mar. 1, 2019

LECTURE, *Environmental Health & Justice*, University of Miami MD/MPH Program, June 29, 2018

LECTURE, *Environmental Justice*, Brown University, Urban Environmental Lab, Apr. 12, 2018

LECTURE, *Environmental Justice*, Brown University, Dep't Environmental Studies, Apr. 11, 2018

PANEL, *Hard Issues in Public Interest Law*, Geo. J. Legal Ethics Symp., Mar. 2, 2018

TESTIMONY, *Day Avenue 8 & Fair Housing*, City of Miami Comm'n Hr'g, Nov. 16, 2017

APR. 2022

## ACADEMIC & PROFESSIONAL PRESENTATIONS

LECTURE, *Environmental Justice*, Brown University, Dep't Environmental Studies, Oct. 2, 2017

PANELS, *Conflicts & Insurance Defense*, Second Ann. Prof'l Liability Symp., June 9, 2017

LECTURE, *Leading Change*, University of Miami MD/MPH Program, May 30, 2017

TESTIMONY, *Day Avenue 8 & Fair Housing*, City of Miami Comm'n Hr'g, May 25, 2017

LECTURE, *Inner-City Anti-Poverty Campaigns*, Howard University School of Law, Mar. 6, 2017

PANEL, *Movement Lawyering*, UCLA School of Law, Feb. 10, 2017

LECTURE, *Environmental Justice*, Health Care Access Course, University of Miami, Jan. 21, 2017

PANEL, *Ethics of Third Party Litig. Funding*, University of Miami School of Law, Nov. 11, 2016

PANEL, *Law & Social Movements*, Georgetown University Law School, Oct. 28, 2016

PANEL, *The Open Curriculum,* Brown University, September 23, 2016

PANEL, *Comparative Legal Profession Histories*, Int'l Legal Ethics Conf. VII, July 16, 2016

PANEL, *Public Interest Lawyering*, Int'l Legal Ethics Conf. VII, July 15, 2016

PANEL, *Best Ethical Practices,* Florida Lawyers' Professional Liability Sem., June 10, 2016

TESTIMONY, *West Grove Trolley Garage*, City of Miami Comm'n Hearing, June 9, 2016

PANEL, *Ethics and Professionalism in Appellate Practice*, Dade County Bar Ass'n, May 12, 2016

PANEL, *Racial and Faith-Based Communities*, AALS Clinical Legal Education Conf., May 2, 2016

PANEL, *Rebellious Pedagogy and Practice*, AALS Clinical Legal Education Conf., May 1, 2016

TESTIMONY, *Title VIII Civil Rights Act of 1968*, City of South Miami Comm'n Hearing, Dec. 15, 2015

LECTURE, *Old Smokey: A Community History*, UM Experience, University of Miami, Nov. 6, 2015

TESTIMONY, *Day Avenue 8*, Planning, Zoning & Appeals Bd. Hr'g, City of Miami, Oct. 21, 2015

PANEL, *Alumni Career Pathways in Public Interest Law*, Brown University, Oct. 7, 2015

LECTURE, *Race and Environmental Justice*, Brown University, Dep't Africana Studies, Oct. 6, 2015

## ACADEMIC & PROFESSIONAL PRESENTATIONS

PANEL, *Environmental and Climate Justice*, University of Miami School of Law, Sept. 15, 2015

LECTURE, *Environmental Justice*, Miami-Dade Comm'n on Ethics & Public Trust, Sept. 11, 2015

LECTURE, *Mobilizing the Law and Politics of Community*, UCLA School of Law, Apr. 24, 2015

PANEL, *Community Lawyering in Clinical Education*, UCLA School of Law, Apr. 1, 2015

LECTURE, *Objecting to Race*, Brown University, Department of Africana Studies, Oct. 7, 2014

TESTIMONY, *City of Coral Gables, Fla. v. Astor Trolley*, Coral Gables Comm'n Hr'g, July 22, 2014

PANEL, *Paternalistic Interventions in Civil Rights & Poverty Law*, Int'l Legal Ethics Conf., July 12, 2014

PANEL, *Objecting to Race*, Georgetown Journal of Legal Ethics Symposium, Mar. 18, 2014

ROUNDTABLE, *Race, Crime, and Stand Your Ground*, American Society for Legal History, Nov. 9, 2013

PANEL, *Clinical Scholarship*, Columbia Law School, Apr. 20, 2013

LECTURE, *Community Education and Access to Justice*, Notre Dame Law School, Apr. 19, 2013

LECTURE, *Deception and Delay in Law Firm Malpractice Disclosure*, Hofstra Law School, Apr. 5, 2013

PANEL, *Political Impact: The Clinic and Social Justice*, UCLA School of Law, Oct. 26, 2012

LECTURE, *Beaner Hopping: Black on Brown Violence and the Law*, UNC School of Law, Oct. 5, 2012

PANEL, *Scholarship and Social Change*, AALS Clinical Legal Education Conference, May 2, 2012

PANEL, *Media and the Law*, St. Thomas University School of Law, Law Rev. Symposium, Mar. 30, 2012

PANEL, *Careers in the Common Good*, Brown University, Feb. 23, 2012

LECTURE & PANEL, *Community Prosecution*, Wake Forest University School of Law, Nov. 4, 2011

LECTURE, *Big Law, Risk Governance, and Diversity*, William Mitchell College of Law, Mar. 23, 2011

PANEL, *Courage to Dissent*, University of Virginia School of Law, Mar. 16, 2011

LECTURE, *Race and Identity Conscious Visions in Brown's Inner City*, UCLA Law School, Feb. 25, 2011

LECTURE, *Big Law, Risk Governance, and Diversity*, Loyola Law School-Los Angeles, Feb. 24, 2011

## ACADEMIC & PROFESSIONAL PRESENTATIONS

PANEL, *Post-Racial Whiteness*, Third National People of Color Legal Scholarship Conf., Sept. 11, 2010

PANEL, *Ethics in Practice*, International Legal Ethics Conference, Stanford Law School, July 17, 2010

LECTURE, *Post-Racialism in the Inner City*, Georgetown University Law School, Mar. 26, 2010

PANEL, *Bankruptcy Ethics Training*, Florida Bankruptcy Bar Association, Mar. 9, 2010

LECTURE, *Risk Management, Law Firm Economics & Lawyer Integrity*, Fordham Law School, Oct. 6, 2009

LECTURE, *Race Trials and Jim Crow Ethics*, Wayne State University Law School, Oct. 10, 2009

PANEL, *Against Practice*, Yale Law School Conference, Apr. 17, 2009

PANEL, *Bankruptcy Ethics Training*, Florida Bankruptcy Bar Association, Apr. 15 & 23, 2009

LECTURE, *Corporations and Conflicts of Interest*, Greenberg Traurig, Apr. 2, 2009

LECTURE, *Bankruptcy Ethics*, Greenberg Traurig, Mar. 11, 2009

LECTURE & WORKSHOP, *Jim Crow Legal Ethics*, University of Iowa College of Law, Mar. 6, 2009

LECTURE, *(Un)Covering Identity in Civil Rights & Poverty Law*, U. of Alabama Law School, Feb. 4, 2009

PANEL, *Colloquy on the ABA Canons of Ethics*, Shook, Hardy & Bacon, Dec. 4, 2008

LECTURE, *Ethics of Outsourcing, Screening, and E-Discovery*, Greenberg Traurig, Nov. 7, 2008

PANEL, *Legal Ethics & Human Dignity*, Cornell University Law School Colloquium, Oct. 3, 2008

PANEL, *Identity and Role*, Legal Ethics Conference, Fordham Law School, June 3, 2008

PANEL, *Bankruptcy Ethics Training*, Florida Bankruptcy Bar Association, Mar. 24, 2008

LECTURE, *Client Communication, Conflicts, & Consent*, Greenberg Traurig, Feb. 28, 2008

PANEL, *Immigration Ethics Training*, Florida Immigrant Advocacy Center, Feb. 22, 2008

PANEL, *Legal Services Ethics Training*, Legal Services of Greater Miami, Nov. 16, 2007

LECTURE, *Ethical Dilemmas in Multiple Representation*, Greenberg Traurig, Nov. 9, 2007

PANEL, *Prosecutor Ethics Training*, Miami-Dade County State Attorney, Nov. 1, 2007

## ACADEMIC & PROFESSIONAL PRESENTATIONS

PANEL, *(Un)Covering Identity in Civil Rights and Poverty Law*, LatCrit XII Conference, Oct. 6, 2007

LECTURE, *(Un)Covering Identity in Civil Rights and Poverty Law*, New England Clinic Conf., Apr. 27, 2007

LECTURE, *(Un)Covering Identity in Civil Rights and Poverty Law*, Suffolk Law School, Apr. 26, 2007

LECTURE, *Ethical Considerations in Attorneys' Fees*, Coral Gables Bar Association, Apr. 18, 2007

LECTURE, *Ethics in Negotiations, Mediations, and Settlements*, Greenberg Traurig, Apr. 17, 2007

LECTURE, *Representing "Colored Town,"* University of California Berkeley Law School, Apr. 5–6, 2007

LECTURE, *Representing "Colored Town,"* University of Denver College of Law, Mar. 1, 2007

PANEL, *Bankruptcy Ethics Training*, Florida Bankruptcy Bar Association, Feb. 23 & Mar. 29, 2007

LECTURE, *Immigration Ethics Training*, Florida Immigrant Advocacy Center, Feb. 1, 2007

PANEL, *Ethics and the Multijurisdictional Practice of Law*, Greenberg Traurig, Nov. 14, 2006

PANEL, *A Foreign Litigant in Uncle Sam's Court*, ABA Section of International Law, Nov. 9, 2006

PANEL, *Legal Services Ethics Training*, Legal Services of Greater Miami, Nov. 3, 2006

PANEL, *Legal Aid Ethics Training*, Legal Aid Society of Dade County Bar Association, Nov. 2, 2006

PANEL, *Prosecutor Ethics Training*, Miami-Dade County State Attorney, Oct. 19, 2006

LECTURE, *"Grabbing and Leaving": The Ethics of Lawyer Mobility*, Fla. Legal Ethics, July 11, 2006

PANEL, *Ethics in Child Victim Cases*, Kristi House Child Abuse Conf., Apr. 25, 2006

PANEL, *Class Action Ethics*, The Spellman-Hoeveler American Inn of Court, Apr. 20, 2006

LECTURE, *Real Estate Transactional Ethics*, Greenberg Traurig, Apr. 20, 2006

LECTURE, *Law Firm Migration, Organization, and Dissolution*, Coral Gables Bar Ass'n, Apr. 19, 2006

LECTURE, *The Fall of Legal Ethics & the Rise of Risk Management*, FIU College of Law, Apr. 5, 2006

PANEL, *Legal Ethics in Banking*, Northern Trust Bank, Mar. 24, 2006

LECTURE, *Fall of Legal Ethics & Rise of Risk Management*, U. Georgia Law School, Feb. 24, 2006

APR. 2022

## ACADEMIC & PROFESSIONAL PRESENTATIONS

LECTURE, *Fall of Legal Ethics & Rise of Risk Management*, Wash. & Lee Law School, Feb. 13, 2006

PANEL, *Tough Ethical Dilemmas After BAPCPA*, American Bankruptcy Institute, Feb. 10, 2006

LECTURE, *Engagement Agreements*, Greenberg Traurig, Feb. 3, 2006

PANEL, *Federal Clerk Ethics Training*, U.S. District Court, S.D. Fla., Feb. 2, 2006

PANEL, *Legal Services Ethics Training*, Legal Services of Greater Miami, Jan. 27, 2006

LECTURE, *Ethics in Billing*, Ruden McClosky, Dec. 9, 2005

PANEL, *Engagement Letters and Conflicts of Interest*, Carlton Fields, Nov. 11, 2005

PANEL, *Florida Trial Court Staff Attorney Ethics*, Sixth Annual Conference, Oct. 20, 2005

LECTURE, *Ethics in Coaching*, University of Miami Varsity Athletics, Oct. 3, 2005

PANEL, *Prosecutor Ethics Training*, Miami-Dade County State Attorney, Sept. 29, 2005

PANEL, *U.S.D.C. (S.D. Fla.) Probation & Pretrial Services Ethics Training*, Sept. 16, 2005

PANEL, *Public Defender Ethics Training*, Broward County Public Defender, July 8, 2005

PANEL, *Navigating the Shoals of Sarbanes-Oxley*, 2005 ELA Legal Forum, May 17, 2005

LECTURE, *Ethics Education, Prof'l Training, & Community Service*, UM Osher Institute, May 4, 2005

LECTURE, *Reporting Lawyer Misconduct*, Coral Gables Bar Association, Apr. 20, 2005

LECTURE, *Revised ABA Model Code of Judicial Conduct*, Greenberg Traurig, Apr. 12, 2005

PANEL, *Liability Exposure of Corporate Directors*, AIG & Carlton Fields Seminar, Mar. 31, 2005

PANEL, *Lawyer Activism and Social Justice*, University of Texas, Mar. 12, 2005

PANEL, *Bankruptcy Ethics Training*, Florida Bankruptcy Bar Association, Mar. 8 & May 9, 2005

LECTURE, *Race in the Criminal Justice System*, UM Law School Momentum Campaign, Feb. 17, 2005

PANEL, *Does Title IX Protect Whistleblowers?*, University of Miami Spring Ethics Program, Feb. 16, 2005

LECTURE, *Drug & Alcohol Abuse in the 21st Century Law Firm*,     Greenberg Traurig, Dec. 16, 2004

## ACADEMIC & PROFESSIONAL PRESENTATIONS

LECTURE, *Legal Services Ethics Training*, Legal Services of Greater Miami, Nov. 16, 2004

PANEL, *Gideon in White/Gideon in Black*, Yale Law School, Nov. 13, 2004

PANEL, *Re-Trying Racial Injustices*, Fordham Univ. School of Law Conference, Nov. 5, 2004

LECTURE, *Federal Clerk Ethics Training*, U.S. District Court, S.D. Fla., Oct. 22, 2004

PANEL, *Limited Scope Legal Representation*, ABA 30th Nat'l Conf. Prof'l Responsibility, June 5, 2004

PANEL, *The Education of Ethical Lawyers*, Columbia Law School Reunion Weekend, May 1, 2004

PANEL, *EU Environmental Law and Ethics*, University of Miami School of Law, Feb. 20, 2004

PANEL, *Independent Director Dilemmas*, University of Miami President's Council, Feb. 20, 2004

PANEL, *Critical Legal Theory & Experiential Learning*, AALS Ann. Program Panel, Jan. 3, 2004

PANEL, *Pleadings*, Association of American Law Schools Conference on Civil Procedure, June 19, 2003

LECTURE, *Playing the Race Card*, Florida Association of Criminal Defense Lawyers, May 8, 2003

LECTURE, *Retrying Race*, Critical Race Theory Workshop, American U. College of Law, Apr. 12, 2003

PANEL, *Duty to Give Up the Client?*, Second Ann. Criminal Justice Ethics Symposium, Apr. 11, 2003

LECTURE, *Scope of Representation Ethics Training*, Greenberg Traurig, Miami, Florida, Apr. 2, 2003

LECTURE, *Retrying Race*, Case Western Reserve Univ. Law School Faculty Workshop, Mar. 31, 2003

LECTURE, *Legal Services Ethics Training*, Legal Services of Greater Miami, Mar. 28, 2003

LECTURE, *Federal Clerk Ethics Training*, U.S. District Court, S.D. Fla., Mar. 26, 2003

PANEL, *Bankruptcy Ethics Training*, Florida Bankruptcy Bar Association, Feb. 7 & 21, 2003

LECTURE, *Sarbanes-Oxley Ethics Training*, Greenberg Traurig, Miami, Florida, Dec. 12, 2002

LECTURE, *Immigration Ethics Training*, Florida Immigrant Advocacy Center, Nov. 22, 2002

PANEL, *Privatizing Prosecutions*, ABA Criminal Justice Section, Miami, Fla., Nov. 15, 2002

LECTURE, *Legal Services Ethics Training*, Legal Services of Greater Miami, Nov. 1, 2002

APR. 2022

## ACADEMIC & PROFESSIONAL PRESENTATIONS

PANEL, *Democracy and the New Technologies*, UM School of Communication, June 30, 2002

LECTURE, *Real Estate Ethics Training*, Greenberg Traurig, Miami, Florida, May 1, 2002

LECTURE, *Legal Services Ethics Training*, Legal Services of Greater Miami, Apr. 5, 2002

PANEL, *Community Prosecutors*, Law, Culture, & Humanities, U. Penn. Law School, Mar. 8, 2002

LECTURE, *Federal Clerk Ethics Training*, U.S. District Court, S.D. Fla., Mar. 21, 2002

PANEL, *Bankruptcy Ethics Training*, Florida Bankruptcy Bar Association, Mar. 1 & 22, 2002

PANEL, *Facing Today's Ethical Challenges*, Public Relations Society of America, Feb. 21, 2002

PANEL, *Advertising Ethics*, Florida Association for Women Lawyers, Feb. 21, 2002

LECTURE, *Litigation Ethics Training*, Greenberg Traurig, Miami, Florida, Jan. 31, 2002

LECTURE, *Immigration Ethics Training*, Florida Immigrant Advocacy Center, Dec. 7, 2001

LECTURE, *Legal Services Ethics Training*, Legal Services of Greater Miami, Nov. 30, 2001

PANEL, *Prosecutorial Ethics*, ABA 27th National Conference on Prof'l Responsibility, May 31, 2001

LECTURE, *Immigration Ethics Training*, Florida Immigrant Advocacy Center, May 18, 2001

PANEL, *Medical Ethics, Law, and Social Policy*, University of Miami School of Medicine, May 10, 2001

LECTURE, *Legal Services Ethics Training*, Legal Services of Greater Miami, Apr. 27, 2001

LECTURE, *Race Prosecutors/Race Defenders*, Wayne State University Law School, Apr. 17, 2001

LECTURE, *Homelessness and Community*, St. David's School Chapel Series, Apr. 3, 2001

PAPER, *Race Prosecutors/Race Defenders*, University of Florida, College of Law,    Mar. 23, 2001

ROUNDTABLE, *Community in Practice*, Law, Culture, & Humanities, University of Texas, Mar. 10, 2001

PANEL, *Tainted Lawyers and Infected Firms*, Florida Bankruptcy Bar Ass'n, Feb. 23, 27 & 28, 2001

PANEL, *The Ethics of Multidisciplinary Practice*, Florida Association for Women Lawyers, Feb. 22, 2001

PANEL, *Equal Justice Colloquium*, Nova Southeastern University Law Center, Jan. 27, 2001

## ACADEMIC & PROFESSIONAL PRESENTATIONS

LECTURE, *Legal Services Ethics Training*, Legal Services of Greater Miami, Dec. 1, 2000

PAPER, *Race Prosecutors/Race Defenders*, Cornell Law School, Nov. 17, 2000

PANEL, *Improving the Professionalism of Lawyers*, U. South Carolina School of Law, Oct. 21, 2000

PANEL, *Professionalism in Law Schools and the Profession*, 2000 ABA Ann. Meeting, July 8, 2000

PAPER, *Prosecuting Violence/Reconstructing Community*, Law & Soc'y Ass'n Ann. Meeting, May 28, 2000

LECTURE, *Legal Services Ethics Training*, Legal Services of Greater Miami, Apr. 14, 2000

PAPER, *Prosecuting Violence/Reconstructing Community*, Stanford Law School, Apr. 9, 2000

PANEL, *Elian: A Nightline Town Meeting*, ABC News Nightline, Apr. 7, 2000

LECTURE, *Bankruptcy Ethics & Disclosure*, Florida Bankruptcy Bar Association, Apr. 6 & 28, 2000

PAPER, *Prosecuting Violence*, Law, Culture, & Humanities, Georgetown Law Center, Mar. 29, 2000

LECTURE, *Women as Trial Lawyers*, Florida Association for Women Lawyers, Mar. 23, 2000

PAPER, *Prosecuting Violence*, Southern Methodist University School of Law, Feb. 21, 2000

LECTURE, *Ethics Issues in Mergers & Acquisitions*, University of Miami School of Law, Feb. 12, 2000

PAPER, *Prosecuting Violence*, DePaul University College of Law, Nov. 22, 1999

LECTURE, *Ramon Saul Sanchez and the Democracy Movement: A Case Study of Civil Disobedience*, St. Thomas Episcopal Parish School, May 24, 1999

LECTURE, *Rosa Parks: A Case Study of Law, Ethics, & Morality*, St. Thomas Episcopal Parish School, May 17, 1999

HEARING, *History of the Center for Ethics & Public Service*, Commission on Ethics and Public Trust, Miami-Dade County, Town Hall Meeting, May 12, 1999

LECTURE, *Ethics and Education*, Justice Teaching Institute, Florida Eleventh Jud. Cir., Apr. 30, 1999

LECTURE, *Legal Services Practitioner Ethics*, Legal Services of Greater Miami, Apr. 30, 1999

PAPER, *Prosecuting Race*, New York Law School Clinical Theory Workshop, Apr. 9, 1999

PAPER, *Prosecuting Race*, Cleveland-Marshall College of Law, Mar. 18, 1999

APR. 2022

## ACADEMIC & PROFESSIONAL PRESENTATIONS

PAPER, *Prosecuting Race*, Brooklyn Law School, Feb. 26, 1999

PAPER, *Prosecuting Race*, University of Colorado School of Law, Dec. 7, 1998

PANEL, *CLE Seminar on Professionalism and Ethics*, Fla. Ass'n for Women Lawyers, Nov. 22, 1998

PAPER, *Prosecuting Race*, Washington & Lee University School of Law, Nov. 2, 1998

LECTURE, *Legal Services Practice Ethics*, Legal Services of Greater Miami, Oct. 16, 1998

PANEL, *The Internal Investigation: An Ethical Minefield for Corporate Counsel*, American Corporate Counsel Association, South Florida Chapter, Ft. Lauderdale, Florida, June 25, 1998

PAPER, *Race Trials*, Mid-Atlantic Clinical Workshop, American U. College of Law, Apr. 24, 1998

PAPER, *Race Trials*, Law, Culture, & Human., Georgetown U. Law Center, Mar. 29, 1998

PAPER, *Race Trials*, Boston College Law School, Feb. 27, 1998

PAPER, *Race Trials*, Temple University School of Law, Jan. 29, 1998

PANEL, *Lawyering for Poor Communities*, Fordham University School of Law, Nov. 7, 1997

PAPER, *Black and White*, Clason Lecture, Western New England College of Law, Oct. 23, 1997

PANEL, *Professional Responsibility Teaching Demonstration*, SALT Teaching Conf., Sept. 26, 1997

PANEL, *The Ethics of Race in Criminal Defense Practice*, 23rd National Conference on Professional Responsibility, ABA Center for Professional Responsibility, Naples, Fla., May 31, 1997

PANEL, *Employment Litigation under the December 1993 Amendments to the Federal Rules of Civil Procedure and Changes Proposed in the Rand Study*, ALI-ABA Course of Study, May 3, 1997

PANEL, *Ethical Conflicts & Professional Responsibility*, ALI-ABA Course, Boston, Mass., May 1, 1997

PAPER, *Lynching Ethics*, American U. College of Law, Mar. 19, 1997

PANEL, *Ethical Problems Facing Civil Litigators*, ALI-ABA Advanced Course of Study, Feb. 12, 1997

PAPER, *Lynching Ethics: Toward A Theory of Racialized Defenses*, University of Miami, Nov. 14, 1996

PANEL, *Hate in America*, Symposium, University of Miami, Oct. 2, 1996

PAPER, *Race-ing Legal Ethics*, AALS Conference on Clinical Legal Education, May 21, 1996

APR. 2022

## ACADEMIC & PROFESSIONAL PRESENTATIONS

PAPER, *Ethical Commitments*, College of William & Mary, Marshall-Wythe Law School, Mar. 22, 1996

PANEL, *Ethical Considerations in the Exercise and Challenge of Peremptory Jury Strikes*, American Bar Association Litigation Section Annual Meeting, Bal Harbour, Fla., Jan. 13, 1996

PAPER, *Defending Racial Violence*, George Washington University National Law Center, Dec. 8, 1995

PANEL, *Last Resort Law: Confronting Desperation*, Political Lawyering Conference, Harvard Law School, Nov. 18, 1995

PAPER, *Denaturalizing the Lawyer-Statesman*, Law & Society Association Ann. Meeting, June 2, 1995

PAPER, *Homeless Lawyers*, Law & Society Association Annual Meeting, June 2, 1995

PAPER, *The Ethics of Violence*, Law and Society Association Annual Meeting, June 17, 1994

PAPER, *Defending Racial Violence*, Law and Society Association Annual Meeting, June 16, 1994

PAPER, *Practicing Community*, American U. College of Law, Clinical Colloquium, Mar. 14, 1994

PANEL, *Legal Violence*, Law and Society Association Annual Meeting, May 30, 1993

PANEL, *Employment & the Americans with Disabilities Act*, Hofstra Law School Conference, Nov. 6, 1992

PANEL, *Bridging Legal Theory and Practice*, Law & Society Association Annual Meeting, May 31, 1992

PANEL, *The Idea of Community and the Reconstruction of Social Relations*, Law and Society Association Annual Meeting, May 30, 1992

PANEL, *A Theoretics of Practice*, AALS Conference on Clinical Legal Education, May 13, 1992

PANEL, *Clinical Scholarship -- Works in Progress: Client Narratives*, AALS Conference on Clinical Legal Education, May 10, 1992

PANEL, *A Theoretics of Practice*, Hastings L.J. Conf., Hastings College of the Law, Jan. 31, 1992

PAPER & PANEL, *Reconstructive Poverty Law Practice*, Osgoode Hall Law School, Sept. 14, 1991

PAPER, *Reconstructive Poverty Law Practice*, Osgoode Hall Law School Faculty Seminar, Sept. 13, 1991

## ACADEMIC & PROFESSIONAL PRESENTATIONS

PANEL, *Clinical Scholarship -- Works in Progress: Feminist Lawyering*, AALS Workshop on Clinical Legal Education, May 3, 1991

PAPER, *Reconstructive Poverty Law Practice: Learning Lessons of Client Narrative*, Midwest Clinical Work Group, IIT Chicago-Kent College of Law, Apr. 26, 1991

PANEL, *Poverty Law for the 1990's*, Midwest Public Interest Law Career Conference, Northwestern University School of Law, Feb. 16, 1991

PANEL, *Critical Lawyering*, Midwest Clinical Work Group, Marquette Univ. Law School, Jan. 31, 1991

PANEL, *Clinical Scholarship -- Works in Progress: Feminism and Clinical Education*, AALS Annual Meeting, Clinical Section Session, Jan. 3, 1991

PANELS, *Critical Theory in Practice & Clinical Scholarship*, Midwest Clinical Conference, University of Wisconsin Law School, Oct. 13, 1990

PAPER, *Critical Theory Perspective on Gender and Legal Ethics*, Georgetown Journal of Legal Ethics Symposium on Gender and Legal Ethics, Georgetown University Law Center, Mar. 31, 1990

PAPER, *The Antinomies of Poverty Law and a Theory of Dialogic Empowerment*, UCLA-Warwick Second International Clinical Conference, UCLA School of Law, Sept. 16, 1989

PAPER, *The Antinomies of Poverty Law and a Theory of Dialogic Empowerment*, Columbia Law School Clinical Theory Workshop, Columbia University School of Law, Apr. 28, 1989

PANEL, *Families, Mothers, Children, and Welfare Policy*, N.Y.U. Review of Law & Social Change Colloquium on Social Welfare Policy and Law, N.Y.U. School of Law, Apr. 16, 1988

PANEL, *Client Advocacy*, Hunter College School of Social Work, Sept. 23, 1987 & Feb. 4, 1988

PANEL, *Advocacy for Special Needs Populations*, Hunter College School of Social Work, Jan. 15, 1987

PANEL, *Welfare & Work Programs*, Hunter College School of Social Work, Jan. 15-16, 1986 & 1987

Case 1:21-cv-21416-DPG   Document 110-1   Entered on FLSD Docket 08/05/2022   Page 50 of 63

## BAR ADMISSIONS

**FEDERAL**   United States Court of Appeals for the Second Circuit, 1987
United States District Court for the Eastern and Southern Districts, 1985
**STATE**   New York, 1985, Registration No. 2001576
Florida, Law School Faculty Affiliate Member, Bar No. 172324

## PERSONAL

Married 33 years to Ellen Barker Grant, an artist and art instructor at Ransom Everglades School.
Two children, Amelia and Adrian, ages 28 and 25.
Soccer Coach, St. Thomas Episcopal Parish Elementary School Boys & Girls, 1998–2004
Soccer Coach, Ransom Everglades Middle School Girls, 2005–2007
Soccer Coach, Carrollton High School Varsity Girls, 2011–2013
Soccer Coach, Coconut Grove FC Boys U18 Club, 2014–2017
Soccer Coach, Ransom Everglades High School Varsity Boys, 2014–2017 (Class 2A State Champion, 2016)
U.S. Soccer Foundation E License (FYSA, 2014)

# EXHIBIT B

**ANTHONY V. ALFIERI**
**DISCLOSURE OF EXPERT TESTIMONY**
**CASE LIST OF TRIAL & DEPOSITION TESTIMONY, 2017-2022**

| LAW FIRM | MATTER | TESTIMONY | OPINION | ISSUE |
|---|---|---|---|---|
| **2017**<br>**Klein Glasser Park & Lowe P.L.**<br>Miami, Florida<br><br>Robert Klein | Juan Borrell, v. Sacher, Zelman, Van Zant, Paul, Beiley, Hartman, Rolnick & Greif, P.A.<br><br>11th Jud. Circuit Miami-Dade Cnty. #06-16696 CA 32 | **DEP.**<br>**Def.**<br>3/17 | Con | Breach Fid. Duty Negligence Trust Account |
| **2017**<br>**Williams & Connolly LLP**<br>Washington, D.C.<br><br>Jonathan Landy<br>Peter Kahn | Ricardo Rene Cortez Moreno v. Sergio Hernandez Lemus et al.<br><br>11th Jud. Circuit Miami-Dade Cnty. #2015-027321-CA-01 | **TEST.**<br>**Def.**<br>8/17 | Con | Disqualification Conflict of Interest |
| **2018**<br>**Kluger, Kaplan, Silverman, Katzen & Levine** Miami, Fla.<br><br>Ron Dresnick<br>Bruce Katzen | Kenneth Brown & Wendy Brown v. Gardiner Koch Weisberg & Wrona et al.<br><br>15th Jud. Circuit Palm Beach Cnty. #502009CA042031XXXXMB (AE) | **DEP.**<br>**Pl.**<br>3/18 & 5/18 | Pro | Malpractice Breach Fid. Duty |
| **2018**<br>**Mateer & Harbert**<br>Orlando, Fla.<br><br>Richard Allen<br>Sharon Henry | Darrick Washington v. Gregory L. Lattimer et al.<br><br>19th Jud. Circuit St. Lucie Cnty. #56-2016CA-001941 (OM) | **DEP.**<br>**Pl.**<br>8/18 | Pro | Malpractice Breach Fid. Duty |

1

4/12/2022

ANTHONY V. ALFIERI
DISCLOSURE OF EXPERT TESTIMONY
CASE LIST OF TRIAL & DEPOSITION TESTIMONY, 2017-2022

| LAW FIRM | MATTER | TESTIMONY | OPINION | ISSUE |
|---|---|---|---|---|
| **2019**<br>**Boies Schiller**<br>**Flexner LLP**<br>Miami, Fla.<br><br>Steven Davis<br>Bruce Weil | Avra Jain<br>v.<br>Buchanan Ingersoll & Rooney PC & Richard A. Morgan<br><br>11th Jud. Circuit<br>Miami-Dade Cnty.<br>#2017-026857-CA-43 | **DEP.**<br>**Pl.**<br>9/19 | Pro | Malpractice |
| **2020**<br>**Carlton Fields**<br>Miami, Fla.<br><br>Charles<br>Rosenberg<br>Naomi Berry | Sheila Nieburg Edelstein et al.<br>v.<br>Eric W. Sulzberger d/b/a Sulzberger & Sulzberger; Jack R. Loving, P.A.; David Scully; Simon, Schindler & Sandberg, LLP; & Neil Sandberg.<br><br>11th Jud. Circuit<br>Miami-Dade Cnty.<br>#11-37956-CA-09 | **DEP.**<br>**Def. Scully**<br>10/20 | Con | Malpractice<br>Breach Fid. Duty |
| **2021**<br>**Rosenbaum &**<br>**Acevedo, LLP**<br><br>Joseph<br>Rosenbaum<br>Kimberly<br>Acevedo | Hebrew Homes Health Network, Inc., et al.<br>v. Greenberg Traurig, P.A., Greenberg Traurig, LLP, & William B. Eck.<br><br>11th Jud. Circuit<br>Miami-Dade County<br>#2017-012846-CA-01 | **DEP.**<br>**Pl.**<br>3/21 | Pro | Malpractice<br>Breach Fid. Duty |
| **2021**<br>**Florida Bar**<br>**Discipline**<br>**Counsel**<br><br>Arlene Kalish<br>Sankel<br>J. Derek<br>Womack | The Florida Bar<br>v.<br>Scot Strems<br><br>Florida Supreme Court<br>#SC20-1277<br>The Florida Bar File<br>#2021-70,075 (11C) (OSC) | **TEST.**<br>**Pl.**<br>9/21 | Pro | Violations of Florida Rules of Prof'l Conduct<br>Contempt |
| **2021**<br>**Nelson Mullins**<br><br>Mark Raymond<br>Francisco<br>Armada<br>Kayla Quintana | Cary Caster<br>v.<br>Roger Miller et al.<br><br>11th Jud. Circuit<br>Miami-Dade County<br>Probate Division<br>#2021-000793-CP-02 | **TEST.**<br>**Pl.**<br>9/21<br>10/21<br>11/21<br>12/21 | Con. | Disqualification<br>Conflict of Interest |

2

4/12/2022

**ANTHONY V. ALFIERI**
**DISCLOSURE OF EXPERT TESTIMONY**
**CASE LIST OF TRIAL & DEPOSITION TESTIMONY, 2017-2022**

| LAW FIRM | MATTER | TESTIMONY | OPINION | ISSUE |
|---|---|---|---|---|
| **2022**<br><br>**Mateer &<br>Harbert**<br>Orlando, Fla.<br><br>Richard Allen<br>Sharon Henry<br>Brian Wagner | Scott "Spiderman"<br>Mulholland & Tina Marie<br>Foley Mulholland<br>v.<br>Susan M. Seigle, Esq.,<br>Alvarez, Winthrop, Thompson<br>& Storey, P.A.<br><br>8th Jud. Circuit<br>Alachua County<br>#2020-CA-3193 | DEP.<br>Pl.<br>3/22 | Pro | Malpractice<br>Breach Fid. Duty<br>Vicarious Liab. |
|  |  |  |  |  |

3

4/12/2022

# EXHIBIT C

## Exhibit C

| | |
|---|---|
| 1 | Deposition of Alan Wachs and Exhibits thereto |
| 2 | Deposition of Eric Madden and Exhibits thereto |
| 3 | Deposition of Peter Kravitz and Exhibits thereto |
| 4 | Deposition of Enrst Csiszar and Exhibits thereto |
| 5 | Depsoition of Michael Purcell and Exhibits therto |
| 6 | PNI_Litigation_Trust_0175043-0175065 |
| 7 | PNI_Litigation_Trust_0000372-0000384 |
| 8 | PNI_Litigation_Trust_0159162-0159166 |
| 9 | PNI_Litigation_Trust_0159836-0159838 |
| 10 | PNI_Litigation_Trust_0159856-0159857 |
| 11 | PNI_Litigation_Trust_0159920-0159921 |
| 12 | PNI_Litigation_Trust_0159964 |
| 13 | PNI_Litigation_Trust_0159962-0159963 |
| 14 | ARGO000685-000690 |
| 15 | PNI_Litigation_Trust_0160018-0160019 |
| 16 | PNI_Litigation_Trust_0160024-0160026 |
| 17 | PNI_Litigation_Trust_0160010 |
| 18 | PNI_Litigation_Trust_0160029-0160030 |
| 19 | ARGO000683-000684 |
| 20 | PNI_Litigation_Trust_0000036-0000039 |
| 21 | 2019-08-21 - Trustee's Motion to Sever |
| 22 | PNI_Litigation_Trust_0160162-0160163 |
| 23 | PNI_Litigation_Trust_0160164-0160165 |
| 24 | PNI_Litigation_Trust_0160255-0160256 |
| 25 | PNI_Litigation_Trust_0160714-0160726 |
| 26 | PNI_Litigation_Trust_0160425-0160431 |
| 27 | PNI_Litigation_Trust_0160311-0160319 |
| 28 | PNI_Litigation_Trust_0160432-0160438 |
| 29 | PNI_Litigation_Trust_0160490-0160499 |
| 30 | PNI_Litigation_Trust_0125245-0125258 |
| 31 | PNI_Litigation_Trust_0125259 |
| 32 | PNI_Litigation_Trust_0160764-0160766 |
| 33 | PNI_Litigation_Trust_0125286 |
| 34 | PNI_Litigation_Trust_0125288 |
| 35 | PNI_Litigation_Trust_0125293-0125309 |
| 36 | PNI_Litigation_Trust_0125326 |
| 37 | PNI_Litigation_Trust_0125348-0125349 |
| 38 | PNI_Litigation_Trust_0125350-0125353 |
| 39 | PNI_Litigation_Trust_0160822-0160824 |
| 40 | PNI_Litigation_Trust_0125372-0125393 |
| 41 | PNI_Litigation_Trust_0125418-0125419 |
| 42 | PNI_Litigation_Trust_0001963 |
| 43 | PNI_Litigation_Trust_0174252-0174253 |
| 44 | PNI_Litigation_Trust_0174061-0174074 |
| 45 | PNI_Litigation_Trust_0174005-0174010 |
| 46 | PNI_Litigation_Trust_0174011-0174017 |

**Exhibit C**

| | |
|---|---|
| 47 | PNI_Litigation_Trust_0173974-0173980 |
| 48 | PNI_Litigation_Trust_0173823-0173830 |
| 49 | PNI_Litigation_Trust_0173840-0173842 |
| 50 | PNI_Litigation_Trust_0173694-0173710 |
| 51 | PNI_Litigation_Trust_0173639-0173652 |
| 52 | PNI_Litigation_Trust_0173607-0173629 |
| 53 | PNI_Litigation_Trust_0173588 |
| 54 | PNI_Litigation_Trust_0173551-0173574 |
| 55 | PNI_Litigation_Trust_0173527-0173548 |
| 56 | PNI_Litigation_Trust_0173549 |
| 57 | PNI_Litigation_Trust_0003191-0003204 |
| 58 | PNI_Litigation_Trust_0003094-0003190 |
| 59 | PNI_Litigation_Trust_0003025-0003026 |
| 60 | PNI_Litigation_Trust_0003303-0003309 |
| 61 | PNI_Litigation_Trust_0173454-0173456 |
| 62 | PNI_Litigation_Trust_0172659-0172662 |
| 63 | PNI_Litigation_Trust_0172663-0173153 |
| 64 | PNI_Litigation_Trust_0172654-0172658 |
| 65 | PNI_Litigation_Trust_0172633-0172634 |
| 66 | PNI_Litigation_Trust_0173437-0173438 |
| 67 | PNI_Litigation_Trust_0172539-0172541 |
| 68 | PNI_Litigation_Trust_0172565-0172582 |
| 69 | PNI_Litigation_Trust_0172411-0172414 |
| 70 | PNI_Litigation_Trust_0172368-0172373 |
| 71 | PNI_Litigation_Trust_0172377-0172379 |
| 72 | PNI_Litigation_Trust_0172186-0172189 |
| 73 | PNI_Litigation_Trust_0172059-0172060 |
| 74 | PNI_Litigation_Trust_0130611-0130612 |
| 75 | PNI_Litigation_Trust_0171512-0171520 |
| 76 | PNI_Litigation_Trust_0000015-0000019 |
| 77 | PNI_Litigation_Trust_0171292-0171294 |
| 78 | PNI_Litigation_Trust_0130414-0130447 |
| 79 | PNI_Litigation_Trust_0130235-0130236 |
| 80 | PNI_Litigation_Trust_0129801-0129805 |
| 81 | PNI_Litigation_Trust_0129777 |
| 82 | PNI_Litigation_Trust_0129773-0129776 |
| 83 | PNI_Litigation_Trust_0129672-0129676 |
| 84 | PNI_Litigation_Trust_0129591-0129593 |
| 85 | PNI_Litigation_Trust_0129567-0129569 |
| 86 | PNI_Litigation_Trust_0129577-0129578 |
| 87 | PNI_Litigation_Trust_0167800 |
| 88 | PNI_Litigation_Trust_0129360 |
| 89 | PNI_Litigation_Trust_0129334-0129336 |
| 90 | PNI_Litigation_Trust_0129316-0129319 |
| 91 | PNI_Litigation_Trust_0167652 |
| 92 | PNI_Litigation_Trust_0167609 |

## Exhibit C

| | |
|---|---|
| 93 | PNI_Litigation_Trust_0129247-0129249 |
| 94 | PNI_Litigation_Trust_0129241-0129246 |
| 95 | PNI_Litigation_Trust_0167372-0167375 |
| 96 | PNI_Litigation_Trust_0129210-0129212 |
| 97 | PNI_Litigation_Trust_0129213-0129215 |
| 98 | PNI_Litigation_Trust_0129182-0129190 |
| 99 | PNI_Litigation_Trust_0129180-0129181 |
| 100 | PNI_Litigation_Trust_0129148-0129150 |
| 101 | PNI_Litigation_Trust_0129178-0129179 |
| 102 | PNI_Litigation_Trust_0128988-0129003 |
| 103 | PNI_Litigation_Trust_0128987 |
| 104 | PNI_Litigation_Trust_0128974-0128979 |
| 105 | PNI_Litigation_Trust_0128980-0128981 |
| 106 | PNI_Litigation_Trust_0128972-0128973 |
| 107 | PNI_Litigation_Trust_0128961-0128962 |
| 108 | PNI_Litigation_Trust_0128955-0128959 |
| 109 | PNI_Litigation_Trust_0128960 |
| 110 | PNI_Litigation_Trust_0128967-0128968 |
| 111 | PNI_Litigation_Trust_0128951-0128954 |
| 112 | PNI_Litigation_Trust_0166669-0166672 |
| 113 | PNI_Litigation_Trust_0128949 |
| 114 | PNI_Litigation_Trust_0128935-0128938 |
| 115 | PNI_Litigation_Trust_0128950 |
| 116 | PNI_Litigation_Trust_0002487-0002513 |
| 117 | PNI_Litigation_Trust_0128930-0128934 |
| 118 | PNI_Litigation_Trust_0128877-0128879 |
| 119 | PNI_Litigation_Trust_0128644-0128646 |
| 120 | 2020-06-23 First Amended Trustee Complaint |
| 121 | PNI_Litigation_Trust_0128624-0128629 |
| 122 | PNI_Litigation_Trust_0128594-0128623 |
| 123 | PNI_Litigation_Trust_0128498-0128501 |
| 124 | PNI_Litigation_Trust_0128505 |
| 125 | PNI_Litigation_Trust_0128403-0128404 |
| 126 | PNI_Litigation_Trust_0128324-0128400 |
| 127 | PNI_Litigation_Trust_0002772-0002801 |
| 128 | PNI_Litigation_Trust_0128408-0128484 |
| 129 | PNI_Litigation_Trust_0128270-0128295 |
| 130 | PNI_Litigation_Trust_0128164-0128215 |
| 131 | PNI_Litigation_Trust_0128298 |
| 132 | PNI_Litigation_Trust_0128313-0128316 |
| 133 | PNI_Litigation_Trust_0128128-0128153 |
| 134 | PNI_Litigation_Trust_0128066-0128092 |
| 135 | PNI_Litigation_Trust_0128065 |
| 136 | PNI_Litigation_Trust_0127885-0127911 |
| 137 | PNI_Litigation_Trust_0127928-0127930 |
| 138 | PNI_Litigation_Trust_0127800-0127824 |

**Exhibit C**

| | |
|---|---|
| 139 | PNI_Litigation_Trust_0127759-0127783 |
| 140 | PNI_Litigation_Trust_0127708-0127709 |
| 141 | PNI_Litigation_Trust_0127720-0127745 |
| 142 | PNI_Litigation_Trust_0127717-0127719 |
| 143 | PNI_Litigation_Trust_0127715-0127716 |
| 144 | PNI-National Union_005165-005167 |
| 145 | PNI_Litigation_Trust_0127639-0127640 |
| 146 | PNI_Litigation_Trust_0127642-0127696 |
| 147 | PNI_Litigation_Trust_0127575-0127625 |
| 148 | PNI_Litigation_Trust_0127705-0127706 |
| 149 | PNI_Litigation_Trust_0127571-0127573 |
| 150 | PNI_Litigation_Trust_0127553-0127557 |
| 151 | PNI_Litigation_Trust_0127564-0127566 |
| 152 | ARGO000651-000654 |
| 153 | PNI_Litigation_Trust_0127549-0127550 |
| 154 | PNI_Litigation_Trust_0127519-0127541 |
| 155 | PNI_Litigation_Trust_0127551-0127552 |
| 156 | PNI_Litigation_Trust_0127493-0127494 |
| 157 | PNI_Litigation_Trust_0127451-0127474 |
| 158 | PNI_Litigation_Trust_0164686-0164689 |
| 159 | PNI_Litigation_Trust_0127431-0127443 |
| 160 | PNI_Litigation_Trust_0127408-0127411 |
| 161 | PNI_Litigation_Trust_0127286-0127308 |
| 162 | PNI_Litigation_Trust_0127248-0127249 |
| 163 | PNI_Litigation_Trust_0127269-0127270 |
| 164 | PNI_Litigation_Trust_0127232-0127233 |
| 165 | PNI_Litigation_Trust_0127231 |
| 166 | PNI_Litigation_Trust_0127239-0127241 |
| 167 | PNI_Litigation_Trust_0127163-0127209 |
| 168 | PNI_Litigation_Trust_0127221-0127223 |
| 169 | PNI_Litigation_Trust_0127157-0127158 |
| 170 | PNI_Litigation_Trust_0164346-0164347 |
| 171 | PNI_Litigation_Trust_0127132-0127133 |
| 172 | PNI_Litigation_Trust_0127097 |
| 173 | PNI_Litigation_Trust_0127094 |
| 174 | PNI_Litigation_Trust_0127099 |
| 175 | PNI_Litigation_Trust_0127089-0127093 |
| 176 | PNI_Litigation_Trust_0127046 |
| 177 | PNI_Litigation_Trust_0127060-0127061 |
| 178 | PNI_Litigation_Trust_0127062-0127077 |
| 179 | PNI_Litigation_Trust_0127043-0127044 |
| 180 | PNI_Litigation_Trust_0126969-0126970 |
| 181 | PNI_Litigation_Trust_0126925-0126964 |
| 182 | PNI_Litigation_Trust_0126883-0126884 |
| 183 | PNI_Litigation_Trust_0126870-0126872 |
| 184 | PNI_Litigation_Trust_0126865-0126866 |

**Exhibit C**

| | |
|---|---|
| 185 | PNI_Litigation_Trust_0126844-0126845 |
| 186 | PNI_Litigation_Trust_0126874-0126877 |
| 187 | PNI_Litigation_Trust_0002317-0002347 |
| 188 | PNI_Litigation_Trust_0126705-0126706 |
| 189 | PNI_Litigation_Trust_0126666-0126668 |
| 190 | PNI_Litigation_Trust_0126672-0126675 |
| 191 | PNI_Litigation_Trust_0126669-0126671 |
| 192 | PNI_Litigation_Trust_0126620-0126625 |
| 193 | PNI_Litigation_Trust_0126605-0126617 |
| 194 | PNI_Litigation_Trust_0126562-0126563 |
| 195 | PNI_Litigation_Trust_0126564 |
| 196 | PNI_Litigation_Trust_0126541-0126542 |
| 197 | PNI_Litigation_Trust_0126546 |
| 198 | PNI_Litigation_Trust_0126523-0126524 |
| 199 | PNI_Litigation_Trust_0126528 |
| 200 | PNI_Litigation_Trust_0126526-0126527 |
| 201 | PNI_Litigation_Trust_0126522 |
| 202 | PNI_Litigation_Trust_0126519-0126521 |
| 203 | PNI_Litigation_Trust_0162971-0162975 |
| 204 | PNI_Litigation_Trust_0126478-0126479 |
| 205 | PNI_Litigation_Trust_0126454-0126455 |
| 206 | PNI_Litigation_Trust_0126424-0126425 |
| 207 | PNI_Litigation_Trust_0126410-0126412 |
| 208 | PNI_Litigation_Trust_0126390 |
| 209 | PNI_Litigation_Trust_0126379-0126380 |
| 210 | PNI_Litigation_Trust_0126349-0126357 |
| 211 | PNI_Litigation_Trust_0162892 |
| 212 | PNI_Litigation_Trust_0126300-0126314 |
| 213 | PNI_Litigation_Trust_0126225-0126240 |
| 214 | PNI_Litigation_Trust_0126241-0126258 |
| 215 | PNI_Litigation_Trust_0162687-0162689 |
| 216 | PNI_Litigation_Trust_0126202-0126204 |
| 217 | PNI_Litigation_Trust_0162679-0162680 |
| 218 | PNI_Litigation_Trust_0126150-0126151 |
| 219 | PNI_Litigation_Trust_0162647-0162664 |
| 220 | PNI_Litigation_Trust_0125981 |
| 221 | PNI_Litigation_Trust_0162461-0162465 |
| 222 | PNI_Litigation_Trust_0125925 |
| 223 | PNI_Litigation_Trust_0125906-0125907 |
| 224 | PNI_Litigation_Trust_0125905 |
| 225 | PNI_Litigation_Trust_0125903 |
| 226 | PNI_Litigation_Trust_0125895-0125897 |
| 227 | PNI_Litigation_Trust_0125870-0125873 |
| 228 | PNI_Litigation_Trust_0161543-0161558 |
| 229 | PNI_Litigation_Trust_0125876 |
| 230 | PNI_Litigation_Trust_0125875 |

**Exhibit C**

| | |
|---|---|
| 231 | PNI_Litigation_Trust_0002707-0002746 |
| 232 | PNI_Litigation_Trust_0003793-0003839 |
| 233 | PNI_Litigation_Trust_00002972-0003024 |
| 234 | PNI_Litigation_Trust_0161507-0161509 |
| 235 | PNI_Litigation_Trust_0125836 |
| 236 | PNI_Litigation_Trust_0125791-0125797 |
| 237 | PNI_Litigation_Trust_0125798-0125804 |
| 238 | PNI_Litigation_Trust_0161441-0161457 |
| 239 | PNI_Litigation_Trust_0125700-0125733 |
| 240 | PNI_Litigation_Trust_0125766 |
| 241 | PNI_Litigation_Trust_0125754-0125756 |
| 242 | PNI_Litigation_Trust_0125637 |
| 243 | PNI_Litigation_Trust_0125656-125673 |
| 244 | PNI_Litigation_Trust_0161377-0161380 |
| 245 | PNI_Litigation_Trust_0125635 |
| 246 | PNI_Litigation_Trust_0125618-0125634 |
| 247 | [DE 1327] Order Granting 1322 Motion by Litigation Trustee to Approve Settlements with Five Former Directors |
| 248 | [DE 1322] Motion by the Litigation Trustee to Approve Settlements with Five Former Directors of the Debtors Pursuant to 11 U.S.C. sec. 105(1) and Rule 9019 |
| 249 | [DE 1322-1] Declaration of Robert Meyer |
| 250 | [DE 1314] Order Approving Settlement with Certain Former Officers and Directors |
| 251 | [DE 1313] Order Approving Settlement with Certain Former Officers and Directors |
| 252 | [DE 1295] Motion to Approve Settlement With Certain Former Directors and Officers |
| 253 | [DE 1270] Motion to Approve Settlement With Certain Former Directors and Officers |
| 254 | PNI_Litigation_Trust_0002348 |
| 255 | PNI_Litigation_Trust_0002352 |
| 256 | PNI_Litigation_Trust_0003858 |
| 257 | PNI_Litigation_Trust_0003682 |
| 258 | PNI_Litigation_Trust_0003648 |
| 259 | PNI_Litigation_Trust_0003634 |
| 260 | PNI_Litigation_Trust_0003621 |
| 261 | PNI_Litigation_Trust_0003619 |
| 262 | PNI_Litigation_Trust_0003524 |
| 263 | PNI_Litigation_Trust_0003522 |
| 264 | PNI_Litigation_Trust_0003699 |
| 265 | PNI_Litigation_Trust_0003702 |
| 266 | PNI_Litigation_Trust_0000705 |
| 267 | PNI_Litigation_Trust_0002006 |
| 268 | PNI_Litigation_Trust_0003336 |

## Exhibit C

| | |
|---|---|
| 269 | PNI_Litigation_Trust_0003338 |
| 270 | PNI_Litigation_Trust_0003340 |
| 271 | PNI_Litigation_Trust_0003347 |
| 272 | PNI_Litigation_Trust_0003425 |
| 273 | PNI_Litigation_Trust_0003427 |
| 274 | PNI_Litigation_Trust_0003206 |
| 275 | PNI_Litigation_Trust_0003471 |
| 276 | PNI_Litigation_Trust_0003192 |
| 277 | PNI_Litigation_Trust_0003688 |
| 278 | PNI_Litigation_Trust_0000314 |
| 279 | PNI_Litigation_Trust_0000306 |
| 280 | PNI_Litigation_Trust_0000322 |
| 281 | PNI_Litigation_Trust_0000377 |
| 282 | PNI_Litigation_Trust_0000330 |
| 283 | PNI_Litigation_Trust_0000353 |
| 284 | PNI_Litigation_Trust_0000345 |
| 285 | PNI_Litigation_Trust_0000304 |
| 286 | PNI_Litigation_Trust_0003685 |
| 287 | PNI_Litigation_Trust_0002527 |
| 288 | PNI_Litigation_Trust_0002517 |
| 289 | PNI_Litigation_Trust_0002525 |
| 290 | PNI_Litigation_Trust_0002529 |
| 291 | PNI_Litigation_Trust_0002023 |
| 292 | PNI_Litigation_Trust_0000424 |
| 293 | PNI_Litigation_Trust_0000539 |
| 294 | PNI_Litigation_Trust_0004149 |
| 295 | PNI_Litigation_Trust_0001964 |
| 296 | PNI_Litigation_Trust_0003473 |
| 297 | PNI_Litigation_Trust_0003485 |
| 298 | PNI_Litigation_Trust_0002225 |
| 299 | PNI_Litigation_Trust_0001961 |
| 300 | PNI_Litigation_Trust_0001963 |
| 301 | PNI_Litigation_Trust_0001977 |
| 302 | PNI_Litigation_Trust_0003716 |
| 303 | PNI_Litigation_Trust_0001986 |
| 304 | PNI_Litigation_Trust_0001982 |
| 305 | PNI_Litigation_Trust_0003746 |
| 306 | PNI_Litigation_Trust_0001972 |
| 307 | PNI_Litigation_Trust_0002385 |
| 308 | PNI_Litigation_Trust_0003705 |
| 309 | PNI_Litigation_Trust_0000061 |
| 310 | PNI_Litigation_Trust_0000090 |
| 311 | PNI_Litigation_Trust_0000138 |
| 312 | PNI_Litigation_Trust_0000071 |
| 313 | PNI_Litigation_Trust_0000111 |
| 314 | PNI_Litigation_Trust_0000180 |

**Exhibit C**

| | |
|---|---|
| 315 | PNI_Litigation_Trust_0000126 |
| 316 | PNI_Litigation_Trust_0003027 |
| 317 | PNI_Litigation_Trust_0003059 |
| 318 | PNI_Litigation_Trust_0003087 |
| 319 | PNI_Litigation_Trust_0003091 |
| 320 | PNI_Litigation_Trust_0002802 |
| 321 | PNI_Litigation_Trust_0002806 |
| 322 | PNI_Litigation_Trust_0002812 |
| 323 | PNI_Litigation_Trust_0002828 |
| 324 | PNI_Litigation_Trust_0002931 |
| 325 | PNI_Litigation_Trust_0002972 |
| 326 | PNI_Litigation_Trust_0002753 |
| 327 | PNI_Litigation_Trust_0000001 |
| 328 | PNI_Litigation_Trust_0000361 |
| 329 | PNI_Litigation_Trust_0000295 |
| 330 | PNI_Litigation_Trust_0001886 |
| 331 | PNI_Litigation_Trust_0002514 |